UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICE KAVAIRLOOK, )<br><br>Plaintiff, )<br><br>v. )<br><br>DIRK KEMPTHORNE, Secretary of )<br>the Interior, and the UNITED STATES )<br>DEPARTMENT OF THE INTERIOR )<br><br>Defendants. ) | No. 1:06-cv-01405-RWR |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE AND
TO SUSPEND OBLIGATION TO ANSWER IN THE DISTRICT OF COLUMBIA**

SUE ELLEN WOOLDRIDGE
Assistant Attorney General

Daniel G. Steele
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources
 Division
Natural Resource Section
P.O. Box 663
Washington, D.C.  20044-0482

Of Counsel:
Thomas A. Blaser
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.  MS 6513
Washington, D.C.  20240

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    The Alaska Native Townsite Act ("ANTA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.    The Alaska Native Claims Settlement Act ("ANCSA") . . . . . . . . . . . . . . . . . . . . . . . 4

C.    Interior Regulations Codified at 25 C.F.R. Part 151 . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.    Change of Venue, 28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.    TRANSFER OF THIS CASE TO ALASKA IS APPROPRIATE UNDER THE
      CHANGE OF VENUE STANDARD OF 28 U.S.C.§ 1404 . . . . . . . . . . . . . . . . . . . . . . 8

      A.    The Transferee Forum In Alaska Is One Where the Case Could Have Been
            Brought . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Transfer to Alaska Is In the Interests of Justice . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      C.    Transfer to Alaska Will Serve the Convenience of the Parties and Witnesses . . 12

II.   PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE, IF ANY,
      DEFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Aleknagik Natives, Ltd. v. United States,
635 F. Supp. 1477 (D. Alaska 1985), aff'd, 806 F.2d 924 (9th Cir. 1986) . . . . . . . 3, 5, 6

Armco Steel Co. v. CXS Corp.,
790 F. Supp. 311 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Citizen Advocates for Responsible Expansion (I-Care) v. Dole,
561 F. Supp. 1238 (D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

DeLoach v. Phillip Morris Companies,
132 F. Supp. 2d 22 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harris v. Republic Airlines,
699 F. Supp. 961 (D.D.C. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Scott,
709 F.2d 717 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Nichols v. U.S. Bureau of Prisons,
895 F. Supp. 6 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Norwood v. Kirkpatrick,
349 U.S. 29 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13

Santa Rosa Indian Band v. King's County,
532 F.2d 655 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Shawnee Tribe v. United States,
298 F. Supp. 2d 21 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13

Southern Utah Wilderness Alliance v. Norton,
315 F. Supp. 2d 82 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Trout Unlimited v. United States Department of Agriculture,
944 F. Supp. 13 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Van Dusen v. Barrack,

376 U.S. 612 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

**ADMINISTRATIVE CASES**

Bristol Bay Housing Authority,
    95 IBLA 20, 24 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

City of Klawock v. Andrew,
    24 IBLA 85, 90, 83 ID 47, 51 (1976), aff'd, City of Klawock v. Gustafson, Civ. No. K -
    742 (D. Alaska Nov. 11 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**OTHER AUTHORITY**

Alaska Natives and American Laws,
    133, 140, 168 (2d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

**FEDERAL STATUTES**

25 U.S.C. § 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

26 Stat. 1099 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1391 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1397 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1404 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

43 U.S.C. § 733 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

43 U.S.C. §§ 733-736 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

43 U.S.C. § 737 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 U.S.C. § 1601 (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

43 U.S.C. § 1603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1606 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1610 (a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1610 (b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1611(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1613 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1613(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1615 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1618 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 U.S.C. § 1618(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

44 Stat. 629 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

62 Stat. 35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

90 Stat. 2743 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

90 Stat. 2786 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

H.R. Rep. No. 94-1163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Pub. L. No. 94-579 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## FEDERAL REGULATIONS

25 C.F.R. Part 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

25 C.F.R. Part 152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. § 1.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25 C.F.R. § 151.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 C.F.R. § 151.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

25 C.F.R. § 151.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. § 151.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

