IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICE KAVAIRLOOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DIRK KEMPTHORNE, Secretary of | ) |
| the Interior, and the UNITED STATES | ) |
| DEPARTMENT OF THE INTERIOR, | ) |
| | ) |
| Defendants. | ) |
| | ) |

MEMORANDUM OF LAW OPPOSING MOTION TO TRANSFER VENUE
AND TO SUSPEND OBLIGATION TO ANSWER
IN THE DISTRICT OF COLUMBIA

Alaska Legal Services Corporation
Andrew Harrington
Denise Bakewell
1648 South Cushman Suite 300
Fairbanks AK 99701
Attorney for Plaintiff

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

I.   DEFENDANT'S ARGUMENT IS BASED ON A MISUNDERSTANDING
     OF THE RELIEF SOUGHT BY PLAINTIFF HERE.................................................. 1

II.  THE CORE ISSUE IN THIS CASE, I.E., WHETHER THE SECRETARY CAN
     SINGLE OUT A PARTICULAR CATEGORY OF TRIBES FOR
     DISCRIMINATORY TREATMENT, IS NOT ALASKA-SPECIFIC, AND
     THE SECRETARY'S RELIANCE ON OTHER ALASKA-SPECIFIC STATUTES
     IS MISPLACED IN THAT THOSE STATUTES ARE NOT RELEVANT HERE ... 2

III. DEFENDANT HAS NOT DEMONSTRATED THAT VENUE WOULD
     PROPERLY LIE IN THE DISTRICT OF ALASKA .................................................. 9

IV.  THE INTERESTS OF JUSTICE DO NOT REQUIRE TRANSFER
     TO THE DISTRICT OF ALASKA ........................................................................... 13

V.   TRANSFER TO THE DISTRICT OF ALASKA IS NOT REQUIRED
     BY THE CONVENIENCE OF THE WITNESSES OR PARTIES ........................... 16

CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blake v. Capitol Greyhound Lines*, 222 F.2d 25 (D.C.Cir. 1955)............................ 1

*City of Sault St. Marie v. Andrus*, 458 F.Supp. 465 (D.D.C. 1978) ....................... 16

*Ferguson v. Lieurance*, 565 F.Supp. 1013 (D.Nev. 1983) .................................... 12

*Forest Conservation Council v. Madigan*, 1992 U.S.Dist. LEXIS 21805
    (D.Ore. 1992) ................................................................................. 12

*Landis v. Watt*, 510 F.Supp. 178 (D. Idaho 1981).................................................. 12

*Nestor v. Hershey*, 425 F.2d 504 (D.C.Cir. 1969)................................................. 15

*Pyrocap International Corp. v. Ford Motor Co*, 259 F.Supp.2d 92 (D.D.C.
    2003) ............................................................................................... 18

*Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264 (7th Cir. 1978)........................... 8

*SEC v. Savoy Industries Inc.*, 587 F.2d 1149 (D.C. Cir. 1978).............................. 18

*Santa Fe Intern Corp. v. Watt*, 580 F.Supp. 27 (D.Del. 1984) ............................. 12

*Schlanger v. Seamans*, 401 U.S. 487 (1971) ........................................................ 8

*Shawnee Tribe v. United States*, 298 F.Supp. 21 (D.D.C. 2002) ........................... 14

*Standard Havens, Inc. v. Manbeck*, 762 F.Supp. 1349 (W.D.Mo. 1991) .............. 12

*Starnes v. McGuire*, 512 F.2d 918 (D.C.Cir. 1974) .............................................. 15

*TOMAC v. Norton*, 193 F.Supp.2d 182 (D.D.C. 2002), *aff'd*, 433 F.3d 852
    (D.C.Cir. 2006) ................................................................................ 16

*Vencor Nursing Ctrs, L.P. v. Shalala*, 63 F.Supp.2d 1 (D.D.C. 1999) ........... 17, 18

*Vogel v. Tenneco Oil Co.*, 276 F.Supp. 1008 (D.D.C. 1967).................................... 1

*Wilderness Society v. Babbitt*, 104 F.Supp.2d 10 (D.D.C. 2000) ......................... 16

# FEDERAL STATUTES

28 U.S.C. §1391 ............................................................................................... 9

    Former 28 U.S.C. §1391 ......................................................................... 10

