UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALICE KAVAIRLOOK,<br><br>    Plaintiff,<br><br><br>DIRK KEMPTHORNE, Secretary of<br>the Interior, and the UNITED STATES<br>DEPARTMENT OF THE INTERIOR<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   No. 1:06-cv-01405-RWR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER
VENUE TO THE DISTRICT OF ALASKA**

MATTHEW J. MCKEOWN
Acting Assistant Attorney General

Daniel G. Steele
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources
 Division
Natural Resource Section
P.O. Box 663
Washington, D.C.  20044-0482

Of Counsel:
Thomas A. Blaser
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.  MS 6513
Washington, D.C.  20240

ATTORNEYS FOR DEFENDANTS

## **TABLE OF CONTENTS**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE OR NO
       DEFERENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PLAINTIFF IS MISTAKEN IN SUGGESTING THAT SHE COULD
       NOT HAVE BROUGHT THIS CASE IN THE DISTRICT OF ALASKA . . . . . . . . . . 3

       A.     A Substantial Part of the Events And Omissions Giving Rise To
              Plaintiff's Claim Occurred in Alaska . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.     The Subject of the Action Is Land Located in Alaska, And Alaska
              Only . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.   SUBSTANTIAL AND IMMEDIATE LOCAL ALASKAN INTERESTS
       ARE AT STAKE IN THIS LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       A.     This Case Is Of Local, Not National, Concern And Involves
              Alaska-Specific Statutes And Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.     The Immediate and Substantial Impacts of the Relief Sought
              By Plaintiff Will Be Felt In Alaska, Where the Subject Property
              Is Located . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.    THE INTERESTS OF JUSTICE WEIGH HEAVILY IN FAVOR OF
       TRANSFER TO THE DISTRICT OF ALASKA . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Alaska v. Alaska Native Village of Venetie Tribal Government,
    522 U.S. 520 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Armco Steel Co. v. CXS Corp.,
    790 F. Supp. 311 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Carcieri v. Norton,
    423 F. 3d 45 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Cheyenne Arapaho v. Reno,
    Civ. No. 98-CV-065 (RMU), Slip op. at 3 ( D.D.C. Sept. 9, 1998) (Exhibit B) . . . . . . . . 3

Citizen Advocates for Responsible Expansion, Inc. v. Dole,
    561 F. Supp. 1238 (D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Connecticut ex rel. Blumenthal v. Department of the Interior,
    228 F.3d 82 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

DeLoach v. Philip Morris Companies,
    132 F. Supp. 2d 22 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ferguson v. Lieurance,
    565 F. Supp. 1013 (D. Nev. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Forest Conservation Council v. Madigan,
    1992 LEXIS 21805 (D. Ore. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Hawksbill Sea Turtle v. Federal Emergency Management Agency,
    939 F. Supp. 1, 4 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Jewish War Veterans v. United States,
    695 F. Supp. 1 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States,
    Civ. No. 01-1042, Slip op. at 4 (D.D.C. 2001) (Exhibit D) . . . . . . . . . . . . . . . . . . . . . . . 3

Mescalero-Apache Tribe v. Janet Reno and Bruce Babbitt,
    Civ. No. 96-115, Slip op. at 5 (D.D.C. 1996) (Exhibit C) . . . . . . . . . . . . . . . . . . . . . . . . 3

Nat'l Wildlife Fed'n v. Harvey,
    437 F. Supp. 2d 42 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Nichols v. U.S. Bureau of Prisons,
    895 F. Supp. 6 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Piper Aircraft Co. v. Reyno ,
    454 U.S. 235 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pruess v. Udall,
    359 F.2d 615 (D.C. Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18

Santee Sioux Tribe of Nebraska v. National Indian Gaming Commission,
    Civ. No. 99-528, Slip op. at 6 (D.D.C. 1999) (Exhibit A) . . . . . . . . . . . . . . . . . . . . . . . . 3

Shawnee Tribe v. United States,
    298 F. Supp. 2d 21 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Shell Oil Co. v. Babbitt,
    920 F. Supp. 559 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

S. Utah Wilderness Alliance v. Norton,
    315 F. Supp. 2d 82 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Town of Ledyard v. United States,
    1995 WL 908244 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 16

Trout Unlimited v. U.S. Department of Agriculture,
    994 F. Supp. 13 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 9, 16

Valley Community Preservation Commission v. Mineta,
    231 F. Supp. 2d 23 (D.D.C. 2002), aff'd, 373 F. 3d 1078 (10th Cir. 2004) . . . . . . . . . 2, 3

Williams Exploration Co. v. United States Department of Energy,
    561 F. Supp. 465 (N.D. Ok. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL STATUTES**

25 U.S.C. § 357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
25 U.S.C. § 409a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
25 U.S.C. § 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
25 U.S.C. § 476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
25 U.S.C. §§ 1701-1716 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
28 U.S.C. § 1391(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1391(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10
43 U.S.C. § 1601(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
76 Stat. 744 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
P.L. 87-748 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
S. Rep. No. 1992 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

