UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANTEE SIOUX TRIBE OF NEBRASKA, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 99-528 (GK) |
| NATIONAL INDIAN GAMING COMMISSION, | : |
| Defendant. | : |

FILED
APR 19 1999
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

Plaintiff, Santee Sioux Tribe of Nebraska ("the Tribe"), has brought suit in this Court challenging the constitutionality of various provisions of the Indian Gaming Regulatory Act ("IGRA" or "the Act"), 25 U.S.C. § 2701-2721 (1994). In addition to seeking a declaratory judgment, the Tribe seeks to enjoin enforcement of a final Order of Closure of the National Indian Gaming Commission ("NIGC or "the Commission") which would close its Ohiya Casino in the State of Nebraska. Defendant, the NIGC, has moved to transfer the case to the United States District Court for the District of Nebraska, where extensive court and appellate proceedings relating to this Casino have already taken place, and where contempt proceedings are ongoing. Plaintiff opposes the transfer.

Upon consideration of Defendant's Motion, Plaintiff's Opposition, Defendant's Reply, the applicable case law, and the entire record herein, for the reasons discussed below, Defendant's

**EXHIBIT A**

Motion to Transfer is **granted**.

I. Statutory Background

In 1988, Congress enacted the Indian Gaming Regulatory Act which was designed to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal government." 25 U.S.C. § 2701(5)(1994).

The Act divides gaming into three categories. Class III gaming, which is the category at issue in this case, includes banking card games, dice games, roulette, dog racing, horse racing, lotteries, and electronic and electro-mechanical facsimiles of games of chance. 25 U.S.C. § 2703 (6)-(8)(1994).[1] Under the statute, such Class III gaming activities are lawful on tribal lands only if they are, inter alia, "located in a state that permits such gaming for any purpose by any person, organization, or entity;" and operated in accordance with the provisions of a Tribal-State compact entered into by the Indian tribe and the state in which the tribe is located. 25 U.S.C. § 2710(d)(1)(1994).

When a tribe becomes interested in operating Class III gaming activities, it is required under the statute to initiate the process by requesting the State to enter into negotiations, and the State is required "to negotiate with the Indian tribe in good faith to enter into such a compact". 25 U.S.C. § 2710(d)(3)(A)(1994).

---

[1] The Class III gaming operated by the Tribe consisted of video slot, poker, and blackjack machines.

2

If the State fails to negotiate in good faith, the Act provided that the tribe could sue the State in federal district court; the Act also provided various statutory remedies designed to bring the state and the tribe to a final tribal-state compact so that the tribe could satisfy the requirements of IGRA and conduct lawful gaming activities. 25 U.S.C. §§ 2710(d)(7)(A) and (B)(1994).

In 1997, the Supreme Court ruled that Congress lacked the authority to abrogate a State's Eleventh Amendment immunity from suit and that Section 2710(d)(7)(A) of IGRA was therefore unconstitutional. Seminole Tribe of Florida v. Florida, 517 U.S. 49 (1996). The practical consequence of this ruling was to leave Indian tribes without recourse to the courts if they were unable, because of bad faith negotiations on the part of the State, to conclude the statutorily required Tribal-State compact. Without the existence of such a Tribal-State compact, the tribes would be unable to obtain permission from the Commission to operate gaming facilities.

II. Procedural History

Plaintiff is a federally recognized tribe whose reservation is entirely situated within the State of Nebraska. In February 1993, the Tribe began a long period of negotiations with the State of Nebraska to conclude a Tribal-State compact for the conduct of Class III gaming on the Tribe's reservation. Ultimately, the negotiations failed, and there was evidence before the Commission that would "tend to suggest that the Governor did not negotiate in

3

good faith". Pl.'s Ex. 1 at 14.[2] In February 1996, the Tribe opened its Ohiya Casino, a gaming facility with Class III gaming devices.

In February 1996, the Tribe also filed an action in the U.S. District Court for the District of Nebraska against the State of Nebraska and its Governor, pursuant to IGRA § 2710(d)(7)(A)(i), alleging bad-faith negotiations by the State. That suit was dismissed on grounds of Eleventh Amendment immunity under Seminole. Santee Sioux Tribe v. State of Nebraska, 121 F.3d 427 (8th Cir. 1997).

