**Committee Minutes**

**Feb 10, 1997**

```
HB 120 - STATE IMMUNITY FROM SUIT IN FED COURT


Number 100


CHAIRMAN JOE GREEN advised members they would first consider HB
120, "An Act relating to the power of the attorney general to
waive immunity from suit in federal court; and providing for an
effective date."

CHAIRMAN GREEN invited Representative Hudson, prime sponsor, to
address the committee.

REPRESENTATIVE BILL HUDSON, Prime Sponsor of HB 120, expressed
that it had just recently come known that legislative action was
necessary in order to protect a broader interest that the state
had.

REPRESENTATIVE HUDSON explained that the Eleventh Amendment of
the U.S. Constitution prohibits suits against states in federal
court for damages brought by citizens of the state.  He pointed
out that recent decisions of the United States District Court for
the District of Alaska had prohibited the attorney general from
waiving the state's Eleventh Amendment immunity from suit without
express authority from the legislature.  Representative Hudson
stated that although the attorney general had statutory authority
to represent the state in all civil actions in which the state
was a party, there was no specific legislative authority to waive
the Eleventh Amendment immunity where it was in the state's best
interest to do so.

Representative Eric Croft arrived.

REPRESENTATIVE HUDSON advised members that from time to time,
there were cases where it would be procedurally advantageous for
the state to waive that immunity and have a case heard in federal
court.  HB 120 addressed one case the state would like to be a
party of, and Representative Hudson stated that a proposed
amendment would include one other case that the state felt it
should become a party to.

REPRESENTATIVE HUDSON advised members that the first case was
```

addressed in the original language of HB 120.  The United States was being sued by plaintiffs in Alaska to seek judgment that the United States owns the tidelands in the Tongass National Forest.  Representative Hudson reiterated the need to waive the Eleventh Amendment immunity clause in order for the state to become party to that suit to determine the state's title to the lands in dispute.  Representative Hudson explained that the only way the state could litigate title to those tidelands was by joining as a defendant in

the case.  The Quite Title Act requires that the United States claim an interest in the disputed property, and in this particular case, the United States had carefully avoided taking any formal position as to whether it believes it, or the state, has title to the tidelands in question.  He stated that by joining as a defendant, the state would secure the opportunity to establish title to lands the state believes it owns.

Representative Norman Rokeberg arrived.

REPRESENTATIVE HUDSON advised members that the second case involved tort claims where the state and the federal government were both, potentially, responsible.  Representative Hudson explained that it would be necessary to waive the state's Eleventh Amendment immunity in order to pursue that issue in federal court as well.  He pointed out that if the state was unable to waive the Eleventh Amendment and appear and defend in federal court, the state would lose its ability to have a fair allocation of fault among all responsible parties.

Number 439

REPRESENTATIVE HUDSON concluded pointing out that the purpose of HB 120 was to ask the state legislature to allow the attorney general to give the state's consent to appear in federal court as a defendant in a case that involves the state's title to submerged lands.  The proposed amendment would further enable the attorney general to waive the Eleventh Amendment immunity, and litigate in federal court, in cases where the state seeks to allocate fault to the federal government, or a federal employee under AS 09.17.080.

Number 586

CHAIRMAN GREEN asked if the proposed legislation would create the potential for opening the state up to civil litigation, other

Kavairlook Opp to Intervention
Attachment A, page 2

than the two intended cases, during the time period the Eleventh Amendment immunity is granted.

JOANNE GRACE, Assistant Attorney General, Natural Resources Section, Civil Division, Department of Law, testified via teleconference from Anchorage. In response to Chairman Green's question, Ms. Grace felt the legislature would be granting the attorney general the authority to consider entering in on a case by case basis, but only in a couple of narrow circumstances. She pointed out that the authority provided would only be in effect until the sunset clause went into effect. Ms. Grace went on to say that she did not think it would induce plaintiffs to sue the state in federal court that they otherwise would not have, because the circumstances were so unusual.

Number 860

REPRESENTATIVE ETHAN BERKOWITZ asked if there was a reason for not specifying the names of the two individual cases in the proposed legislation. He felt that would appear to be the most limited way to address the issue.

MS. GRACE could not respond directly to that question; however, did not feel it would make a difference because the intent was for those two specific cases. If Representative Berkowitz would be more comfortable with language that would specifically name the two cases at issue, Ms. Grace did not feel the Attorney General's Office would have a problem with doing that. The submerged lands case was Peratrovich v. United States, A92-734 CV (HRH).

REPRESENTATIVE ERIC CROFT stated that it was his understanding that it involved a jurisdictional issue, and the legislature would not be changing the law that would be applied, but simply waiving the state's right to object to appearing in a particular forum.

MS. GRACE stated that was exactly correct. She went on to explain that the federal court did not have jurisdiction to hear a case brought by a citizen against the state unless the state waives its Eleventh Amendment immunity.

REPRESENTATIVE CROFT expressed that the state would be applying the same substantive legal principles, whether federal or state, or a combination, to the case after immunity is waived than they

would have before.

MS. GRACE stated that it was simply a procedural issue, but if the Eleventh Amendment immunity were not waived, there would not be a case.