43 C.F.R. § 2564.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

43 C.F.R. §§ 2564.0-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

43 C.F.R. §§ 2564.5 - 2564.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

43 C.F.R. §§ 2564.6-2564.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE AND
TO SUSPEND OBLIGATION TO ANSWER IN THE DISTRICT OF COLUMBIA**

## INTRODUCTION

Plaintiff, a member of the federally-recognized tribe of the Native Village of Barrow, seeks declaratory and injunctive relief concerning the Department of the Interior's ("Interior" or "Defendants") policy not to place land in restricted or trust status in the State of Alaska for Indians. Plaintiff specifically challenges the rule promulgated by Interior regarding acquisitions by the United States of land in trust status for Indians, published in 1980, and currently codified at 25 C.F.R. Part 151. Section 151.1 states, in relevant part, that "[t]hese regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members."

Plaintiff's Complaint alleges her ownership in an Alaska Native townsite lot that was restricted against alienation without federal approval. Complaint ¶¶ 18-19, 27. She further alleges that, under "fraud and duress," on January 10, 1994, she deeded the townsite lot to a private individual (id. ¶ 20), but that on or about June 24, 2002, through judicial action, she reacquired the land. Id. ¶¶ 21-26. Plaintiff now seeks, through declaratory and injunctive relief, to have the lot's restricted status restored or, in the alternative, for the land to be placed in trust status. Id. ¶ 27 and Prayer for Relief IV.[1] The relief that Plaintiff seeks in this lawsuit is based on Plaintiff's own local interest objective of securing her land against alienation, state and local taxation, and state and local land use controls.

---

[1] Restricted land and land that is held by the United States in trust status share the characteristics of protection against voluntary or involuntary alienation without federal approval and exemption from state and local taxation. Placement of land in trust also preempts state and local regulation of the use of the land. See Act of May 25, 1926, ch. 379, 44 Stat. 629 (formerly codified at 43 U.S.C. §§ 733-736 (1975)); 25 U.S.C. § 465; 43 C.F.R. § 2564.4; 25 C.F.R. §§ 1.4, 152.22. A restricted Alaska Native townsite loses its restrictions if the owner conveys the land with federal approval. See 43 U.S.C. §§ 733-736; 43 C.F.R. § 2564.4.

As demonstrated below, there is no particular connection between this case, or the requested relief, and the District of Columbia. On the contrary, this case has strong connections to Alaska where Plaintiff resides and where the subject property is located. For these reasons and pursuant to 28 U.S.C. § 1404(a), Interior moves to transfer venue of this case to the United States District Court for the District of Alaska.

## STATUTORY AND REGULATORY BACKGROUND

Plaintiff's underlying claims implicate Alaska-specific statutes and regulations, and concern land located in Alaska. The uniquely Alaskan interests and Alaskan legal issues that arise from Plaintiff's claims, as a threshold matter, require the Court's consideration of whether or not the claims should be brought in the District of Columbia. Thus, pursuant to 28 U.S.C. § 1404(a), the Court should determine whether venue in the District of Columbia is appropriate. The following Alaska-specific laws and regulations are implicated by the requested relief.

### A.    The Alaska Native Townsite Act ("ANTA")

The Alaska Native Townsite Act ("ANTA"), Act of May 25, 1926, ch. 379, 44 Stat. 629 (formerly codified at 43 U.S.C. §§ 733-736 (1975)), was enacted to supplement the Alaska Townsite Act of March 3, 1891, ch. 561, § 11, 26 Stat. 1099 (formerly codified at 43 U.S.C. § 732 (1975)). ANTA provided a means for individual Alaska Natives to obtain, without payment, a restricted title to lots in Alaska townsites. See 43 C.F.R. §§ 2564.0-3, 2564.1-2564.2.[2] The Alaska townsite laws were repealed on October 21, 1976, by Section 703(a) of the Federal Land

---

[2]    A 1948 amendment extended to Alaska Natives the option of receiving an unrestricted fee simple title (except as to seizure for nonpayment of certain debts) to an occupied townsite lot, if the individual petitioned for an unrestricted deed and the Bureau of Indian Affairs ("BIA") found that the individual was "competent to manage his [or her] own affairs." Act of February 26, 1948, 62 Stat. 35, 43 U.S.C. § 737; 43 C.F.R. §§ 2564.6-2564.7.