    P.L. 101-650 §301, 104 Stat. 5089, 5114 (1990) ............................................. 10

Indian Reorganization Act, 25 U.S.C. §§461 et seq. ............................................... 5

    25 U.S.C. §476 ..................................................................................... 3,4,5,7

    Public Law 103-263 §5(b), 108 Stat. 709 ...................................................... 4, 5

# FEDERAL REGULATIONS

25 C.F.R. 151.10 ........................................................................................... 6, 14

# FEDERAL LEGISLATIVE MATERIALS

140 Cong. Rec. S. 6146 (Mary 19, 1994) ....................................................... 4, 5, 6

# FEDERAL ADMINISTRATIVE MATERIALS

66 Fed. Register 3452, 3454 (Jan. 16, 2001) ......................................................... 9

*City of Lincoln City, Oregon v. Portland Area Director, Bureau of Indian*
    *Affairs*, 33 IBIA 102 (IBIA 1999) ................................................................ 14

# TREATISES

Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE ............ 8,12,13,18

Introduction

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[1]    Defendant has not shown that the balance is sufficiently in its favor to change the forum.

I.    <u>Defendant's argument is based on a misunderstanding of the relief sought by plaintiff here.</u>

Defendant's position is premised on its understanding that "Plaintiff now seeks, through declaratory and injunctive relief, to have the lot's restricted status restored or, in the alternative, for the land to be placed in trust status. …  Without seeking relief in Alaska courts, Plaintiff comes to the District of Columbia seeking an injunction which would require Interior to make her land – a formerly restricted townsite lot – once again subject to ANTA-styled restrictions and protections, or in the alternative, to be placed in trust status by the Secretary."[2]

This characterization is not precisely correct.  Besides the fact that plaintiff did seek relief in the Alaska State Courts, which provided her with that relief within the scope of their authority,[3] this characterization, although it does accurately state her long-term goal, misstates the relief sought from this court.  Plaintiff ultimately does want the

---

[1] *Vogel v. Tenneco Oil Co.,* 276 F.Supp. 1008 (D.D.C. 1967), quoting *Blake v. Capitol Greyhound Lines*, 222 F.2d 25, 27 (D.C.Cir. 1955).

[2] "Memorandum of Law in Support of Motion to Transfer Venue and to Suspend Obligation to Answer in the District of Columbia" (hereafter "venue memo") pp. 1, 6. ("ANTA" refers to the Alaska Native Townsite Act, discussed extensively in his memorandum.)

[3] See Complaint (Doc. 1) paras. 22-26.

1

land taken into trust status, but this lawsuit seeks relief relating only to the first step in that process, *i.e.*, the ability to have her request considered by the Secretary of the Interior. Plaintiff's prayer for relief requests that this Court order the Secretary only to "accept and consider" an application from her. If this court agrees that the Secretary's regulatory bar against any consideration of her request is invalid, the resulting decree from this court will not gain Ms. Kavairlook the right to a restricted title, but only the right to have her request considered by the Secretary. The Secretary would then make a decision on this particular parcel; if that decision is in Ms. Kavairlook's favor, there may be no need for further court action, and if that decision is unfavorable, then, depending on the reasons given for the denial, the argument could be made that an appeal should be brought in the District of Alaska. But this case is not an appeal of an administrative determination on Ms. Kavairlook's parcel; it is an attempt to get the Secretary to consider a request. Plaintiff is not yet at the stage of seeking relief relating to the pros and cons of restoring trust status to this individual parcel, and a good deal of defendant's argument is premised on this misconception.

II.   The core issue in this case, i.e., whether the Secretary can single out a particular category of tribes for discriminatory treatment, is not Alaska-specific, and the Secretary's reliance on other Alaska-specific statutes is misplaced in that those statutes are not relevant here.

Defendant argues that "Whereas the relief that Plaintiff seeks involves laws and regulations that are only applicable to Alaska, or regulations that can only be interpreted along with Alaska-specific laws, venue of the case should be transferred to Alaska," venue memo at 7.