**FEDERAL REGULATIONS**

25 C.F.R. § 151.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12
25 C.F.R. § 151.3(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
25 C.F.R. § 151.10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16
25 C.F.R. § 151.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
64 Fed. Reg. 17574 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
66 Fed. Reg. 3452 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**OTHER AUTHORITIES**

Alaska Natives and American Laws (2d ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**EXHIBIT**

EXHIBIT E - Deed of Jan. 10, 1994 By and Between Alice M. Kavairlook, Grantor,
And Bruno Bordonici, Grantee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO TRANSFER VENUE TO THE DISTRICT OF ALASKA**

<u>Introduction</u>

Plaintiff is an Alaska Native (a member of the Native Village of Barrow) and receives services from the Alaska offices of the Bureau of Indian Affairs ("BIA") within the Department of the Interior ("Defendants" or "Interior"). She seeks to have the BIA in Alaska consider an application to restore her off-reservation land (Lot 5, Block 9 of the Barrow Townsite) ("the subject property") to restricted status or to accept title to it in trust status. Three separate Interior policies prohibit the relief that Plaintiff seeks. Pursuant to Defendants' Motion to Transfer, Plaintiff focuses on only one: a policy, reflected in the BIA's land-into-trust regulations, 25 C.F.R. § 151.1, that bars the acquisition of title to lands in trust anywhere in the State of Alaska for Indians (except for the one Indian reservation in Alaska, the Annette Island Reserve for the Metlakatla Indian Community). Since its promulgation in 1980, the regulation has always centered on Alaska-specific considerations and legislation, including the Alaska Native Claims Settlement Act of 1971 ("ANCSA").

Despite the clear connections of this case to Alaska by the unique legal and land management issues that arise as well as the fact that the subject property and Plaintiff are located in Alaska, Plaintiff argues that the case should not be transferred to the District of Alaska because the Defendants have not demonstrated that she could have filed the case there. Plaintiff's strained interpretation of the venue statute is a <u>non-sequitur</u> that is procedurally wrong and flies in the face of the interests of justice, which strongly favor transfer to the District of Alaska. Most important for purposes of this briefing, in Plaintiff's attempt to disprove the availability of venue in the District of Alaska, Plaintiff has ignored in her Response the fundamental reasons favoring transfer to Alaska: Plaintiff's preference for District of Columbia venue is outweighed by countervailing interests in

1

having this case decided in close reach of the Alaska citizens and governments who will be directly affected by its outcome. Plaintiff's Response does not contest the precept that controversies impacting local interests should be decided at home where the effects of a judicial decision will be felt, nor does it dispute the localized impacts and consequences of the immediate or ultimate relief that Plaintiff seeks. The Court should order transfer of this case to the District of Alaska.

Argument

## I.     PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE OR NO DEFERENCE

Although the moving party ordinarily bears the burden of demonstrating why transfer is warranted, a plaintiff's choice of forum is entitled to less deference where, as here, she opts to sue in a forum that is remote from her home. Interior's burden to justify transfer is also lessened because it seeks transfer to Plaintiff's home forum in Alaska. See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); DeLoach v. Philip Morris Companies, 132 F. Supp. 2d 22, 24 (D.D.C. 2000); Armco Steel Co. v. CXS Corp., 790 F. Supp. 311, 323 (D.D.C. 1991); Trout Unlimited v. U.S. Dep't of Agriculture, 944 F. Supp. 13, 17 (D.D.C. 1996) (showing that a defendant must make in order to overcome the plaintiff's choice of forum "is lessened . . . where . . . transfer is sought to the forum with which plaintiffs have substantial ties and where the subject matter of the lawsuit is connected to that state"); Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (finding that defendant's "burden is substantially diminished where . . . transfer is sought to the forum where plaintiffs reside"); cf. Valley Community Preservation Commission v. Mineta, 231 F. Supp. 2d 23 (D.D.C. 2002), aff'd, 373 F. 3d 1078 (10th Cir. 2004). These deference principles apply equally to Indian plaintiffs as they do to any non-Indian plaintiff.

2

See Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 25 (D.D.C. 2002).[1]

Defendants have demonstrated why, in this case, all of the foregoing diminished standards of deference apply to the Plaintiff's choice of forum in the District of Columbia and Plaintiff has not disproved that the case could have been brought in Alaska. Without more, Defendants submit that the Court should transfer venue of this case to the District of Alaska.