Thereafter, the Chairman of the NIGC issued a "Notice of Violation" stating that the Tribe's operation of certain Class III games in the absence of the requisite Tribal-State compact violated 25 U.S.C. § 2710(b). Despite voicing "serious concerns about the fairness" of the Tribal-State negotiation process, and recognizing the Tribe's critical need for revenues generated by operation of the Casino, the Chairman concluded on May 2, 1996, that the "NIGC does not have the authority to address issues related to the process by which tribal-state compacts are negotiated" and that he had "no choice but to order the closure of the Class III gaming activity presently being conducted". 25 C.F.R. §§ 573.6(11)(1996). The Tribe closed the Casino on May 5, 1996, only to reinitiate gaming activities several months later.

---

[2] The Commission did not hold, as Plaintiff misrepresents in its papers, "that the evidence demonstrated" that Nebraska failed to negotiate in good faith". Pl.'s Mem. Opposing Def.'s Mot. to Transfer at 3 n1. The Court does not appreciate such a gross exaggeration, not to say misstatement, of the record.

4

Thereafter, much procedural maneuvering ensued before the Commission and in federal court, the details of which are set out at great length in the parties' papers. Ultimately, after many proceedings before Chief Judge William G. Cambridge of the United States District Court for the District of Nebraska, on appeal, the Eighth Circuit held that the United States could seek civil injunctive relief against the Tribe under Nebraska's nuisance law, pursuant to 18 U.S.C. § 1166. It also ruled that because the gaming machines in question were illegal under Nebraska law and the State could not therefore compact for them even if it chose to negotiate in good faith, that it need not reach the issue of whether all provisions of the IGRA related to compacting are unconstitutional. The Supreme Court denied Plaintiff's petition for a writ of certiorari. United States v. Santee Sioux Tribe of Nebraska, 135 F.3d 558, 565-566 (1998), cert. denied, 119 S. Ct. 48 (1998).

On October 15, 1998, the Eighth Circuit issued a mandate to the District Court to enter an "order enjoining the Tribe's operation of class III gaming devices and enforcing the Chairman's closure order." On November 24, 1998, the District Court issued the mandated order. Plaintiff did not close the Ohiya Casino. On February 1, 1999, the District Court found the Plaintiff in contempt of court for continuing to operate the Casino, and fined it $3000 per day for each day the gaming facility continued to remain open. The Ohiya Casino remains open.

On March 1, 1999, the Tribe filed the present action which it

5

styles as an administrative appeal under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, from the Final Order of the NIGC, seeking a declaration that the law upon which that Final Order is predicated, the IGRA, is unconstitutional.

## III. Analysis

Defendant has moved to transfer this case to the United States District Court for the District of Nebraska under 28 U.S.C. § 1404(a)(1993), which provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

Defendant concedes that it bears the burden of establishing that transfer is proper and serves the purposes of § 1404(a) "to prevent the waste `of time, energy and money' and `to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . .'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Airline Pilots Ass'n. V. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987).

A threshold question under § 1404(a) is whether the action may have been brought in Nebraska. The Tribe concedes, as it must, that the case could have been brought in the District of Nebraska.

The Court is well aware that, ordinarily, a plaintiff's choice of forum is entitled to substantial weight and deference. Environmental Crimes Project v. EPA, 928 F. Supp. 1, 2 (D.D.C. 1995). However, where, as here, the Plaintiff does not reside in the chosen jurisdiction, and Defendant seeks to transfer the case

6

to Plaintiff's home forum, the traditional deference to a plaintiff's choice of forum is substantially lessened. _Citizen Advocates for Responsible Expansion v. Dole_, 561 F. Supp. 1238, 1239 (D.D.C. 1983).

The parties very much dispute whether the convenience of the parties and witnesses will be served by trying this case in the District of Columbia or Nebraska. There is no question that Plaintiff's reservation is located within the District of Nebraska, that all the gaming activities in question are also located there, and that both sides have experienced and knowledgeable counsel in both jurisdictions. Therefore, the Court does not find that the convenience of counsel and parties is a factor that is persuasive one way or the other.