REPRESENTATIVE CROFT stated that with that in mind, he would not share the concern expressed by Representative Berkowitz because it appeared to be a tactical concern that the attorney general was perfectly able to handle, as to whether he wants to appear in one court or another.

Number 1095

REPRESENTATIVE BRIAN PORTER referenced lines 8 and 9, "The time limitation on the attorney general's power to waive the state's immunity under this subsection does not affect such a waiver given before January 1, 1999." He noted that through research, it was his understanding that what was being proposed was that the waiver, on the two specific cases at issue, would remain in effect if litigation exceeded the date of January 1, 1999.

MS. GRACE advised members that would be correct.

REPRESENTATIVE PORTER asked Ms. Grace if there was any reason why that language could not be amended to read more clearly. Ms. Grace stated that any language the committee felt would make the statement more clear would be fine with the Attorney General's Office.

REPRESENTATIVE CON BUNDE asked if the Peratrovich case related in any way to the Dinkum Sands case.

MS. GRACE advised members that the Peratrovich case would involve some of the very same issues involved in the Dinkum Sands case, as well as the PL-082 case. She explained that those were ongoing disputes between the State of Alaska and the United States as to whether particular reservations that the federal government created before statehood defeated the state's equal footing doctrine interests in those submerged lands.

MS. GRACE stated that in the Dinkum Sands case the pre-statehood reservations were the National Petroleum Reserve in Alaska (NPRA), and the Alaska National Wildlife Refuge (ANWR), whereas the Peratrovich case involved the Tongass National Forest. The

Kavairlook Opp to Intervention
Attachment A, page 4

```
PL-082 case, a reservation in Northern Alaska, was also in
dispute with the United States relating to pre-statehood
reservations.  Ms. Grace stated that between those cases, there
were general legal issues that were common, so that anytime the
state litigates one of those cases it would set a precedent for
the other cases that are unresolved.

CHAIRMAN GREEN stated that it was his understanding that there
was not a problem between the state and the federal government
regarding Dinkum Sands; that it was whether or not it existed as
an island from which to draw a three-mile arc which could create
an enclave.

MS. GRACE expressed that she may have used Dinkum Sands somewhat
loosely, pointing out that that case was actually United States
v. State of Alaska, that involved four separate issues, of which
one was the Dinkum Sands issue.

CHAIRMAN GREEN referenced the language Representative Porter felt
could be clarified and asked Ms. Grace if she could provide
language for the committee's consideration.

MS. GRACE advised members she would give it some thought, adding
that the intent was to preclude the United States from arguing
that the attorney general would lose his authority of the waiver
in those particular cases once he exercised his authority.

REPRESENTATIVE JEANNETTE JAMES moved to adopt Amendment 1, HB
120, page 1, line 6, following the word "lands," insert, or in
any case in which the state seeks to allocate fault to the
federal government or a federal employee under AS 09.17.080,.
There being no objection, Amendment 1 was adopted unanimously.

REPRESENTATIVE CROFT noted that the amendment had nothing to do
with the Peratrovich case, and asked if there was a time limit
involved with the other cases as referenced in the amendment.

SUSAN COX, Assistant Attorney General, Special Litigation
Section, Civil Division, Department of Law, advised members that
the posture of the Smith case mentioned in the backup
documentation for the amendment, was such that a motion to add
federal defendants was being filed this date, 02/11/97, in State
Superior Court in Bethel.  She advised members that they
expected, once the motion is served, that the federal defendants
and a federal contractor would seek to have the case removed to
```

federal court where the state would then be faced with the Peratrovich case. Ms. Cox stated that the department anticipated that within several weeks to a month they would be looking at a situation in which the federal court would be wondering whether it has jurisdiction over the claims against the state.

CHAIRMAN GREEN advised members HB 120 would be considered the following day at noon in order to clarify the language on lines 8 and 9 of the original bill.

REPRESENTATIVE NORMAN ROKEBERG pointed out that the legislature waived its rules in order to consider HB 120 in an expedited manner and felt the Attorney General's Office should be aware of that.

CHAIRMAN GREEN advised members they would next consider the appointment of Barbara Brink as the state's public defender.

REPRESENTATIVE BERKOWITZ declared a possible conflict of interest because he has been a friend of Ms. Brink's for some time.

CONFIRMATION HEARING BARBARA BRINK, ALASKA PUBLIC DEFENDER

Number 1740

BARBARA BRINK, Acting Public Defender, Department of Administration, advised members she was seeking confirmation of that position. Ms. Brink expressed that she had the experience, the desire and the skills to do a good job for the citizens of Alaska.

MS. BRINK advised members that she had been an assistant public defender since the early 1980s, and was appointed Deputy Director of the Public Defender Agency by the State Public Defender at that time, John Salemi, in 1988.

MS. BRINK informed members that the agency would be submitting a capital project request for the purchase of legal research tools; CD Rom, Brief Banks, Motion Banks, computer hardware and software to allow communication with lawyers throughout the state and country.

CHAIRMAN GREEN noted that Ms. Brink would be making a transition from actual trial work to administrative work and asked how that transition might affect her.

Kavairlook Opp to Intervention
Attachment A, page 6