Policy and Management Act ("FLPMA"), Pub. L. No. 94-579, 90 Stat. 2743, 2789-90 (1976).

Section 701 of FLPMA, 90 Stat. 2786, a savings provision, states that nothing in the Act shall be construed to terminate any patent or other land use right existing on the date of repeal. The effect of the repeal of the Alaska townsite laws was that only townsite occupants who could establish that they commenced occupancy prior to October 21, 1976 remained eligible for a deed. See Aleknagik Natives, Ltd. v. United States, 635 F. Supp. 1477, 1497 (D. Alaska 1985), aff'd, 806 F.2d 924 (9th Cir. 1986); Bristol Bay Housing Authority, 95 IBLA 20, 24 (1986); City of Klawock v. Andrew, 24 IBLA 85, 90, 83 ID 47, 51 (1976), aff'd, City of Klawock v. Gustafson, Civ. No. K-74-2 (D. Alaska Nov. 11, 1976).  More than one hundred townsites were established under the Alaska townsite laws.  See D. Case and D. Voluck, Alaska Natives and American Laws 133, 140 (2d ed. 2002).  By 1997, all of the lands in the townsites had been distributed either to individual occupants, to municipalities, or to tribal governments.  See id.  According to the BIA Alaska Title Services Center within the Department of the Interior, there are presently 4,183 townsite lots owned by Alaska Natives under restricted titles.[3]  As discussed above on page 2 & n. 2, when land was conveyed under ANTA to an individual Alaska Native, the owner received a deed that restricted the owner's ability to convey the property.  See 43 C.F.R. § 2564.4.  Such ANTA restricted lands were statutorily protected against taxation, levy and sale in satisfaction of the debts, contracts, or liabilities of the patentee and adverse occupancy or prescription.  43 U.S.C. § 733.

In order for an Alaska Native to sell a restricted townsite lot, approval was required from

---

[3]    The BIA Alaska Title Services Center does not maintain data regarding the number of townsite lots owned under unrestricted titles, because those lots are owned by Natives and non-Natives, and may be alienated without federal approval.

the Area Director (now Regional Director) of the BIA.  43 C.F.R. §§ 2564.5 - 2564.7.  Approval

of a Native's sale of the townsite lot vests in the purchaser "a complete and unrestricted title from

the date of such approval."  43 U.S.C. § 733.  In this case, Plaintiff alleges that she acquired the

her property under a Native Restricted Trustee Deed conveyance on October 4, 1983, conveyed it,

and after having reacquired the land now seeks to have it restored to restricted status or placed in

trust.  See Complaint ¶¶ 18-20, 27; Prayer for Relief IV.[4/]

**B.     The Alaska Native Claims Settlement Act ("ANCSA")**

The Alaska Native Claims Settlement Act of 1971 ("ANCSA"), 43 U.S.C. §§ 1601 et seq.,

another relevant Alaska-specific statute, "embodied a novel and experimental approach in the

settlement of Native claims."  Alaska Natives and American Laws at 168.  Section 2(b) of

ANCSA declared the congressional policy that:

> the settlement should be accomplished . . . with maximum
> participation by Natives in decisions affecting their rights and
> property, without establishing any permanent racially defined
> institutions, rights, privileges, or obligations, without creating a
> reservation system or lengthy wardship or trusteeship, and without
> adding to the categories of property or institutions enjoying special
> tax privileges or to legislation establishing special relationships
> between the United States government and the State of Alaska.

43 U.S.C. § 1601(b).

In exchange for relinquishing all aboriginal title and claims to land in Alaska, Alaska

Natives received 44 million acres of land and $962.5 million in monetary compensation.  See 43

---

[4/]     The legal character of the ownership of restricted lands, such as those conveyed to Alaska Natives
under ANTA, is not precisely the same as that of lands that are held by the United States in trust status.
Title to restricted land is held by the Indian owner.  Title to trust land, on the other hand, is divided so that
the United States holds legal title and an Indian tribe or individual holds beneficial title.  The Secretary of
the Interior has no general discretionary authority, apart from specific enactments such as ANTA (which
was repealed), to place land in restricted status for Indians.