Defendant's well-written but lengthy explanation of the Alaska Native Townsite Act (ANTA) and the Alaska Native Claims Settlement Act (ANCSA) (venue memo at pp. 2-6) may leave the impression that these two Acts are what this case is about. This is not accurate. Plaintiff did originally acquire her land with its restricted title under ANTA, but ANTA neither requires nor forbids the relief plaintiff seeks here. Plaintiff did not acquire her land under ANCSA, making it even less relevant, but ANCSA too neither requires nor forbids the relief plaintiff seeks here.

The particular legal issue at stake here turns upon the 1994 amendment to the Indian Reorganization Act (IRA), codified at 25 U.S.C. §476(f) and (g), and upon the equal protection clause of the Fourteenth Amendment. These are what plaintiff asserts require the relief she seeks here, and neither is Alaska-specific. The background and history of the Fourteenth Amendment require no explanation, but the statute may.

The provisions which in 1994 became 25 U.S.C. 476(f) and (g)[4] were necessitated, it was explained as the Senate passed the bill, by a decision the Department of the Interior had made with respect to the Pascua Yagui Tribe of Arizona, opining that the Pascua Yaguis were a "created tribe" which could exercise only such powers of self-governance as the Secretary might confer upon them, rather than an "historic tribe" exercising powers of self-governance by reason of their inherent sovereignty.   Senator McCain explained that this administrative determination had "ignore[d] a few fundamental principles of Federal Indian law and policy."[5]  Further:

> [T]he recognition of an Indian tribe by the Federal Government is just that -
> - the recognition that there is a sovereign entity with governmental
> authority which predates the U.S. Constitution and with which the Federal
> Government has established formal relations. Over the years, the Federal
> Government has extended recognition to Indian tribes through treaties,
> executive orders, a course of dealing, decisions of the Federal courts, acts

---

[4] Public Law 103-263 §5(b), 108 Stat. 709 (1994), adding subsections (f) and (g) to 25 U.S.C. §476.  These two provisions read:

  (f) Privileges and immunities of Indian tribes; prohibition on new regulations. Departments or agencies of the United States shall not promulgate any regulation or make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 et seq., 48 Stat. 984) as amended, or any other Act of Congress, with respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the privileges and immunities available to the Indian tribe relative to other federally recognized tribes by virtue of their status as Indian tribes.

  (g) Privileges and immunities of Indian tribes; existing regulations.  Any regulation or administrative decision or determination of a department or agency of the United States that is in existence or effect on the date of enactment of this Act [enacted May 31, 1994] and that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes shall have no force or effect.

[5] 140 Cong. Rec. S. 6146 (May 19, 1994) (remarks of Sen. McCain).

of Congress and administrative action. Regardless of the method by which recognition was extended, all Indian tribes enjoy the same relationship with the United States and exercise the same inherent authority.[6]

Under these amendments, the Department was to be prohibited from promulgating any regulation with respect to a federally-recognized Indian tribe "that classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes." 25 U.S.C. 476(f). Further, any regulation already in existence that classified or enhanced or diminished such privileges was to have no force or effect, 25 U.S.C. 476(g).

Although it would have been possible for Congress to remedy the problem faced by the Pascua Yagui Tribe with a provision specific to that tribe, and although such a course would have been more in keeping with the other provisions of the session law which were primarily specific to particular tribes,[7] Congress chose to make this amendment to the IRA a general law applicable with respect to all federally-recognized tribes. Further, it forbad Secretarial categorization regardless of whether the Secretary sought justification for that classification in the IRA itself or in other federal laws:

> [The] amendment is intended to prohibit the Secretary or any other Federal official from distinguishing between Indian tribes or classifying them based

---

[6] 140 Cong. Rec. S. 6146 (May 19, 1994) (remarks of Sen. McCain).

[7] Other provisions of the law dealt with the Northern Cheyenne Indian Reserved Water Rights Settlement Act of 1992, the San Carlos Apache Tribe Water Rights Settlement Act of 1992, certain tribally-controlled community colleges, the White Earth Reservation Land Settlement Act of 1985, and the Confederated Tribes of the Grand Ronde Community of Oregon. P.L. 103-263.