## II.    PLAINTIFF IS MISTAKEN IN SUGGESTING THAT SHE COULD NOT HAVE BROUGHT THIS CASE IN THE DISTRICT OF ALASKA

A threshold requirement for a change of venue under 28 U.S.C. § 1404(a) is that the transferee forum be one where the case might originally have been brought. Nichols v. U.S. Bureau of Prisons, 895 F. Supp. 6, 8 (D.D.C. 1995). Under 28 U.S.C. § 1391(e), a civil action in which a defendant is an agency of the United States or an officer of an agency acting in his official capacity may be brought:

---

[1]    See also, e.g., Santee Sioux Tribe of Nebraska v. National Indian Gaming Commission, Civ. No. 99-528, Slip op. at 6-7 (D.D.C. Apr. 19, 1999) ("[W]here, as here, the plaintiff does not reside in the chosen district, and defendant seeks to transfer the case to plaintiff's home forum, the traditional deference to a plaintiff's choice of forum is substantially lessened"), Exhibit A, hereto; Cheyenne Arapaho v. Reno, Civ. No. 98-CV-065 (RMU), Slip op. at 3-4 ( D.D.C. Sept. 9, 1998) (Where the plaintiff argued, in opposing transfer of a case that the federal agencies involved were headquartered in Washington, D.C., the court stated: "Under 1404(a), the court accords insignificant weight to the location of federal agencies and counsel" and, "in cases that touch the affairs of many people, there are reasons for holding the trial in their view and reach rather than in remote parts of the country where they can learn by report only."), Exhibit B, hereto; Mescalero-Apache Tribe v. Janet Reno and Bruce Babbitt, Civ. No. 96-115, Slip op. at 5 (D.D.C. Feb. 5, 1996) (instructing that the court is "is to give [plaintiff's choice of forum] significantly less deference when plaintiff files a lawsuit in a foreign forum"), Exhibit C, hereto; Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States, Civ. No. 01-1042, Slip op. at 4, 6 (D.D.C. July 11, 2001) (granting the United States' motion to transfer the case to the plaintiff tribe's home forum in Wisconsin and stating that the plaintiff's choice of forum held less weight "because the plaintiffs lack any connection to their forum of choice; they do not reside here; and the forum has no particular connection to the specific matter at hand"), Exhibit D, hereto.

> in any judicial district in which (1) a defendant in the action resides,
> (2) a substantial part of the events or omissions giving rise to the
> claim occurred, or a substantial part of the property that is the subject
> of the action is situated, or (3) the plaintiff resides if no real property
> is involved in the action.

Plaintiff correctly observes that the Mandamus and Venue Act of 1962, P.L. 87-748, 76 Stat. 744,

added Section 1391(e) "'to broaden the venue of civil actions which could previously have been

brought only in the District of Columbia,' providing 'a wide choice of venue in actions against

federal agencies.'"  Response at 8 (citations omitted); see Pruess v. Udall, 359 F.2d 615, 618 (D.C.

Cir. 1965) ("Section 1391(e) was intended to relieve plaintiffs of the burden of litigating far from

their residences, to relieve the courts in the District of Columbia of some of their case load, and to

take advantage of the expertise district judges acquire in the problems peculiar to their areas.")

(citing S. Rep. No. 1992, 87th Cong., 2d Sess., reprinted in 1962 U.S.C.C.A.N. 2784).  However,

Plaintiff's novel interpretation of 28 U.S.C. § 1391(e), leading to the conclusion that the case could

not have been brought in Alaska (see Response at 9-13), is simply wrong.  Such an interpretation

would in practice lead to a diminishment of venue choices, contrary to the purpose of the noted

amendment to the venue statute.  Venue in Alaska is wholly appropriate because, as discussed

below, a substantial part of the events or omissions giving rise to Plaintiff's claim occurred there,

the land at issue and Plaintiff are located there, and pursuant to the requested relief ("that Defendants

accept and consider Plaintiff's request to have [her lot] taken into trust or restricted status" (Prayer

for Relief IV)), an order of this Court would have local impacts in Alaska, not in the District of

Columbia.

4

A.    **A Substantial Part of the Events And Omissions Giving Rise To Plaintiff's Claim Occurred In Alaska**.

Venue is proper in the District of Alaska because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred there.  See 28 U.S.C. § 1391(e)(2).  Plaintiff contends that she is being unlawfully denied an opportunity to receive a service that is administered to other Indians by the BIA within the Department of the Interior.  The omission that Plaintiff alleges – the BIA's refusal to consider applications for restricted or trust status in Alaska – occurs in the first instance in the BIA's offices in Alaska.  The BIA's regional and other local offices have day-to-day responsibility for administering services to Indians within their respective jurisdictions, and services are administered to Plaintiff by BIA offices in Alaska, including a Regional Office in Juneau.  For example, it was with the review and approval of the BIA in Alaska that Plaintiff first conveyed her Native townsite lot and thereby terminated its former restrictions against alienation – restrictions she now seeks to have restored.  See Exhibit E, hereto.[7]

Plaintiff's Response aptly describes the local process that she claims she is being unlawfully denied:

> [T]he Secretary assigns local personnel to collect and consider local evidence from local agencies, and make a local determination on the advisability of granting that request and its effect on the localities involved . . . .  The regulations require notice to and consideration of information from affected local governments.  The process entails review of the request by the BIA Superintendent, who makes a recommendation to the BIA Area [now Regional] Director, who makes the decision.

------

[7]    As explained in Defendants' Motion to Transfer (at 3-4), approval to convey a restricted Native townsite lot was required under the Alaska Native Townsite Act and once the Area (now Regional) Director approved the conveyance, the restrictions were removed.