If witnesses are required to testify, then it is clear that the witnesses reside in or near the State of Nebraska and their convenience would be served by litigating the case there. However, Plaintiff maintains that this case is solely an administrative appeal from a final determination of the NIGC pursuant to the APA and, therefore, only the administrative record will be placed in the evidence. On the record as it stands now, this appears to be the case. If so, there would be no inconvenience to Defendant, who is located in Washington, D.C., in litigating the summary judgment motions here rather than in the District Court in Nebraska.

However, there are three compelling reasons which fully justify transferring the case to the District Court in Nebraska.

First, the Defendant is correct that the interests of justice

7

will best be served by transferring the case to the District Court in Nebraska. As the Supreme Court explained in applying the doctrine of <u>forum non conveniens</u> in <u>Gulf Oil v. Gilbert</u>, 330 U.S. 501, 509 (1947):

> In cases which touch the affairs of many persons, there is reason for holding the trial [or motions hearing] in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

While there is some truth to Plaintiff's argument that in this day of computers and virtually instantaneous communications, <u>Gilbert</u> is far less persuasive than it was fifty years ago. However, the federal courts do not allow cameras or tape recorders in courtrooms, there is intense local interest in this controversy, and there is a significant benefit to allowing those whose lives will be most immediately affected by the outcome of litigation, as well as the local media, to physically attend the proceedings which will determine that outcome. There is no substitute for personally observing, watching and evaluating the judge who presides, hearing the quality of the arguments, and getting a first-hand impression of whether the proceeding is being handled with the appropriate fairness and seriousness. Furthermore, the members of this District Court have repeatedly honored this principle by transferring cases involving Indian gaming controversies back to the state in which the controversy and the gaming were located. See <u>Towns of Ledyard, N. Stonington, and Preston, Conn. v. United States</u>, Civ. No. 95-0880, slip op. at 4-5 (D.D.C. May 31, 1995); <u>Apache Tribe of the Mescalero Reservation v. Reno</u>, Civ. No. 96-115,

slip op. (D.D.C. Feb. 5, 1996); Cheyenne-Arapaho Tribe of Okla. v. Reno, Civ. No. 98-065, slip op. (D.D.C. Sept. 8, 1998); and Citizen Advocates for Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983).

Second, transfer of this case will avoid the waste of judicial resources and the very real possibility of inconsistent results. There is no question that Chief Judge Cambridge, who has presided over this litigation for close to three years, is intimately familiar with the facts, the extensive procedural history, and the applicable law. Obviously, it would be a waste of the parties' time and energy as well as of precious judicial resources to litigate a closely related case before a newly assigned judge, as opposed to Chief Judge Cambridge.

Third, and most persuasive of all, it is perfectly clear that Plaintiff is attempting to forum-shop and avoid the consequences of having lost its case before the Eighth Circuit after having raised the same Constitutional arguments which it raises here. That court squarely rejected these arguments:

> The Tribe argues that because of the Supreme Court's determination in Seminole Tribe that, Congress was not empowered to authorize lawsuits by Indian tribes against states that fail to negotiate in good faith for a tribal-state compact, all provisions of the IGRA are unconstitutional. We decline to address this argument given our conclusion that, under the IGRA, the State is not required to negotiate for gambling that is illegal under Nebraska law. . . . As we already have determined, the class III gambling activities in which the Tribe is engaged are illegal under Nebraska law, ruling out any duty on the part of the State to negotiate a compact with the Tribe for such gambling. United States v. Santee Sioux Tribe of Nebraska, 135 F.2d at 565-566.

Thus, Plaintiff is asking this Court to render a ruling which would squarely conflict with the ruling of the Eighth Circuit. That was not the intent of the drafters of Section 1404(a):

> The transfer provisions in the U.S. Code, which grew out of the common law doctrine of forum non conveniens, were in part intended to prevent forum shopping. Cheeseman v. Carey, 485 F. Supp. 203, 214-214 (S.D.N.Y. 1980). This Court cannot find that it is in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case. Schmid Lab., Inc. v. Hartford Accident and Indem. Co., 654 F. Supp. 734, 737 (D.D.C. 1986).

For all the foregoing reasons, the Defendant's Motion to Transfer is **granted**.

April 16, 1999
Date

Gladys Kessler
United States District Court Judge