U.S.C. §§ 1603, 1611, 1613, 1615.  Congress eliminated prior forms of Native land tenure in the

state and substituted in their place a novel form of land ownership.  In doing so, ANCSA revoked

all existing reservations in Alaska, except one (the Annette Island Reserve for the Metlakatla

Indian Community, whose members are not eligible for benefits under the Act).  See 43 U.S.C. §§

1617, 1618.  Unlike prior land claims settlements, Congress directed settlement lands and monies

to be conveyed in fee (not in trust) and without permanent restrictions on voluntary or involuntary

alienation.  See 43 U.S.C. § 1611.  Under ANCSA, the settlement lands and/or monies provided

by the Act were distributed to thirteen regional corporations and to more than two hundred village

corporations.  See 43 U.S.C. §§ 1606, 1607, 1610(b)(1), 1611, 1615.

To enable village corporations to acquire lands near their Native villages, ANCSA

withdrew public lands surrounding Native villages "from all forms of appropriation under the

public lands laws," except for those lands already "subject to valid existing rights."  43 U.S.C. §

1610(a)(1); see Aleknagik Natives, Ltd., 635 F. Supp. at 1481.  ANCSA gave village corporations

three years from its enactment to select lands out of these withdrawn areas.  43 U.S.C. §

1611(a)(1).  ANCSA also required village corporations to issue village land occupants, as of the

date of ANCSA's enactment, patents to the surface estates of those lands.  See 43 U.S.C. §

1613(c)(1).[5]  Interior continued to convey restricted deeds to townsite lands post-ANCSA if the

---

[5]      ANCSA is generally viewed as Congress' alternative to "obsolete" Alaska townsite laws.  Alaska
Natives and American Laws at 141 ("Section 14(c) of ANCSA appears to be an alternative to the
subsequently repealed Alaska townsite laws . . . .  As Congress concluded when it repealed ANTA in
1976, ANCSA had made it 'obsolete.'") (citing H.R. Rep. No. 94-1163 at 26, reprinted in 1976
U.S.C.C.A.N. 6175, at 6200); Aleknagik Natives, Ltd., 635 F. Supp. at 1483 ("FLPMA's legislative
history reveals that Congress regarded the townsite laws in general as 'obsolete' and inadequate for the
needs of 'modern urban development'; moreover, the House Report specifically noted that 'the Alaska
Native Claims Settlement Act [had] granted to the Natives the lands in 'Native villages,' [thus] rendering
the [Alaska] townsite laws obsolete with respect to Natives.'") (alterations in original).

Alaska Native applicants could establish that they commenced occupancy prior to the passage of FLPMA in 1976.

      The Alaska Federal District Court and the Ninth Circuit have found these land management practices to be consistent with ANCSA's directive to accomplish the settlement "without creating a . . . lengthy . . . trusteeship," 43 U.S.C. § 1601(b), and have determined that the Secretary of the Interior had validly construed ANCSA to allow the continued administration of existing townsites.  See Aleknagik Natives, Ltd., 635 F. Supp. at 1495, aff'd, 806 F.2d 924. Under this statutory construction, Plaintiff alleges that she received a restricted deed to a townsite lot on October 4, 1983, Complaint ¶ 19, but that she subsequently conveyed it, id. ¶ 20, resulting in the termination of restrictions, id. ¶ 27.  Without seeking relief in Alaska courts, Plaintiff comes to the District of Columbia seeking an injunction which would require Interior to make her land – a formerly restricted townsite lot – once again subject to ANTA-styled restrictions and protections, or in the alternative, to be placed in trust status by the Secretary.

      **C.**    **Interior Regulations Codified at 25 C.F.R. Part 151**

      For the reasons explained above, the Secretary of the Interior does not have general authority to place land in restricted status.  Consequently, Interior has not promulgated regulations to do so.  Cf. 25 C.F.R. Part 152 regarding sale of restricted lands.  While the Secretary does have general discretionary authority for acquiring land in trust for Indians under Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. § 465, with the BIA implementing regulations codified at 25 C.F.R. Part 151, the regulations expressly distinguish on-reservation applications from off-reservation applications.  Compare 25 C.F.R. § 151.10 (on-reservation criteria) with § 151.11 (off-reservation criteria).