5

> not only on the IRA but also based on any other Federal law. We have been advised that other agencies of the Federal Government may have developed distinctions or classifications between federally recognized Indian tribes based on information provided to those agencies by the Department of the Interior. In addition, we have been advised that the Secretary of the Interior may have carried these erroneous classifications into decisions authorized by other Federal statutes such as sections 2 and 9 of title 25 of the United States Code. Accordingly, our amendment to section 16 of the IRA is intended to address all instances where such categories or classifications of Indian tribes have been applied and any statutory basis which may have been used to establish, ratify or implement the categories or classifications.[8]

Thus, reliance on other statutes, precisely as the Secretary is doing here, to justify the differential Secretarial treatment of a particular set of tribes, is explicitly proscribed. The issue presented by this case is whether the Secretarial classification in 25 C.F.R. parts 151.10 et seq., refusing to some tribes the privilege enjoyed by all other tribes, that of being able to request that land be taken back into trust, can still be valid following this enactment; and, if that classification is not prohibited by the statute, whether it can survive an equal protection examination.

The argument would be the same, and the injustice inflicted on the affected tribes would be the same, regardless of whether the Secretary's regulation categorically prohibited land-into-trust requests from a single tribe, or a group of tribes in a particular state besides Alaska, or a group of tribes in another state along with Alaska, or all tribes with names beginning with vowels, or all tribes recognized before the turn of the millennium, or all tribes east of the Mississippi. The 1994 amendment is not Alaska-specific, and the equal protection clause is obviously not Alaska-specific either. If the

---

[8] 140 Cong. Rec. S. 6147 (remarks of Sen. McCain).

Secretary can discriminate against Alaskan tribes in this regulation, he can discriminate against any other federally-recognized tribe as well.

The Alaska-specific provisions of the Alaska Native Townsite Act and the Alaska Native Claims Settlement Act, discussed extensively by the plaintiff's memorandum, have nothing to do with the core issue in this case.

The fact that the land originally was conveyed to the plaintiff under ANTA in restricted status, although illustrative of the fact that restricted property in Alaska is not an unknown phenomenon, has no legal relevance to the core issue, because the Secretary, under his regulation, could not consider a request from plaintiff to have land taken into trust status for her, regardless of whether that land was originally conveyed to her under ANTA, or under another statute, or from a private grantor.

The fact that ANCSA is an Alaska-specific statute has even less to do with this case. This is not an ANCSA parcel. Further, any legal theory that Secretarial authority to refuse all land-into-trust applications in Alaska could be based on ANCSA was disavowed when, in January 2001, the Department withdrew the 1978 Fredericks opinion.[9] And even if the Department were to try to exhume that opinion, the intervening enactment of the 1994 amendment creating subsections (f) and (g) to 25 U.S.C. §476 was clearly intended to prevent him from creating such classifications regardless of the "statutory basis which may have been used to establish, ratify, or implement the categories or classifications."

---

[9] See Complaint (Doc. 1), paragraph 15; 66 Fed. Register 3452, 3454 (January 16, 2001).

The only Alaska-specific provision of law to be examined in this case is that created by the Secretary's regulation itself under attack herein, a classification of tribes which the statute dictates is to have "no force or effect." Since defendant has chosen to raise the venue issue prior to answering the complaint, defendant has not yet tried to refute the claim that this regulation has, under the statute, "no force or effect." Yet the plaintiff, in arguing that venue should be changed, effectively would have the court give this regulation "force or effect" well in advance of any determination of whether it is valid or not, by relying on its invalid disparate treatment of Alaskan tribes as a valid ground for transferring venue to the District of Alaska. This should not be ordered.

Prior to 1962, a suit such as this, against a federal agency, could have been brought only in the District Court for the District of Columbia. The amendments in 1962 were intended "to broaden the venue of civil actions which could previously have been brought only in the District of Columbia,"[10] providing "a wide choice of venue in actions against federal agencies";[11] the manner Congress chose to effectuate this objective was by adding additional venue choices to a plaintiff.[12] To rule, as defendants request here, that this case should not be heard in the District of Columbia would run contrary to the overall Congressional purpose of broadening venue choices for the plaintiff.

---

[10] 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE §3815 (1986) at 154, quoting *Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971).

[11] *Id*., §3815 at 154.

[12] *Id*., §3815 at 154 n. 8, quoting *Reuben H. Donnelly Corp. v. FTC*, 580 F.2d 264 (7th Cir. 1978).