Response at 13-14 & n.21 (citations omitted). Thus, clearly the relief Plaintiff seeks is to be effected locally, in Alaska, where the impacts will be felt. See Williams Exploration Co. v. U.S. Department of Energy, 561 F. Supp. 465, 467 (N.D. Ok. 1980) (cause of action for venue purposes arose where impact of ruling would be felt); cf. Town of Ledyard v. United States, 1995 WL 908244 at *1 (D.D.C. May 31, 1995) (venue proper in district where land that is impacted by agency action is located).

    In addition to local impacts flowing from the requested relief, a substantial part of the events giving rise to Plaintiff's claim occurred in Alaska. Plaintiff alleges in her Complaint that, in 1994, a group of Alaska Native Villages petitioned for a rulemaking to change the Alaska land-into-trust policy and urged the revocation of a 1978 memorandum by the then-Associate Solicitor for Indian Affairs, which opined that ANCSA precluded the acquisition of land in trust in Alaska. See Complaint ¶ 13 (citing 60 Fed. Reg. 1956 (Jan. 5, 1995) (giving notice of receipt of petition and soliciting comments on it)). Interior studied and referred to the petition when, in 1999, it publicly called into question the 1978 memorandum. See 64 Fed. Reg. 17574, 17578 (Apr. 12, 1999); Complaint ¶ 14. When, in 2001, Interior rescinded the 1978 memorandum, it cited "the comments and legal arguments submitted by Alaska Native governments and groups and by the State of Alaska and two leaders of the Alaska legislature on whether the 1978 Opinion accurately states the law." 66 Fed. Reg. 3452, 3454 (Jan. 16, 2001); see Complaint ¶15. Plaintiff argues, "any legal theory that Secretarial authority to refuse all land-into-trust applications in Alaska could be based on ANCSA was disavowed when . . . the Department withdrew the 1978 [memorandum]." Response at 17; see Complaint ¶ 17. Thus, according to Plaintiff, the rescission of the 1978 memorandum is relevant to her claim and it is therefore quite noteworthy that all of the interested participants in the process

6

leading to that rescission action were from Alaska.

Further, Plaintiff's Complaint recounts a subsequent 1999-2001 rulemaking that involved the Alaska land-into-trust policy and that also serves to highlight the local nature of this controversy. See Complaint ¶¶ 14-16. Of those who submitted comments on the Alaska policy in the rulemaking, virtually all were located in Alaska. Commenters included individual Alaskan tribes, the Alaska Inter-Tribal Council (a statewide tribal organization), the Arctic Slope Native Association, the Attorney General for the State of Alaska, and the Alaska State Legislature. Interior also solicited comments from the State of Alaska's Rural Governance Commission on the Alaska policy. See 64 Fed. Reg. at 17578. The foregoing local participation regarding the Alaska land-into-trust policy demonstrates that this case is really about Alaska citizens, governments, and land, and supports Defendants' position that this case could have been (and should be) brought in Alaska. See generally Trout Unlimited, 944 F. Supp. at 20 (subject matter of the case concerned forests, water resources, and local individuals who derived enjoyment from the areas affected by the agency decision, and acknowledged the local interest in the matter based on comments submitted on proposed action).

### B.    The Subject of the Action Is Land Located In Alaska, And Alaska Only

Plaintiff makes a specious argument that no land is the "subject of the action" while at the same time land is "involved in" the action, thereby raising a possible "issue of first impression" and forcing the wrong conclusion that neither subsection 1391(e)(2) nor (3) authorizes venue in the District of Alaska. See Response at 9-13. Plaintiff's supposition is a non-sequitur, because both Plaintiff and the subject property, the subject matter of this action, are situated in Alaska.

Congress' intention in enacting Section 1391(e) was to prevent a plaintiff from filing, in the

home district, a lawsuit that concerned real property when the real property at issue was located in

a different district.  The Senate Report to the Mandamus and Venue Act amendments explains:

> The Department of Justice also expressed concern that where the
> plaintiff resides in a different judicial district than that in which
> real property involved in the action is situated, it would not be in
> the interest of an expeditious proceeding to have the action brought
> in the judicial district where the plaintiff resides.  The committee
> considered this suggestion meritorious and approved the
> amendment set out to section 2 of the bill.

S. Rep. No. 1992, 87th Cong., 2d Sess., reprinted in 1962 U.S.C.C.A.N. 2784, 2787; see Jewish War

Veterans v. United States, 695 F. Supp. 1, 2-3 (D.D.C. 1987) ("Congress imposed this limitation out

of concern that essentially local disputes affecting local land interests should be resolved by local

judges.").  Thus, courts have allowed a plaintiff to sue in her home district even though land located

in another jurisdiction was at issue only when the land was "tangentially involved."  See Response

at 12 nn. 18-19 and cases cited therein; Shell Oil Co. v. Babbitt, 920 F. Supp. 559, 563-64 (D. DEL.

1996).  Here, however, both the Plaintiff and the land at issue are located in the same district.