Except for the Annette Island Reserve held by the Metlakatla Indian Community, there are no Indian reservations in Alaska.  All former Alaska reservations were explicitly revoked by ANCSA.  43 U.S.C. § 1618(a).  Consistent with current BIA policy of not acquiring land in trust for an individual Indian when the land to be acquired is located off-reservation, Part 151 does not contain procedures for off-reservation acquisitions for individuals.  See 25 C.F.R. § 151.3(b); cf. 25 C.F.R. § 151.11 ("The Secretary shall consider the following requirements in evaluating tribal requests for the acquisition of lands in trust status, when the land is located outside of and noncontiguous to the tribe's reservation, and the acquisition is not mandated . . . .").  Consequently, an individual Indian is precluded from applying to have land in Alaska placed in trust, unless the land is located within the Annette Island Reserve.  Moreover, since the BIA promulgated land-into-trust regulations in 1980, in light of ANCSA, it has excluded trust land acquisitions within the State of Alaska for any Indian tribe or individual (except for the Metlakatla Indian Community of the Annette Island Reserve or its members).  See 25 C.F.R. § 151.1.

Whereas the relief that Plaintiff seeks involves laws and regulations that are only applicable to Alaska, or regulations that can only be interpreted along with Alaska-specific laws, venue of the case should be transferred to Alaska.

D.      **Change of Venue, 28 U.S.C. § 1404(a)**

28 U.S.C. § 1404(a) affords the Court wide discretion to determine the appropriate venue

of a case based on plaintiff's claims and the issues to be litigated.  The Statute states as follows:

> (a) For the convenience of the parties and witnesses, in the interest
> of justice, a district court may transfer any civil action to any other
> district or division where it might have been brought.

## ARGUMENT

I.      **TRANSFER OF THIS CASE TO ALASKA IS APPROPRIATE UNDER THE
        CHANGE OF VENUE STANDARD OF 28 U.S.C. § 1404**

28 U.S.C. § 1404(a) is intended to facilitate transfer of actions to a more appropriate

federal forum.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981); Van Dusen v. Barrack,

376 U.S. 612, 616 (1964).  In general, a district court acting pursuant to 28 U.S.C. § 1404(a) may

transfer an action to another federal forum if two requirements are met.  First, as a threshold

matter, the proposed transferee district must be one in which the action might have been brought

originally.  See DeLoach v. Phillip Morris Companies, 132 F. Supp. 2d 22, 24 (D.D.C. 2000).

Second, the Court must then decide, in the exercise of its discretion, whether the transfer is

warranted.  In making the determination whether transfer is warranted, the statute requires the

Court to examine three factors: (1) the convenience of the parties; (2) the convenience of the

witnesses; and (3) the interests of justice.  The Court has broad discretion to order transfer under

this standard.  In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983).  See also Norwood v. Kirkpatrick,

349 U.S. 29 (1955).  An analysis of the Section 1404(a) factors demonstrate that transfer to the

District of Alaska is appropriate.

-8-

**A.    The Transferee Forum In Alaska Is One Where the Case Could Have Been Brought**

A "threshold consideration" in determining the appropriateness of transfer under

§ 1404(a) is whether the action "might have been brought" in the transferee district.  Nichols v.

U.S. Bureau of Prisons, 895 F. Supp. 6, 8 (D.D.C. 1995); see also Van Dusen, 376 U.S. at 616

(transfer power is expressly limited by the clause restricting transfer to those districts in which the

action "might have been brought").  This element is certainly satisfied in this case because the

land that is identified in Plaintiff's Complaint and all other lands that are directly affected by this

case are situated in Alaska.  28 U.S.C. § 1391(b) and (e).

**B.    Transfer to Alaska Is In the Interests of Justice**

This case should be transferred to Alaska in the interests of justice.  "[J]ustice requires

that such localized controversies be decided at home."  Citizen Advocates for Responsible

Expansion (I-Care) v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983); Armco Steel Co. v. CXS

Corp., 790 F. Supp. 311, 324 (D.D.C. 1991) (the interest in having local controversies decided

locally is compelling); Harris v. Republic Airlines, 699 F. Supp. 961, 963 (D.D.C. 1988).