III.    Defendant has not demonstrated that venue would properly lie in the District of Alaska.

The Secretary's argument that venue might have been brought in the District of Alaska is simply that "the land that is identified in Plaintiff's Complaint and all other lands that are directly affected by this case are situated in Alaska," venue memo at 9.  But the picture is not as simple as that.  The applicable statute here is 28 USC §1391(e):[13]

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

Clearly, the defendant's official residence is in the District of Columbia, not Alaska.  The events or omissions giving rise to the claim occurred in the District of Columbia; the decision to exclude particular tribes from the privilege accorded to most tribes was a decision made at the national level, not within Alaska.  Defendant does not

---

[13] The Secretary (venue memo at 9) also cites to §1391(b), governing a "civil action wherein jurisdiction is not founded solely on diversity of citizenship," presumably relying on subsection (b)(2).  (Subsection (b)(1) refers to a judicial district where any defendant resides, and subsection (b)(3) refers to a judicial district in which any defendant may be found if there is no district in which the action may otherwise be brought, both of which would lay venue only in the District of Columbia.)  Subsection (b)(2) refers to "a judicial district in which … a substantial part of property that is the subject of the action is situated," and as such is subject to the same analysis as subsection (e)(2) discussed in the text.

argue otherwise; he relies only on the "substantial part of property that is the subject of the action" clause in subparagraph (2).

The question thus turns on the remaining two provisions, the second clause in subsection (2) (whether "a substantial part of property that is the subject of the action" is situated in Alaska) and on subsection (3) (whether "no real property is involved in the action," in which case the undisputed fact that the plaintiff resides in Alaska confers venue upon the District of Alaska).

At first blush, it might seem that either one or the other should apply; if Ms. Kavairlook's parcel is "the subject of the action," venue in Alaska is proper under subsection (2), but if there is no real property involved, venue in Alaska might seem proper under subsection (3).

But these two phrases are not identical. And this fact takes on additional significance in light of the history of the statute. Prior to 1990, the statute read:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.[14]

---

[14] Former 28 U.S.C. §1391, before P.L. 101-650 §301, 104 Stat. 5089, 5114 (1990).

Thus, prior to 1990, "real property involved in the action" was the operative phrase in both former subsections (3) and (4). After 1990, however, "substantial part of property that is the subject of the action" is the operative phrase in the new subsection (2), whereas "no real property is involved in the action" remains the operative phrase in new subsection (3).[15]

This case is one in which Ms. Kavairlook's small parcel of real property, while not the "subject" of the action, is "involved" in the action.

This particular parcel is not the "subject" of this case because this Court will not be determining ownership of, or resolving any disputed issues among conflicting claimants to, or determining any easements, mining permits, or mineral leases over, Ms. Kavairlook's parcel.[16] It will be determining solely whether the regulation under which the Secretary has barred himself from considering land-into-trust requests from certain tribes (and members of those tribes) is valid. That ruling would not be tied to this particular parcel of land; it could conceivably apply to another parcel which, e.g., Ms. Kavairlook might acquire by inheritance in the future, or in exchange for this parcel. It is her status as a member of federally recognized tribe within the State of Alaska that

---

[15] The amendment collapsed the former subsections (2) and (3) (where "the cause of action arose" and where "any real property involved in the action is situated") into a new subsection (2) (where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated") and then re-numbered old subsection (4) as new subsection (3).

[16] As narrated in the complaint, the courts in Alaska have already resolved any competing ownership claims.

precludes the Secretary from discriminating against her, not the status of the particular parcel of land she currently owns. That is not the subject of the action.[17]

Simultaneously, though, it would not be accurate to say that "no real property is involved in the action." The fact that the parties here disagree as to whether defendant can validly bar certain tribes from submitting land-into-trust requests necessarily presupposes that there will be real property "involved," even though the land itself is not the "subject" of the suit. The limitation that no real property be involved before plaintiff's residence could provide a basis for proper venue in the plaintiff's state of residence was a conscious decision made by Congress,[18] and this limitation has precluded reliance on the "plaintiff's residence" venue basis in several cases.[19]

---

[17] "Standard Havens' argument, based on section 1391(e)(2), that 'a substantial part of property that is the subject of the action is situated' in the Western District of Missouri is also flawed because the Hawkins patent -- the property alleged to be 'situated' in this district, is not 'the subject of the action.' Rather, the Commissioner's failure to perform his legal duties is the subject of this action. Venue in this case is not in this district." *Standard Havens, Inc. v. Manbeck*, 762 F.Supp. 1349, 1351 (W.D.Mo. 1991).