Plaintiff's wrong interpretation of Section 1391(e) – to the effect that a plaintiff cannot not bring a

claim in the district where the subject land is located if the plaintiff also resides there – would

eliminate, not expand, venue choices afforded to a plaintiff in a manner directly contrary to the

understood purpose of the Mandamus and Venue Act amendments.  Thus, as a threshold matter,

regardless of whether land is the "subject of" this action and/or "involved in" it for purposes of the

venue statute, venue lies in the District of Alaska under Section 1391(e) because both the Plaintiff

and the land at issue in this case are located in Alaska.

Moreover, the immediate relief that Plaintiff seeks in this case is an order directing Interior

(through the BIA in Alaska) to consider an application to place restrictions on the deed to her land

8

that would prohibit alienation of the land without federal approval, or <u>for the United States to
acquire legal title to her land in trust status for her</u>.[3]  The inescapable fact, however, is that this case
centers on real property located in Alaska – Plaintiff's Lot 5, Block 9 of the Barrow Townsite (<u>see</u>
Prayer for Relief IV).  Thus, Plaintiff wrongly argues that land is not the subject of this case, given
that she specifically requests relief concerning her lot and the policy she challenges prohibits the
placement of land in trust in Alaska.

      Assuming <u>arguendo</u> the validity of Plaintiff's supposition, one would have to reexamine
other decisions of this District Court that transferred cases back to the home district where the
subject property and landowner/plaintiff were located.  <u>See</u>, <u>e.g.</u>, <u>Trout Unlimited</u>, 994 F. Supp. at
16 (Section 1391(e)(2) affords venue in District of Colorado for challenge to Forest Service decision
to grant easement for continued operation of reservoir affecting land and persons located in
Colorado); <u>Town of Ledyard v. United States</u>, 1995 WL 908244 *3 (D.D.C. 1995) (Section
1391(e)(2) affords venue in District of Connecticut in action challenging decision to acquire land
in trust in Connecticut, "because the case involves agency action impacting land located there"); <u>see
also</u>, <u>e.g.</u>, <u>Forest Conservation Council v. Madigan</u>, 1992 LEXIS 21805 at *5-6 (D. Ore. 1992)
(action involving administrative challenge to road project under environmental laws "center[ed]"
on real property located in Idaho, <u>requiring</u> the case to be transferred to the District of Idaho, and
in any event transfer was warranted under 28 U.S.C. § 1404(a) in the interests of justice because the
plaintiffs, the subject land, and those persons directly concerned in the litigation were in Idaho)
(citing <u>Ferguson v. Lieurance</u>, 565 F. Supp. 1013, 1015 (D. Nev. 1983) (characterizing as legal

---

[3]     The characteristics of restricted and trust land are discussed in Defendants' Motion to
Transfer at page 1, note 1 and page 4, note 4.

sophistry "the proposition that an action for declaratory relief to hold void and unenforceable any statutes, rules, regulations or practices which prescribe essential preliminary steps or procedures to initiate entry on the public lands of the United States under the public land laws is not an action involving real property," because "[t]he obvious and undeniable purpose of such an action is to place the public officials in a position which will require them to accept applications, issue permits, grant entry, or whatever, to the end that plaintiff will acquire the real property interest he seeks.")).

In summary, the Plaintiff is a resident of Alaska; the subject property is located in Alaska; and by Plaintiff's own acknowledgment, events and omissions in Alaska involving local Alaskan interests have given rise to Plaintiff's claim. Plaintiff's assertion that the action could not have been brought in Alaska is wrong based on the intent of the 1962 Mandamus and Venue Act and amendments and subsequent case law on the point.

## III.    SUBSTANTIAL AND IMMEDIATE LOCAL ALASKAN INTERESTS ARE AT STAKE IN THIS LITIGATION

### A.    This Case Is Of Local, Not National, Concern And Involves Alaska-Specific Statutes And Regulations

This case is about an individual Alaska Native who desires to have her off-reservation land located at Lot 5, Block 9 of the Barrow Townsite restored to restricted status or placed in trust. Prayer for Relief IV. As a threshold matter, this case is not, as Plaintiff urges, about any Interior policy that categorizes recognized tribes based on their status as tribes. See Response at heading II and pp. 7-8. Plaintiff is an individual Indian who is seeking the placement of lands in restricted or trust status for herself.

Notwithstanding the off-reservation status of the subject property and its ownership by an individual Indian, Plaintiff characterizes the action as a tribal discrimination case and asserts that

the 1994 amendments to Section 16 of the Indian Reorganization Act of 1934, codified at 25 U.S.C. § 476 (f) and (g), and the Equal Protection Clause of the 14th Amendment are being violated and that both are national in scope. See Response at 3. Section 476(f) and (g) prohibits federal agencies from promulgating (or renders ineffective) any regulation that "classifies, enhances, or diminishes the privileges and immunities available to a federally recognized Indian tribe relative to the privileges and immunities available to other federally recognized tribes by virtue of their status as Indian tribes." (emphasis added). Section 476 (f) and (g) directly overruled a 1936 Solicitor's Opinion that drew a distinction between the governmental powers that may be exercised by tribes with historic status versus "created" tribes organized under Section 16 of the Indian Reorganization Act. See Response at 4; 140 Cong. Rec. S6147 (daily ed. May 19, 1994) (statement of Sen. McCain). Thus, the statute prohibits treating federally recognized tribes differently based on their date or method of recognition or organization, i.e., "by virtue of their status as Indian tribes." Section 476(f) and (g), however, is irrelevant for purposes of this case: Plaintiff is an individual, not an Indian tribe, and the statute prohibits differing treatment of Indian tribes by virtue of their status as tribes.[4]