Restoration of Plaintiff's land to restricted status or placement of the land in trust status both

would result in the land being secured against voluntary or involuntary alienation and exempted

from state and local taxation.  Placement of the land in trust would also preempt state and local

regulation of the use of the land.  Thus, the consequences of placing Plaintiff's land in restricted

or trust status would directly affect local Alaskan interests.  Moreover, restoration of the

Plaintiff's land to restricted status or placement of the land in trust status, as discussed above,

would directly implicate State of Alaska and Alaska citizen interests throughout the State of

Alaska as other Natives would expect to have their lands placed in restricted or trust status as

well.

Where a case predominantly implicates interests in another state and the current venue is one with which the affected citizens have little to no connection, the Court has found the local interest compelling and ordered transfer. For example, in <u>Shawnee Tribe v. United States</u>, 298 F. Supp. 2d 21 (D.D.C. 2002), at issue was whether or not portions of a military reservation, designated as surplus property by the General Services Administration, were reservation land subject to transfer to Interior to be held in trust for the Tribe. The Court decided that the lawsuit's transfer from the District of Columbia to the United States District Court in Kansas was appropriate, stating that "the most persuasive factor favoring transfer . . . is the local interest in deciding a sizable local controversy at home." <u>Id.</u> at 26. Central to the Court's opinion was that judicial allocation of the subject property would directly impact counties and neighborhoods in that vicinity of Kansas and implicate considerable economic, political, and environmental interests. <u>Id.</u>

In <u>Southern Utah Wilderness Alliance v. Norton</u>, 315 F. Supp. 2d 82 (D.D.C. 2004), the plaintiff sought venue in the District of Columbia of a dispute involving twenty-one parcels of land in Utah. There, the Court concluded that National Environmental Policy Act considerations were localized interests that "directly touch[ed] local citizens." <u>Id.</u> at 88. The Court granted the Government's transfer motion, stating that "[i]t makes sense that these alleged consequences would be most particularly felt in Utah, and thus that the courts of Utah would have a clear interest in resolving the dispute." <u>Id.</u> (citing <u>Trout Unlimited v. United States Department of Agriculture</u>, 944 F. Supp. 13, 20 (D.D.C. 1996)). In this case, geographic, economic, and political ramifications and considerations resulting from review in the District of Columbia will

-10-

impact Alaska lands, State and local governments, and citizens on a far greater scale than was the case in Shawnee Tribe and Southern Utah Wilderness Alliance, where smaller land areas were affected.

The declaratory and injunctive relief that Plaintiff seeks in the District of Columbia implicates the current pattern of Native land tenure throughout Alaska. The process itself of receiving and considering requests to place land in restricted or trust status would place new burdens on the BIA in Alaska, the State, and local governments, and would affect Alaskan private interests. In addition to this, Plaintiff and her individual claims and prayers for relief, there are thousands of other individual Indians in Alaska who would also seek to have their respective lands placed in restricted or trust status. Lands in restricted or trust status would become immune from state and local taxation and could not be alienated through condemnation, judgment on a creditor's claim, or voluntary sale without federal review and approval. See supra, page 2 & n. 1. Moreover, State and local regulation over the use of trust lands would be precluded. See Santa Rosa Indian Band v. King's County, 532 F.2d 655, 666 (9th Cir. 1975); 25 C.F.R. § 1.4 (None of the state and local "laws, ordinances, codes, resolutions, rules or other regulations . . . limiting, zoning, or otherwise governing the use or development" of land apply to trust land). Thus, clearly the interests of justice are best served in having this case decided in Alaska where Alaskan citizens' and governments' interests plainly outweigh Plaintiff's decision to file her lawsuit in a jurisdiction that is remote from her home.