[18] A predecessor bill would have placed venue in any judicial district in which the plaintiff resided. The final bill narrowed the original proposal by adding the "no real property involved" requirement due to Congressional concerns over the local nature of some real property actions. 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE §3815 (1986) at 158 n. 16, citing to *Santa Fe Intern Corp. v. Watt*, 580 F.Supp. 27, 30 (D. Del. 1984).

[19] *Forest Conservation Council v. Madigan,* 1992 U.S.Dist. LEXIS 21805 (D.Ore. 1992); *Ferguson v. Lieurance*, 565 F.Supp. 1013 (D.Nev. 1983); *Landis v. Watt,* 510 F.Supp. 178 (D. Idaho 1981). (By contrast, *Santa Fe Intern Corp. v. Watt*, supra note 18, holds that "tangential involvement" of real property would not bar the plaintiff from bringing suit in his state of residence, but it was decided before the 1990 amendment discussed in the text.)

Plaintiff has not found a case on point which either confirms or refutes the proposition that a case can "involve" real property under subsection (3) without that real property being the actual "subject of the action" under subsection (2).

Regardless of whether or not this is an issue of first impression, however, the main point is that the burden is on the defendant to show that venue would be proper in Alaska, and the fact that the question is an open one means that defendant has not met that burden here.

IV.    The interests of justice do not require transfer to the District of Alaska.

Plaintiff does not take issue with the general principle that localized issues can sometimes be better decided "at home."[20]    However, the Secretary's argument here stands that principle on its head.

Consider that, throughout the United States, when a local tribe or local tribal member seeks to have local parcel of land taken into trust, the Secretary assigns local personnel to collect and consider local evidence from local agencies, and make a local

---

[20] However, the defendant's memorandum emphasizes this principle to the point where it seems to outweigh all the other factors the court should consider.  That is not what the statute indicates.  As Wright, Miller and Cooper point out:

> Since 1979 there has been considerable interest, particularly on the part of some Western senators, in changing the venue laws to shift venue in certain kinds of case to the locality where the effects of the lawsuit are most directly felt.  … Some of the proposals for change have been limited to environmental cases, while others would reach federal government litigation generally.  To date none of these proposals has been adopted.

15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE §3815 (1986) at 165-66.  Unless and until Congress determines whether to enact such a change, and if so what its scope is to be, the courts should be cautious about fashioning such a policy rule on their own, as defendant's argument seems to suggest here.

13

recommendation on the advisability of granting that request and its effect on the localities involved[21] – with one exception.

That exception is Alaska, where the Secretary has chosen to take the matter out of the hands of local agency personnel, and has made a blanket policy, on the national level, that, regardless of how compelling the local reasons may be to have that land taken back into trust status, local decision-making in Alaska is not to be trusted.  The Secretary does not claim that there is any Departmental desk or official within the State of Alaska with the authority to change this regulation, or with the authority to override or waive the regulation with respect to Ms. Kavairlook.[22]

Yet, when this nationally-promulgated anti-local-decision-making policy is challenged, the principle of local resolution of local issues is suddenly of such paramount importance in the Secretary's view that justice requires that venue of this case be changed to Alaska.  This argument might be cognizable if he were defending a regulation that *promoted* local decision-making.  Here, however, it is too much of a paradox for the

---

[21] The regulations require notice to and consideration of information from affected local governments; see 25 C.F.R. 151.10 and 151.11.  The process entails review of the request by the BIA Superintendent, who makes a recommendation to the BIA Area Director, who makes the decision.  Appeal from the Area Director's decision goes to the Interior Board of Land Appeals.  See, e.g., *City of Lincoln City, Oregon v. Portland Area Director, Bureau of Indian Affairs*, 33 IBIA 102 (IBIA 1999).

[22] This is one factor that distinguishes this case from *Shawnee Tribe v. United States,* 298 F.Supp. 21 (D.D.C. 2002), cited in defendant's venue memo at pp. 10-13, where the court found that the decision-making process, by and large, had not been substantially focused in the D.C. forum, but in field offices outside the District, and that the Washington D.C. office of the General Services Administration had not made a final decision on an administrative appeal filed by the plaintiff from those field office decisions.  298 F.Supp. at 25.