Plaintiff only focuses on a single Interior policy reflected in the BIA's land-into-trust regulations, 25 C.F.R. § 151.1. Although the Secretary has general authority under Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. § 465, to place land in trust for individual Indians irrespective of the location of the land (whether it is located on-reservation, off-reservation, in-state,

---

[4]    In a case in which Section 476(f) and (g) is relevant, the Secretary of the Interior has taken the position that the statute prohibits the denial of a land-into-trust application on the basis that the tribal applicant was federally recognized after the enactment of the Indian Reorganization Act in 1934. Carcieri v. Norton, 423 F. 3d 45 (1st Cir. 2005), petition for rehearing granted (Dec. 5, 2006).

or out-of-state), section 151.1 prohibits the acquisition of land in the State of Alaska in trust for any

Indian (except for members of the Metlakatla Indian Community, which has the only reservation in

Alaska), in light of Alaska-specific circumstances and legislation.  As explained in Defendants'

Motion to Transfer, at 4-6, ANCSA expressed the congressional policy that "the settlement should

be accomplished . . . without creating a reservation system or lengthy wardship or trusteeship . . .

," 43 U.S.C. § 1601(b), and it purposefully altered the pattern of Native land tenure in the state.  For

example, ANCSA revoked the Secretary's authority to provide allotted lands to individual Indians

in Alaska.  See 43 U.S.C. § 1617(a).  The Alaska land-into-trust policy is based on such factors and

not on any considerations of tribal status.

    Two other policies not addressed by Plaintiff also bar the relief that Plaintiff seeks.  Like the

Alaska land-into-trust policy discussed above, none of these policies are discriminatory policies

against Alaska Natives and they underscore that this case is a local matter.  First, although as noted

above the Secretary is generally authorized to acquire land in trust for Indians irrespective of the

land's location, the Secretary also has a separate policy against placing off-reservation land in trust

status for individual Indians.  This policy is also reflected in the BIA's land-into-trust regulations.

See 25 C.F.R. §§ 151.3(b), 151.11.  This general policy, combined with the fact that Congress

through ANCSA revoked all existing reservations in the State of Alaska except one (the Annette

Island Reserve for the Metlakatla Indian Community) (see Defendants' Motion to Transfer at 5), in

practical terms limits trust acquisitions in Alaska to on-reservation lands for members of the

Metlakatla Indian Community.

    Second, at one time, Congress authorized the placement of land in Alaska in restricted status

under the Alaska Native Townsite Act ("ANTA"), but that statute was rendered "obsolete" by

ANCSA, and repealed in 1976 by Section 703(a) of the Federal Land Policy and Management Act ("FLPMA"). <u>See</u> Defendants' Motion to Transfer at 2-3 & n.5; <u>cf.</u> 25 U.S.C. § 409a. Accordingly, Interior continued to convey restricted deeds to townsite lands post-ANCSA only if the Alaska Native applicants could establish that they commenced occupancy prior to the passage of FLPMA. <u>Id.</u> at 5-6. Plaintiff asserts that Alaska-specific laws such as ANTA and ANCSA "neither require[] nor forbid[] the relief plaintiff seeks here" and otherwise are of little relevance to this case. <u>See</u> Response at 3. However, these laws must be evaluated in view of Plaintiff's requested relief – something that is plainly now outside of Interior's authority.

Thus, Plaintiff's characterization of the case as a "tribal discrimination case" against Native Alaskans relative to other Native Americans is not legally viable. If granted, the requested relief would set Plaintiff apart from other individual Native Americans, who generally cannot apply to have land placed in restricted status, cannot apply to have off-reservation land placed in trust status, and cannot (except for members of the Metlakatla Indian Community, which has a reservation in Alaska) apply to have land in the State of Alaska placed in trust status. In view of this, and long-standing Alaska-specific statutes and Interior policies underlying this case, Plaintiff's attempts to "nationalize" her issues and to minimize Alaska-specific interests is inaccurate as a legal matter and does not support venue in the District of Columbia. Transfer to the District of Alaska is wholly appropriate.

**B.     The Immediate and Substantial Impacts of the Relief Sought By Plaintiff Will Be Felt In Alaska, Where the Subject Property Is Located**

Plaintiff's Response does not dispute and indeed highlights the movant's point with regard to the substantial impacts that would result from the immediate relief that Plaintiff seeks in her Prayers for Relief. In addition, the impacts that would flow from Plaintiff's ultimate goal of having

13

land in restricted or trust status heighten the local interests in having this case litigated in Alaska.