It is also appropriate for this Court to consider laws and regulations implicated in this case which are specific in their application to Alaska. See Shawnee Tribe, 298 F. Supp. 2d at 27; Southern Utah Wilderness Alliance, 315 F. Supp. 2d at 82. Moreover, the Court may  take note

-11-

of the fact that the courts of the Ninth Circuit have considerable experience with the laws

concerning Alaska Natives.  See, e.g., Shawnee Tribe, 298 F. Supp. 2d at 21 (expertise of 10th

Circuit courts in Indian matters favors transfer).  Plaintiff's desire to have her formerly restricted

townsite lot restored to restricted status or placed in trust would require the reviewing court to

interpret  Alaska-specific statutes, such as ANTA and ANCSA, and to consider the fundamentally

local issues and public interest factors discussed above.  Thus, compelling Alaskan local interests

inherent in this lawsuit and the expertise of the Alaskan federal courts concerning such issues

strongly favor transfer to Alaska.

      **C.**      **Transfer to Alaska Will Serve the Convenience of the Parties and Witnesses**

The United States is fully prepared to litigate this matter in Alaska.  Interior employees

who are presently assigned to this litigation are headquartered in Washington, D.C., because the

case was filed there.  However, upon transfer of the case to Alaska, Interior personnel and

attorneys in Alaska stand ready to work on the case.  Interior's Regional Solicitor's Office has

considerable experience with regard to Alaska Native issues.  Moreover, documents related to

Plaintiff's former restricted townsite lot are maintained by the BIA in Alaska.

Plaintiff has retained counsel both in Alaska and Washington, D.C.  For Plaintiff, who

resides in Alaska, presumably litigation in Alaska is decidedly more convenient.  Furthermore,

the state and its political subdivisions may wish to participate in this litigation. Thus, in regard to

the convenience of the parties (and in the interests of justice), transfer of this case to the District

of Alaska is appropriate.

**II.**      **PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE, IF ANY,
DEFERENCE**

While the movant bears the burden of demonstrating that transfer is warranted, when a

plaintiff chooses a forum that is not its home – as is the case here – the plaintiff's choice of forum is entitled to far less deference than the choice of a home forum.  See Piper Aircraft Co., 454 U.S. at 255-56; Shawnee Tribe, 298 F. Supp. 2d at 24-25 (The deference that may ordinarily be due a plaintiff's choice of forum is substantially lessened where suit was brought in the plaintiff's non-home forum and transfer is sought to the forum where the plaintiff resides.)

Based on the foregoing factors, Plaintiff's decision to file the action in the District of Columbia is entitled to little, if any, deference.  Plaintiff is located in Alaska.  Furthermore, as discussed above, the subject matter of this litigation is significantly connected to Alaska.  The District of Columbia has no meaningful ties to, or interest in, this litigation.

In concert with Defendants' motion to transfer venue of the case to Alaska, Defendants also move the Court to suspend their obligation to answer the Complaint until thirty days following judicial resolution of the venue issue or at a time to be determined by the transferee court.

## **CONCLUSION**

For these reasons, Defendants' motion for transfer and to suspending answering Plaintiff's Complaint in the District of Columbia should be granted.

Dated this 5th day of December 2006.

Respectfully submitted,
SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural resources Division


 /s/
Daniel G. Steele
D.C. Bar No. 962894
U.S. Department of Justice
Environment & Natural Resources Division
General Litigation Section
P.O. Box 663
Washington D.C. 20044-0663
Phone:  (202) 305-0484
Facsimile:  (202) 305-0506

OF COUNSEL:
Thomas A. Blaser
Attorney-Advisor
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.   MS 6513
Telephone:  (202)208-5811
Facsimile:  (202)219-1791

## CERTIFICATE OF SERVICE

I, Daniel G. Steele, hereby certify on this 5th day of December 2006, I have caused the foregoing Defendants' Motion to Transfer Venue and to Suspend Obligation to Answer in the District of Columbia, Legal Memorandum, and Proposed Order to be served by United States mail, first-class postage prepaid, on the following counsel at their addresses:

    Richard A. Guest, Esquire
1712 N Street, N.W.
Washington, D.C.  20036-2976

Andrew Harrington, Esquire
Alaska Legal Services Corporation
1648 South Cushman, Suite 300
Fairbanks, AK 99701

Heather Kendall Miller, Esquire
Native American Rights Fund
420 L Street, Suite 505
Anchorage, Alaska  99501

This is in addition to the electronic service upon Plaintiff's attorney of record.

_____/s/_____
Daniel G. Steele