Secretary to be able to make a convincing showing that justice requires a local Alaskan venue for this case in which he defends a regulation that prohibits to Alaska the local decision-making he allows everywhere else.

The focus needs to be on whether the decision to exclude Alaska was made on a national level or a local level, as illustrated by the case law. In *Nestor v. Hershey,* 425 F.2d 504, 522 (D.C.Cir. 1969), the Court of Appeals for the District of Columbia overturned a transfer order for a suit involving a denial of draft deferment when the denial was based on a Regulation and a Memorandum issued by the director of the Selective Service. Simultaneously, the opinion noted, "where the role of the Director is not so immediate and direct as it is in the instant case, our District Court may properly determine that the controversy has no strong ties to this jurisdiction and, . . . transfer the action to a more appropriate forum."[23] The court has more recently re-affirmed that "the existence of a national policy issue that may involve testimony by the policymakers is a factor to be considered by the district judge in determining whether transfer is appropriate under Section 1404(a)," while also ruling that since that particular case raised an issue relating to the plaintiff's individual circumstances, transfer was appropriate.[24] Here, the decision for which the Secretary is being called to account was certainly a decision made on a national level.

---

[23] *Nestor v. Hershey,* 425 F.2d 504, 522 (D.C.Cir. 1969).

[24] *Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974).

The familiarity of the transferee court with the governing law is a factor that can weigh for or against transfer in the interest of justice.[25] The Secretary argues that this court should take note that the Ninth Circuit has considerable experience with the laws concerning Alaska Natives, venue memo at 11-12, which is true enough as far as it goes, but a proper analysis of this factor in fact cuts against transfer. The transferee court here would be the District of Alaska, and because of the fact that that the Secretary has not allowed any land-into-trust petitions to come up from Alaska, the number of land-into-trust issues before the Federal District Court for the District of Alaska has been, to the best of plaintiff's knowledge, zero. By contrast, this Court has handled such cases, notwithstanding the fact that the land at issue was located in different states.[26]

V.    Transfer to the District of Alaska is not required by the convenience of the witnesses or parties.

Plaintiff's choice of forum is still entitled to some weight, even if she is litigating in a forum in which she does not reside.[27] "Plaintiffs presumably do not consider the District of Columbia to be an inconvenient forum or else they would not have sued here."[28]

---

[25] *Wilderness Soc'y v. Babbitt,* 104 F.Supp.2d 10, 16 (D.D.C. 2000).

[26] *City of Sault St. Marie v. Andrus*, 458 F.Supp. 465 (D.D.C. 1978); *TOMAC v. Norton*, 193 F.Supp.2d 182 (D.D.C. 2002), *aff'd*, 433 F.3d 852 (D.C.Cir. 2006).

[27] *TOMAC v. Norton*, supra n. 26, 183 F.Supp. 2d at 196.

[28] *Wilderness Soc'y v. Babbitt,* 104 F.Supp.2d 10, 15 (D.D.C. 2000).

The Secretary indicates that, following transfer of the case, there will be attorneys in Alaska ready to represent him.  Venue memo at 12.  However, the location of counsel carries little weight in the analysis.[29]  This memorandum, for example, will be filed by plaintiff's counsel clicking a button on his computer.  It is difficult to discern any quantum differential in convenience between clicking to file in this Court and performing the same click to file in the District Court for the District of Alaska, either on the part of plaintiff's or defendant's attorneys.

The Secretary also urges the court to consider the convenience to attorneys for the State of Alaska, or political subdivisions thereof, venue memo at 12, but cites no authority for the proposition that the court should hypothecate an intervention which has not yet occurred.  Regardless, the counsel for plaintiff has a high regard for the attorneys for the Alaska Department of Law, including their computer-clicking abilities which are second to none, certainly superior to those of plaintiff's counsel, and would not be overstrained by the distances involved.

The availability of documents is a relevant factor.  Here again, the focus must be put on the issues before the court.  Documentation concerning Ms. Kavairlook's parcel is not going to be dispositive; if any documentation is necessary to resolve the issues herein, it will be documentation concerning whether the Secretary has any justification, beyond that which was published in the Federal Register, for deciding that he can validly deny to federally recognized tribes and tribal members in Alaska a privilege extended to their

---

[29] *Vencor Nursing Ctrs, L.P. v. Shalala*, 63 F.Supp. 2d 1, 6 n.4 (D.D.C. 1999).