The sole and immediate relief sought by Plaintiff – an injunction against Interior's policy regarding Alaska and a requirement for Interior to consider applications to place lands in trust there – would place new burdens on the state and its political subdivisions, and the BIA in Alaska. Alaskan private interests would be affected as well. Plaintiff correctly notes that, if Interior is required to consider land-into-trust applications in Alaska, then affected local governments will be afforded notice and an opportunity to offer information and opinions on the applications. See Response at 14, n.21. Indeed, that is precisely the point regarding the impacts that this case may have on Alaska, and Alaska only. If Plaintiff obtains the relief she seeks, it would be incumbent on the State of Alaska and local governments to evaluate and provide information to the BIA in Alaska on the potential jurisdictional, zoning, and tax impacts of the acquisition, in addition to the possible need for environmental review along with other local affected interests. See, e.g., 25 C.F.R. § 151.10. New burdens would be imputed to Alaska Natives as well. For example, in the lower 48 states, Indians have sometimes opposed land-into-trust applications of other Indians where they assert historic connections to the same land or have other competing interests. Indeed, Plaintiff's own Response underscores the local nature and impacts of these affairs:

> Consider that . . . when a local tribe or local tribal member seeks to have [a] local parcel of land taken into trust, the Secretary assigns local personnel to collect and consider local evidence from local agencies, and make a local recommendation on the advisability of granting that request and its effect on the localities involved . . . .

Response at 13-14.

Further, Plaintiffs' ultimate goal of having land placed in trust would likely have other substantial consequences within Alaska. Lands in trust status would become exempt from taxation;

there would be restrictions against certain voluntary or involuntary alienation of the land[5]; and state and local regulation of the use of the lands would be precluded.  See Defendants' Motion to Transfer at 1 n.1 and authorities cited therein.  These are a few examples of the substantial and immediate impacts that would be realized in Alaska – and Alaska alone – by virtue of the relief that Plaintiff seeks in initiating this lawsuit.  Moreover, Plaintiff's ultimate goal implicates changes to the pattern of land tenure and governmental jurisdiction throughout Alaska.  Plaintiff does not dispute these local impacts and concerns.  Besides Plaintiff's own interests in having lands placed in trust, there are thousands of other individual Indians who may also seek lands in trust in Alaska – another local impact.

## IV.  THE INTERESTS OF JUSTICE WEIGH HEAVILY IN FAVOR OF TRANSFER TO THE DISTRICT OF ALASKA

Plaintiff accepts the precept that local issues can sometimes be better decided at home, and even states that the principle of local resolution of local issues may warrant change of venue to Alaska "if [the Secretary] were defending a regulation that promoted local decisionmaking." Response at 13-14 (emphasis in original).  Plaintiff argues, however, for the Court to unduly limit the scope of its evaluation of the interests of justice, and simply focus on whether the Alaska land-into-trust policy was made in Washington, D.C., or in Alaska.  See id. at 15.  The interests of justice, however, are not so limited, and Plaintiff's argument is also belied by the fact that ANCSA (in which, notably, the Metlakatla Indian Community did not participate) is behind the Alaska land-into-trust policy.

Change of venue decisions in the District of Columbia plainly demonstrate that Plaintiff's

---

[5]      Unlike tribal trust land, individually held trust land is subject to condemnation by the state.  See 25 U.S.C. § 357.  This distinction was not made in Defendants' Motion to Transfer.

crabbed interpretation of the "interests of justice" is incorrect.  In <u>Town of Ledyard</u>, the court ordered transfer of a land-into-trust appeal to the District of Connecticut.  The court observed, in response to the plaintiffs' argument that the case had national significance because it involved "the intersection of national policies regarding Indians and national environmental policies," that it was "also a controversy the resolution of which will have an indisputably local effect," and that the interests of justice "strongly favor[ed]" transfer.  1995 WL 908244 at *2 (D.D.C. 1995).

Further, in <u>Hawksbill Sea Turtle v. Federal Emergency Management Agency</u>, where the court transferred a case against several federal agency defendants from the District of Columbia to the District Court of the Virgin Islands, the court noted that the "interests of justice," which includes consideration of the regional nature of the dispute, "may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in another direction."  939 F. Supp. 1, 4 (D.D.C. 1996).  The court also "note[d] the importance of allowing local citizens to attend and observe the proceedings of th[e] case."  <u>Id.</u>

And, in <u>Trout Unlimited</u>, the court ordered transfer to the District of Colorado after considering "the more compelling interest of the State of Colorado in having this localized controversy decided at home," for the benefit of those "whose rights and interests are in fact most vitally affected by the suit."  944 F. Supp. at 19-20 (D.D.C. 1996).  The court also noted that courts in other districts have found that the most significant criterion for deciding a motion to transfer is the interest of justice and that the interests of justice may be dispositive in a given case.  <u>Id.</u> at 19 (citations omitted).  Further, the court stated that "this policy rationale applies equally to the judicial review of an administrative decision which will be limited to the administrative record."  <u>Id.</u> (citation omitted).