17

counterpart federally recognized tribes and members elsewhere in the United States. Documentation concerning this policy decision, and whether there has been any attempt to harmonize its continuation with the 1994 statutory provisions which seem quite clearly to prohibit it, will be located in the District of Columbia, where that policy decision was made.

Regarding convenience of witnesses, which is often the most critical factor,[30] the defendant's showing omits a crucial element.  "The party seeking the transfer must clearly specify the key witnesses to be called and just make a general statement of what their testimony will cover … If a party has merely made a general allegation that witnesses will be necessary, without identifying them and indicating what their testimony will be, the application for transfer will be denied."[31]

Presumably defendant omitted this step because defendant perceives that this case is extremely likely to be resolved upon summary judgment without trial, an assumption with which plaintiff agrees.  Either the regulation is inconsistent with the statute or it is not.[32]

---

[30] *Pyrocap Int'l Corp. v. Ford Motor Co,* 259 F.Supp.2d 92, 97 (D.D.C. 2003).

[31] 15 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE §3815 (1986) at 425-428.  See also *SEC v. Savoy Industries Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978).

[32] "Here, by contrast, the court does not foresee any need for testimony, nor have the parties indicated that they intend to request an evidentiary hearing or trial at which they would call witnesses. Consequently, the 'convenience of the witnesses' does not favor transfer."  *Vencor Nursing Ctrs, L.P. v. Shalala*, 63 F.Supp.2d 1, 7 (D.D.C. 1999).

But even assuming that witness testimony becomes necessary, if there is any district in the United States where it will be virtually impossible to find anyone -- witness, party, BIA official, municipal representative, anyone – who knows anything about taking land back into trust, that district would be Alaska, where the practice has been largely forbidden for almost thirty years, and yet that is the precise district to which the Secretary urges this court to transfer the case.  The law does not require such a result.

The specific information relating to Ms. Kavairlook's parcel, which defendant posits is more readily available in Alaska, is not relevant to the issue presented to the court here.  This point relates back to the venue motion's over-broad characterization of the relief sought herein, discussed in section 1 above.  This case concerns only whether the Secretary can validly keep the door closed to considering an application from Ms. Kavairlook on the basis that she is a Native Alaskan rather than a Native American from elsewhere in the United States.   If the answer to that question is "yes," then the specifics with respect to Ms. Kavairlook's parcel obviously are immaterial.  If the answer to that question is "no," only then do the specifics of Ms. Kavairlook's parcel become pertinent, which she will then need to present to the Secretary for consideration at the administrative level, which may render review at the judicial level unnecessary.

CONCLUSION

This case involves the interpretation of a non-Alaska-specific statute and a non-Alaska-specific constitutional provision.  The Secretary's reliance on the fact that the regulation under attack here is Alaska-specific is unwarranted, when it is that very classification/categorization that renders the regulation vulnerable under the statute.  The

Secretary has not made a sufficient showing that venue would have been proper in Alaska in the first instance.  The Secretary also has not made a sufficient showing that transfer is required either for the convenience of the parties or in the interests of justice.  The motion to transfer should be denied.

DATED this 2nd day of January, 2007.

ALASKA LEGAL SERVICES CORPORATION
1648 South Cushman Suite 300
Fairbanks AK 99701
Attorneys for Plaintiff

BY:   /s/
Andrew Harrington

## CERTIFICATE OF SERVICE

I, Andrew Harrington, hereby certify that, once the Post Office opens again on the 3rd day of January, 2007, following today's closure in memorial to former President Gerald Ford, I will cause the foregoing Plaintiff's Memorandum in Opposition to Motion to Transfer Venue and to Suspend Obligation to Answer in the District of Columbia and (Proposed) Order to be served by United States mail, first-class postage prepaid, on the following counsel at their addresses:

Heather Kendall Miller, Esquire
Native American Rights Fund
420 L Street, Suite 505
Anchorage, Alaska 99501

This is in addition to the electronic service upon counsel of record.

/s/
Andrew Harrington