16

The interests of justice plainly warrant transfer to the District of Alaska, notwithstanding Plaintiff's bare argument that the challenged policy was issued in Washington, D.C., because the challenged policy is based upon considerations unique to Alaska, including a state-specific Native claims settlement act; the policy applies only to Alaska; virtually all of those who have commented on or sought a change in the policy have been from Alaska; the policy is implemented locally by the BIA in Alaska; and the impacts of the policy are felt by the citizens and governments in Alaska.

Plaintiff then asserts that "the number of land-into-trust issues before the Federal District Court for the District of Alaska has been, to the best of plaintiff's knowledge, zero." Response at 16. Irrespective of whether this assertion is true or not, there are few parcels of trust land and well in excess of a million acres of individually owned land in restricted status in Alaska. Moreover, Alaska-specific issues distinguish this case from a typical land-into-trust case.

Every federal court is proficient in applying federal laws of broad geographic applicability, such as federal environmental statutes. See, e.g., Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006). This case, however, implicates statutes that are Alaska-specific. ANCSA in particular has been described as a "stunning[ly] complex[]." D. Case and D. Voluck, Alaska Natives and American Laws 157 (2d ed. 2002). It is material to Defendants' Motion to Transfer that the courts of the Ninth Circuit have considerable expertise with the subset of special laws concerning Alaska and Alaska Natives. See, e.g., Alaska v. Alaska Native Village of Venetie Tribal Government, 522 U.S. 520 (1998) (holding that the lack of federal superintendence over settlement lands distributed pursuant to ANCSA meant that the lands were not Indian country within 18 U.S.C. § 1151). Indeed, in enacting the Mandamus and Venue Act amendments, and thereby, opening up the several judicial districts to lawsuits against federal agencies, Congress sought to "take advantage

17

of the expertise district judges acquire in the problems peculiar to their areas." <u>Pruess</u>, 359 F.2d at

618 (citing S. Rep. No. 1992, 87th Cong., 2d Sess., <u>reprinted in</u> 1962 U.S.C.C.A.N. 2784); <u>Jewish</u>

<u>War Veterans</u>, 695 F. Supp. at 2 (Congress sought to have "essentially local disputes affecting local

land interests . . . resolved by local judges.").  Further, the early stage of this case, where this Court

has not yet directly dealt with merits issues (no answer or other responsive pleading has been filed),

favors transfer.  <u>See</u> <u>S. Utah Wilderness Alliance v. Norton</u>, 315 F. Supp. 2d 82, 89 n. 2 (2004).

Other cases involving Indian claims settlements have been reviewed in the local districts

where the impacts of decisions will be felt.  <u>See</u>, <u>e.g.</u>, <u>Carcieri</u>, 423 F. 3d at 45 (involving, <u>inter alia</u>,

issues of whether the Secretary of the Interior properly decided to acquire land in trust for a tribe

notwithstanding the Rhode Island Indian Claims Settlement Act, 25 U.S.C. §§ 1701-1716, which

the state argued was patterned after ANCSA and precluded the acquisition of land in trust, and the

relevance of Section 476(f) & (g) to trust land acquisitions for Indian tribes that were recognized

after enactment of the IRA in 1934); <u>Connecticut ex rel. Blumenthal v. Department of the Interior</u>,

228 F.3d 82 (2d Cir. 2000) (involving the Secretary's authority to acquire land in trust following the

Connecticut Indian Land Claims Settlement Act, 25 U.S.C. §§ 1751-60).  This case should likewise

be litigated locally, in Alaska.

Conclusion

For these reasons, Defendants' motion to transfer venue of the case to the District of

Alaska should be granted.

18

Dated this 23rd day of January, 2007.

                                                 Respectfully submitted,

                                                 MATTHEW J. MCKEOWN
                                                 Acting Assistant Attorney General

                                                        /s/
                                               DANIEL G. STEELE
                                             D.C. Bar No. 962894
                                           U.S. Department of Justice
                                         Environment and Natural Resources Division
                                         General Litigation Section
                                         P.O. Box 663
                                         Washington, D.C.  20044-0482
                                         Telephone:  (202) 305-0484
                                         Fax:       (202) 305-0506

Of Counsel:
Thomas A. Blaser
Division of Indian Affairs
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, N.W.  MS 6513
Washington, D.C.  20240
Telephone: (202) 208-5811
Fax:      (202) 219-1791

19

## CERTIFICATE OF SERVICE

I, Daniel G. Steele, hereby certify on this 23rd day of January 2007, I have caused the foregoing Defendants' Defendant's Reply in Support of Defendants' Motion to Transfer Venue to the District of Alaska to be served by United States mail, first-class postage prepaid, on the following counsel at their addresses:

Richard A. Guest, Esquire

1712 N Street, N.W.

Washington, D.C.  20036-2976


Andrew Harrington, Esquire

Alaska Legal Services Corporation

1648 South Cushman, Suite 300

Fairbanks, AK 99701


Heather Kendall Miller, Esquire

Native American Rights Fund

420 L Street, Suite 505

Anchorage, Alaska  99501


This is in addition to the electronic service upon Plaintiff's attorney of record.


_____/s/_____

Daniel G. Steele