however, that the closing of the transactions contemplated
by the Agreement shall not occur unless the Plan shall have
been, or shall simultaneously be, substantially consummated;
and provided further that nothing in the Agreement or in this
Order shall be construed to require the Debtor to
substantially consummate the Plan.

DATED this 23rd day of October, 1989.

Herbert A. Ross
Bankruptcy Judge

Serve
W Feathers

10/23/89

KOVAL & FEATHERLY
A PROFESSIONAL CORPORATION
301 WEST NORTHERN LIGHTS BLVD.
SUITE 500
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 258-6600  TELEFAX (907) 279-7973

WTF/29

ORDER APPROVING AGREEMENTS BETWEEN
THE DEBTOR AND DREXEL AND AUTHORIZING
LAND SALE AGREEMENTS        Page 14

AR00066

BOOK 0056 PAGE 354

RECORD THIS INSTRUMENT IN THE BARROW RECORDING DISTRICT
RETURN THIS INSTRUMENT TO:    Koval, Featherly & Fitzgerald
                              301 W. Northern Lights Blvd.
                              Suite 503
                              Anchorage, AK  99503

\*.\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## QUITCLAIM DEED

        THIS QUITCLAIM DEED (this "Deed"), given this 5th day
of November, 1989, by TIGARA CORPORATION ("Grantor"), an Alaska
Native village corporation the address of which is P.O.
Box __9____, Point Hope, Alaska 99766, to NATIVE VILLAGE OF
POINT HOPE, ("Grantee"), a Native village organized under
section 16 of the Indian Reorganization Act of 1934, 25 U.S.C.
§ 476, the address of which is P.O. Box 91__, Point Hope,
Alaska 99766,

                       WITNESSETH:

        THAT for and in consideration of $10.00 and other good
and valuable consideration, the receipt and adequacy of which
are hereby acknowledged,


1.  Conveyance

        Grantor hereby CONVEYS and QUITCLAIMS to Grantee all
of its interest (if any) in the following described real
property situated in the Barrow Recording District, State of
Alaska, to have and to hold forever:

    The surface estate of the lands described in Exhibit A
    attached hereto, subject to the following:

    (1)  The reservations, exceptions, exclusions, and
         limitations set forth in Interim Conveyance
         No. 50, dated January 17, 1977, and recorded on
         June 30, 1977, at Book 6, Page 795, Barrow
         Recording District;

    (2)  Any and all provisions of the Alaska Native
         Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1601
         et seq., pertaining to or affecting said surface
         estate or the enjoyment thereof;

    (3)  That certain Plan of Reorganization filed in that
         certain bankruptcy proceeding known as In Re
         Tigara Corporation, No. 3-86-00707 (Bankr.
         D. Alaska petition filed November 19__, 1986),
         confirmed by the United States Bankruptcy Court

AR00067

BOOK 0056 PAGE 355

fur the District of Alaska on October 23, 1989,
(said Plan of Reorganization as confirmed by said
court is hereinafter referred to as the "Plan").

(Said surface estate, subject to all of the foregoing,
is hereinafter referred to as the "Lands.")

2.  <u>Acceptance</u>

Grantee hereby ACCEPTS this Deed, effective as of the
date first set forth above.

3.  <u>Constitution and Bylaws of Native Village of Point Hope</u>

Alienation by Grantee of any or all of the Lands or of
any interest in any or all of the Lands shall be subject to
such procedures and restrictions as may be set forth in the
constitution or bylaws of Grantee at the time of such
alienation.

GIVEN on the date first set forth above.

TIGARA CORPORATION

By: _____

Its _____

NATIVE VILLAGE OF POINT HOPE

By: _____

Its _____

*QUITCLAIM DEED*

AR00068

BOOK 0056 PAGE 356

STATE OF ALASKA          )
                         )  ss:
2nd   JUDICIAL DISTRICT)

    THIS IS TO CERTIFY that on the 5th day of November, 1989, at Point Hope, Alaska, the foregoing instrument was acknowledged before me by _____ Swarts Thurmand Sr. _____, _____ of TIGARA CORPORATION, an Alaska Native village corporation, on behalf of said corporation.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal.

                    Notary Public in and for Alaska
                    My Commission Expires: _____

STATE OF ALASKA          )
                         )  ss:
2nd   JUDICIAL DISTRICT)

    THIS IS TO CERTIFY that on the 5th day of November, 1989, at Point Hope, Alaska, the foregoing instrument was acknowledged before me by _____ Ernest Frankson _____, _____ of NATIVE VILLAGE OF POINT HOPE, a Native village organized under section 16 of the Indian Reorganization Act, 25 U.S.C. § 476, on behalf of said Native village.

    IN WITNESS WHEREOF, I have hereunto set my hand and seal.

                    Notary Public in and for Alaska
                    My Commission Expires: _____

Attached Exhibit

Exhibit A - Real Property Description

3833J

AR00069

EXHIBIT A          BOOK 0056 PAGE 357

Kateel River Meridian, Alaska

T32N R32W KRM
sec. 2
sec. 3
sec. 4 (fractional), excluding the 5 acres southwest of
              Akoviknak Lagoon
sec. 10
sec. 11

T33N R30W KRM
sec. 1
sec. 2
sec. 3
sec. 4
sec. 5
sec. 9
sec. 10
sec. 11
sec. 12
sec. 14
sec. 15
sec. 21
sec. 22
sec. 28
sec. 29
sec. 31
sec. 32

T33N R32W KRM
sec. 4
sec. 5 (fractional)
sec. 6 (fractional)
sec. 9
sec. 10
sec. 15
sec. 16, north 1/2
sec. 22 (fractional)
sec. 25
sec. 26 (fractional), north 1/2
sec. 27 (fractional), excluding the 20 acres southwest of
              Kemegrak Lagoon
sec. 36

AR00070

BOOK **0056** PAGE **358**

<u>T34N R30W KRM</u>
sec. 7
sec. 8
sec. 9
sec. 16
sec. 19
sec. 20
sec. 21
sec. 26
sec. 32
sec. 33

<u>T34N R31W KRM</u>
sec. 9
sec. 10
sec. 12
sec. 13
sec. 14
sec. 15
sec. 16
sec. 17
sec. 18
sec. 19
sec. 20
sec. 24

<u>T34N R32W KRM</u>
sec. 7
sec. 8
sec. 17
sec. 18
sec. 19
sec. 20
sec. 29
sec. 30
sec. 31 (fractional)
sec. 32

AR00071

T34N R33W KRM (fractional)                    BOOK 0050 PAGE 359

sec. 7
sec. 8
sec. 9
sec. 10
sec. 11
sec. 12
sec. 13
sec. 14
sec. 15
sec. 16
sec. 17
sec. 18
sec. 19, north 1/2
sec. 20, north 1/2
sec. 21, north 1/2
sec. 22
sec. 23
sec. 24
sec. 36

T34N R34W KRM (fractional)
sec. 10
sec. 11, north 1/2
sec. 12
sec. 13, east 1/2


Umiat Meridian, Alaska

T9S R61W UM
sec. 3, east 1/2
sec. 10
sec. 16 (fractional), east 1/2
sec. 21 (fractional), east 1/2
sec. 32 (fractional)
sec. 33 (fractional)

T10S R61W UM
sec. 4
sec. 5 (fractional)
sec. 8 (fractional)
sec. 9 (fractional)
sec. 16 (fractional)
sec. 17 (fractional)
sec. 20 (fractional)
sec. 21
sec. 28
sec. 29 (fractional)
sec. 32 (fractional), west 1/2

AR00072

BOOK 0056 PAGE 360

T11S R61W UM
sec. 8
sec. 17
sec. 20, south 1/2
sec. 29
sec. 30 (fractional), east 1/2
sec. 31
sec. 32

T12S R58W UM
sec. 7
sec. 8
sec. 9
sec. 16
sec. 17
sec. 18
sec. 19

T12S R59W UM
sec. 7
sec. 12
sec. 13
sec. 14
sec. 18
sec. 22
sec. 23
sec. 24
sec. 25
sec. 26
sec. 27
sec. 28
sec. 29

AR00073

BOOK **0056** PAGE **361**

T12S R60W UM
sec. 4
sec. 5
sec. 6
sec. 7
sec. 8
sec. 11
sec. 12
sec. 13
sec. 14
sec. 19
sec. 20
sec. 21
sec. 22
sec. 23
sec. 24
sec. 25
sec. 26
sec. 27
sec. 28
sec. 29
sec. 30

T12S R61W UM
sec. 5
sec. 6
sec. 7
sec. 8
sec. 9, west 1/2
sec. 13
sec. 14
sec. 15
sec. 17
sec. 18
sec. 19
sec. 20
sec. 21, west 1/2
sec. 27
sec. 29
sec. 30

AR00074

BOOK 0056 PAGE 362

T12S R62W UM (fractional)
sec. 2
sec. 11
sec. 12
sec. 13
sec. 14
sec. 15, south 1/2
sec. 16
sec. 17
sec. 18
sec. 19
sec. 21
sec. 22
sec. 23
sec. 24
sec. 25
sec. 26
sec. 27
sec. 28
sec. 29
sec. 30

T12S R63W UM (fractional)
sec. 24
sec. 26
sec. 27
sec. 28
sec. 29

BOOK **0056** PAGE **363**

EXCLUDING the following lands:

(1)  all lands subject to known Native allotment applications (which lands may need to be reconveyed to the United States by Tigara Corporation); and

(2)  all shorelands (as defined in AS 38.05.965(18)); tidelands (as defined in AS 38.05.965(21)), and submerged lands (as defined in AS 38.05.965(20)) not conveyed to Tigara Corporation, including but not limited to lands underlying the following waterbodies:

    (a)  Kukpuk River, from Marryat Inlet to the boundary between the NE 1/4 of Section 28 and the SE 1/4 of Section 21, Township 12 South, Rang. 61 West, Umiat Meridian;

    (b)  Aiautak Lagoon;

    (c)  Akoviknak Lagoon;

    (d)  Kemegrak Lagoon;

    (e)  Marryat Inlet;

    (f)  Chukchi Sea.

3837J

89-0934

BARROW REC
DISTRICT         37--
REQUESTED BY GUESS & RUDD

'89 NOV 13  AM 10 51

Rtn to: KOVAL FEATHERLY & FITZGERALD
301 W NORTHERN LIGHTS BLVD. SUITE 503
ANCHORAGE AK 99503

304995

AR00076

# T I G A R A

## CORPORATION

5011 Arctic Blvd.
Suite G
Anchorage, Alaska 99503

### PROXY FOR THE SPECIAL SHAREHOLDER'S
### MEETING TO BE HELD NOVEMBER 1, 1989

I, _____, the owner or custodian of _____ shares of stock in Tigara Corporation, hereby appoint the Board of Directors of Tigara Corporation, with full power of substitution, my attorneys and proxies to vote all of the shares of stock owned or held by me at the Special Meeting of the Shareholders to be held on November 1, 1989 at 3:00 p.m. at the Tikigaq School Gym, Point Hope, Alaska, and any adjournment, as follows:

1. To vote in favor of the proposal of the Board of the Directors to sell approximately ninety percent (90%) of the undeveloped lands of the Corporation, amounting to approximately 100,000 acres, to the Native Village of Point Hope (organized under Section 16 of the Indian Reorganization Act), provided that the terms of the sale agreement shall be first reviewed and accepted by the Board; and provided further that the sale shall be preceded by the confirmation of a plan of reorganization for the Corporation that provides, at a minimum that: (1) the Corporation be discharged from all debts, obligations, and claims, including all secured and unsecured claims of the FDIC; (2) that the Corporation receive $250,000.00 at the time of the first distribution to unsecured creditors; and (3) that the Corporation receive 75% of the proceeds from the sale of the losses resulting from the sale of the Corporation's lands, less the sum of $200,000.00, which would be paid to the FDIC, plus a prorata share of the interest, if any, on the deferred payment of the proceeds from the sale of such losses.

2. To vote in the discretion of the Board of Directors on any other matter properly coming before the meeting.

NOTICE: You have the right to have your proxy voted in accordance with your directions by a stockholder instead of by the Board of Directors of Tigara Corporation. If you wish to have your proxy voted by a stockholder and not by the Board of Directors,

PROXY FOR THE SPECIAL SHAREHOLDERS MEETING
November 1, 1989

NOV 7 '89 14:40                          1 907 368 2668   PAGE.002

AR00077

please fill in the name of the shareholder in the following space:

_____

(Fill in the name of the shareholder who will vote the proxy)

If this proxy is signed and returned to the Board; and if no name is filled in above, then your stock will be voted by the Board of Directors as described above.

DATED this _____ day of _____, 1989.

_____
Signature of Shareholder/Custodian

WTF/31

PROXY FOR THE SPECIAL SHAREHOLDERS MEETING
November 1, 1989

NOV  7 '89 14:41                    1 907 368 2668   PAGE.003

AR00078

MEMORANDUM IN SUPPORT OF
PETITION TO TAKE LANDS IN TRUST

I.

FACTS.

Point Hope is an Inupiat village located approximately 150 air miles north of Kotzebue, Alaska on the Chukchi sea. There are approximately five hundred people who live in Point Hope. In Point Hope, the International Whaling Commission has permitted continued hunting of the bowhead whale, according to traditional custom and for subsistence use. In winter, ice is chopped in chunks from surrounding rivers and melted to furnish drinking water and water to bathe and wash clothes. There is no sewer system in Point Hope. It is a hard way of life, but these conditions are given to illustrate the Inupiat lifestyle, one tied to the land.

The Native Village of Point Hope (hereinafter Petitioner) is an Alaska Native village organized as a Native American tribe pursuant to the provisions of the Indian Reorganization Act of 1934 as amended (hereinafter IRA) 25 U.S.C. §461 et seq. The Constitution and By-laws of the Native Village of Point Hope, Alaska were approved on May 15, 1939 by the then Assistant Secretary of the Interior, Oscar L. Chapman, and ratified by the Village of Point Hope on February 29, 1940. The Native Village of Point Hope is a tribe as described in <u>Native Village of Noatak v. Hoffman</u>, 872 F.2d 1384 (9th Cir. 1989).

Petitioner has acquired lands from Tigara Corporation,

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 1
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00079

(hereinafter Tigara) an Alaska Native Claims Settlement Act (ANCSA) village corporation. These lands, though selected by Tigara pursuant to ANCSA, are traditional tribal lands occupied by Point Hope peoples since antiquity. These lands were in the bankruptcy court, and, as such, were assets subject to Tigara's creditors. The financial situation of Tigara in bankruptcy showed that they were in grave danger of losing their lands and assets. To protect Native ownership of these lands, Tigara Corporation conveyed these lands to Petitioner. The Secretary of Interior is requested to take these lands in trust as authorized under section 5 of IRA. See 25 U.S.C. §465.

II.

### THE SECRETARY OF INTERIOR HAS AUTHORITY TO TAKE IRA LANDS IN TRUST.

IRA confers upon the Secretary of Interior the authority to take lands in trust. More specifically, sections 465 and 473a are applicable in Alaska. Upon request, the Secretary of Interior can accept into trust lands owned by IRA tribes, other tribes, and individual Indians. The following cases illustrate this authority.

In Chase v. McMasters, 573 F.2d 1011 (8th Cir. 1978), Beulah Chase was an enrolled member of Three Affiliated Indian Tribes, which occupy the Fort Berthold Reservation in North Dakota. She brought an action pursuant to 42 U.S.C. 1983 and §1985(3) against the mayor and councilmen of New Town, North Dakota. New Town argued that section 465 does not authorize the

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 2
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

Secretary of the Interior to accept conveyance of title to land already owned in fee by an individual Indian. The court disagreed and stated:

> Although the term "acquisition" and the stated purpose of "providing land for Indians" could indicate that the Secretary was only authorized to make a net addition to existing Indian land holdings by providing lands for landless Indians, such an interpretation is not required by the statutory language or the Act's legislative history. While the Senate report does refer to "landless Indians", the Supreme Court has refused to read such remarks in the legislative history of a similar statute, which also granted tax-exempt status to Indian land, as limiting the benefits of the statute to landless Indians. Board of Comm'rs v. Seber, 318 U.S. 705, 710, 63 S.Ct. 920, 87 L.Ed. 1094 (1943). A narrow construction of the term "acquire" and the phrase "providing land for Indians" runs counter to the principle that ambiguous statutes passed for the benefit of Indian tribes are to be interpreted in a light most favorable to Indians.
>
> * * *
>
> The Secretary may purchase land for an individual Indian and hold title to it in trust for him. There is no prohibition against accomplishing the same result indirectly by conveyance of land already owned by an Indian to the United States in trust. Section 465 lists gifts among the means by which the Secretary may acquire land, and it was amended to authorize acquisition of land in trust for individual Indians as well as for tribes. See 78 Cong. Rec. 11126 (1934). Congress did not limit the Secretary's discretion to select land for acquisition. The land acquired may be located within or without a reservation, and there is no indication that it could not be located within municipal boundaries. Indeed, in legislation passed in 1937, Congress provided that Indian homestead lands located within village, town

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 3
188:EAS:wjm

or city boundaries would be tax exempt. <u>See</u> 25 U.S.C. §412a.

573 F.2d at 1015, 1016. <u>City of Sault Ste. Marie, Michigan, v. Andrus</u>, 532 F. Supp. 157 (D.D.C. 1980) involved review of action taken by the Secretary of Interior under section 5 of IRA. Section 5 authorizes the Secretary to acquire lands and hold them in trust for American Indians. In <u>Sault Ste. Marie v. Andrus</u>, the plaintiff municipality sought review of the Secretary's decision to exercise his powers under IRA to accept a 76-acre tract within the city's boundaries. The Secretary held the land in trust for the intervening defendant, the Chippewa Indians of Sault Ste. Marie, who planned to construct a 65-unit federal housing project on the property. In relevant part, the court concluded:

> [T]he plaintiff argues that the IRA prohibits the Secretary from holding lands in trust for the persons from whom the land was acquired. Here the Chippewas bought the tract and then gave it to the Secretary. The plaintiff contends that the IRA "clearly contemplates something more than the mere transferral of interests in already owned land from fee to trust status for the same individual or tribe." The IRA contains no express prohibition of such a step, however, and the plaintiff's attempt to infer such a prohibition from the language of section 465 is unavailing. The procedure followed here is entirely consistent with both the letter and spirit of the statute.

<u>Id</u>. at 162. <u>Sault Ste. Marie v. Andrus</u> clearly establishes the authority of the Secretary of Interior to take lands owned by an IRA tribe in trust.

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 4
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00082

In _State of Florida, Department of Business Regulation v. United States Department of the Interior_, 768 F.2d 1248 (11th Cir. 1985), the State of Florida, the Florida Department of Business Regulation, the Florida Department of Revenue, and the City of Tampa challenged the Secretary of Interior's decision to acquire a tract of land in trust for the benefit of the Seminole Indian Tribe. The court below dismissed their complaint on sovereign immunity and standing grounds. The eleventh circuit affirmed.

The _Seminole_ Tribe purchased an 8.5 acre parcel of land in Hillsborough County, Florida, and petitioned the Secretary of the Interior to exercise authority pursuant to 25 U.S.C. §465 and acquire title to the land in trust for the Indians. This statute designates that the decision to acquire land in trust for Indians is one within the Secretary's discretion. See 768 F.2d at 1250. As the eleventh circuit expressed, "[T]here can be no doubt that there was statutory authority for the Secretary's decision to take the land in trust." 768 F.2d at 1252. Similarly, there can be no doubt the Secretary of Interior has the statutory authority to take Petitioner's lands acquired from Tigara in trust.

III.

ANCSA HAS NO EFFECT ON SECTION 5 OF IRA.

The Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §1601 et seq., was intended by Congress to be strictly a _land claims_ settlement of aboriginal Natives in Alaska. As Senator Ted Stevens recently stated:

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 5
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7th AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9496

AR00083

ANCSA was, and is, a land settlement. There is no reference to the sovereignty issue either in the 1971 conference report on the Act or in the Act itself. ANCSA's Declaration of Settlement extinguishes only aboriginal claims of land title and hunting and fishing rights - nothing more and nothing less.

See Tundra Drums, August 28, 1986 at 3, The Importance of the 1991 Amendments to Alaska, quoting Ted Stevens.

Section 1601 of ANCSA provides:

Congress finds and declares that --

. . . .

(b) the settlement should be accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, without litigation, with maximum participation by Natives in decisions affecting their rights and property, without establishing any permanent racially defined institutions, rights, privileges, or obligations, without creating a reservation system or lengthy wardship or trusteeship, and without adding to the categories of property and institutions enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska;

Section 1618 further provides:

(a) Notwithstanding any other provision of law, and except where inconsistent with the provisions of this Act, the various reserves set aside by legislation or by Executive or Secretarial Order for Native use or for administration of Native affairs, including those created under the Act of May 31, 1938 (52 Stat. 593) [25 USCS §497], are hereby revoked subject to any valid existing rights of non-Natives. . . .

(b) Notwithstanding any other provision of law or of this Act, any Village Corporation or Corporations may elect within two years to

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 6
188:EAS:wjm

AR00084

> acquire title to the surface and subsurface
> estates in any reserve set aside for the use
> or benefit of its stockholders or members
> prior to the date of enactment of this Act
> [enacted Dec. 18, 1971]. . . .

Accordingly, ANCSA terminated the trust status or reservation status of Native aboriginal owned lands. It gave unrestricted title to corporations created by ANCSA. Congress has the authority to terminate the restricted status of Indian lands in order to convey clear title. See letter, dated January 16, 1981, to John Rougeot and Paul S. Williams from Clyde O. Martz, Solicitor, page 3, wherein the Solicitor discusses how Congress is authorized pursuant to the Indian Nonintercourse Act of May 11, 1938, 25 U.S.C. §396 et seq., to so dispose of Indian lands. ANCSA should be construed as simply a land claims settlement act which vests unrestricted title in ANCSA corporations. These corporations may restore lands to Native tribes such as Petitioner.

Sections 1601(b) and 1618 recognize the fact that Congress did not intend to "clothe" the corporations created under ANCSA with the same tribal attributes or status possessed by Alaska Native villages or tribes. Congress spoke directly as to the corporate status of these corporations when it said that ANCSA should be implemented:

> . . . without establishing any permanent
> racially defined institutions, rights,
> privileges, or obligations, without creating a
> reservation system or lengthy wardship or
> trusteeship, and without adding to the
> categories of property and institutions

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 7
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00085

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

> enjoying special tax privileges or to the legislation establishing special relationships between the United States Government and the State of Alaska;

43 U.S.C. 1601(b). The ANCSA corporations are thus creatures of statute, and are not congressionally recognized as tribes or as having tribal attributes. The rights of tribes such as Petitioner are separate and distinct from the rights of corporations created under ANCSA.

An associate solicitor of Indian Affairs, Thomas Fredericks, has determined ANCSA precludes the Secretary of Interior from restoring Alaskan Native lands to trust status. See Trust Land for the Native's of Venetie and Arctic Village, Memorandum to Assistant Secretary, Indian Affairs from Associate Solicitor, Indian Affairs, Thomas W. Fredericks (September 15, 1978) (hereinafter Fredericks' Memorandum). He states:

> The structure and legislative history of Section 19 itself precludes the restoration of former reservations to trust status. Section 19 revokes all reservations (except for Metlakatla) and directs that the land be conveyed to the ANCSA village corporation, not to the IRA entities. It does not allow Natives to vote for continued trust status.

> * * *

> Also significant is the repeal, in Section 704(a) of the Federal Land Policy and Management Act of 1976, 90 Stat. 2743, of Section 2 of the ACT of May 1, 1936, 49 Stat. 1250, 25 U.S.C. §496, which extended the provisions of the Indian Reorganization Act to Alaska and gave the Secretary the authority to designate certain lands in Alaska as Indian reservations. In view of the clear legislative intent and policy expressed in

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 8
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

> ANCSA's extensive legislative history, it
> would, in my opinion, be an abuse of the
> Secretary's discretion to attempt to use
> Section 5 of the IRA (which, along with 1, 7,
> 8, 15, and 17 of the IRA still apply to Alaska
> pursuant to the unrepealed portion of the Act
> of May 1, 1936) to restore the former Venetie
> Reserve to trust status.

Mr. Fredericks' is wrong in his opinion where, as in the present case, Native lands are not held by an ANCSA created corporation, but rather have been conveyed by an ANCSA corporation to a Native tribe.

The recent decisions in <u>Native Village of Tyonek v. Puckett</u>, No. 87-3588, slip. op. at 13896 (9th Cir. Nov. 24, 1989) and <u>Native Village of Noatak v. Hoffman</u>, 872 F.2d 1384 (9th Cir. 1989), and the earlier decision in <u>City of Sault Ste. Marie, Michigan v. Andrus</u>, 532 F. Supp. 157 (D.D.C. 1980) demonstrate the necessity for the Secretary of Interior to reexamine and reassess the Fredericks' Memorandum. In <u>Native Village of Tyonek v. Puckett</u>, the district court stated:

> Congress, in 1971, enacted the Alaska Native
> Claims Settlement Act, 43 U.S.C. §1601-1628
> (1982). Section 19 of the Claims Act, 43
> U.S.C. §1618, revoked almost all native
> reservations in Alaska, including the
> Moquawkie Reservation. Section 8, 43 U.S.C.
> 1607, authorized the Native residents of each
> Village or city in Alaska to establish a
> Village corporation, through which they would
> receive land and other benefits under the
> Claims Act. Shortly after the passage of he
> Claims Act, the Native residents of Tyonek
> formed the for-profit Tyonek Native
> Corporation, to which was conveyed all the
> lands formerly in the Moquawkie reservation.
> The Claims Act did not expressly change the
> status of Tyonek or its IRA Village

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 9
188:EAS:wjm

government, nor did the Claims Act expressly revoke or amend Tyonek's Family Plan or Ordinance 65-32.

The ninth circuit affirmed the judgment of the district court. Id. at page 13901. Additionally, in Native Village of Noatak, the court found ANCSA was congressional recognition of Native villages. Id. at 1388. Thus, ANCSA did not change the status of Native villages or tribes in Alaska. Section 5 of IRA as it applies to tribes in Alaska has never been expressly repealed or revoked by Congress.

When requested to do so by an Alaska Native village or tribe, the Secretary has a duty to give effect to Section 5. Pursuant to section 5, Petitioner specifically requests the Secretary to take their lands in trust.

The language used in the Fredericks' Memorandum is termination language without statutory authority. Congress knows how to terminate Indian tribes, and has done so in the past. In Mattz v. Arnett, 412 U.S. 481, 505 (1973) the Court stated, "A congressional determination to terminate must be expressed on the face of the Act or be clear from the surrounding circumstances and legislative history." ANCSA did not terminate Alaska tribes for the simple reason that Congress did not use termination language. When all the provisions of ANCSA are compared to the general law relating to termination of the relationships between Indians and the Federal Government, it is apparent that ANCSA does not meet the test for termination of recognized tribal

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 10
188:EAS:wjm

status.  Compare the Klamath Termination Act, 25 U.S.C. 546q(a).

In addition, Congress has the authority pursuant to the Indian Non-Intercourse Act to lift restrictions on Alaska Native owned lands for the express purpose of conveying these same lands to ANCSA corporations.  The repeal of 25 U.S.C. §496 noted in Fredericks' Memorandum merely supports and buttresses this notion.  This repeal does not specifically or even implicitly revoke the Secretary's authority under section 5 of IRA to take lands in trust for Alaska tribes who have had their lands restored to them by an ANSCA corporation.

Finally, Fredericks' opinion that it would be an abuse of the Secretary's discretion to accept IRA lands in trust appears to be in direct conflict with Chase v. McMasters, 573 F.2d 1011 (8th Cir. 1978), City of Sault Ste. Marie, Michigan v. Andrus, 532 F. Supp. 157 (D.D.C. 1980) and State of Florida, Department of Business Regulation, v. United States Department of the Interior, 768 F.2d 1248 (11th Cir. 1985).  These cases upheld the authority of the Secretary of Interior to take lands in trust on behalf of IRAs, Indian tribes, and individual Indians.  The issue of whether the Secretary may willfully withhold his authority to accept lands in trust was addressed in In Pyramid Lake Paiute Tribe of Indians v. Morton, 354 F. Supp. 252 (1973). The court implicitly found that the Secretary is accountable under the Administrative Procedure Act to the tribes when "agency action is unlawfully withheld and unreasonably delayed."  Id. at 257.

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 11
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00089

Congress has dealt with the Alaska Native tribes in two very significant and separate ways in the twentieth century. In 1936, Congress extended IRA to Alaska and thereby allowed "villages" to be included within the definition of "tribe." In 1971, it passed ANCSA. Congress did not contemplate that ANSCA would terminate tribal status. Otherwise, Congress would have expressly repealed IRA as extended to Alaska. The Secretary has a duty to give effect to both statutory enactments. More specifically, he has a duty to give effect to section 5 of IRA as that provision pertains to Alaska. Contrary to the conclusion found in the 1978 Fredericks' Memorandum, it is an abuse of discretion by the Secretary not to accept lands in trust on behalf of IRAs in Alaska who request the Secretary to do so. Absent express congressional authority, the Secretary cannot unilaterally decide that one congressional act overrides another.

The language in ANCSA regarding corporate status may be contrasted with the language in 25 U.S.C. §473a. In the latter statute, Congress expressly recognized "inherent governing rights" and "granted certain rights of home rule to Indians" with regard to Alaska Native villages. The Report of the House Committee on Interior and Insular Affairs chaired by Congressman Udall makes clear the status of Alaska Native villages did not change under ANCSA. As explained:

> ANSCA was an Indian land claims settlement act. It was not, at the time, the intent of Congress to deal in any way with the issue of governmental authority of villages in Alaska.

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 12
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A "PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00090

> If village entities had tribal governing
> powers under existing law prior to the passage
> of ANCSA, ANCSA did not effect them. If they
> did not have such powers, ANCSA did not bestow
> them. It is the intent of the Committee that
> this is an issue which should be left to the
> courts in interpreting applicable law.

H.R. Rep. No. 99-712, 99th Cong., 2d Sess. 27 (1986).

In summary, ANCSA left intact the unique political or federal-trust relationship flowing between the U.S. government and the Alaska Native villages. IRA was passed for an entirely different purpose than ANSCA. The Secretary should give effect to both enactments where it furthers self-determination on the part of Alaska Native villages. Otherwise, the Secretary breaches his fiduciary responsibilities to Alaskan Native villages. He seriously undermines inherent powers of tribal self-determination with regard to IRAs and their ownership of lands post ANSCA.

IV.

### REGULATION 151 PROMULGATED BY THE SECRETARY OF INTERIOR VIOLATES THE SCOPE OF HIS AUTHORITY.

The Secretary of Interior is authorized by the Congress to promulgate rules and regulations as they pertain to Indian affairs. In Morton v. Ruiz, 415 U.S. 199 (1974) the Court held:

> The power of an administrative agency to
> administer a congressionally created and
> funded program necessarily requires the
> formulation of policy and the making of rules
> to fill any gap left, implicitly or
> explicitly, by Congress. In the area of
> Indian affairs, the Executive has long been
> empowered to promulgate rules and policies,
> and the power has been given explicitly to the

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 13
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

> Secretary and his delegates at the BIA. This agency power to make rules that affect substantial individual rights and obligations carries with it the responsibility not only to remain consistent with the governing legislation, (citation omitted) but also to employ procedures that conform to the law.

Id. at 231, 232.

The following limitation inserted in 25 C.F.R. §151.1 is inconsistent with section 5 of IRA and does not conform to the law.

> These regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members.

This language is without Congressional authorization or approval. It directly conflicts with sections 465 and 473a of the Indian Reorganization Act. As previously discussed, the Secretary has the duty to give effect to both IRA and ANSCA. If the Secretary of Interior were to deny this petition based on the limitation found in the regulation, the effect of IRA as it continues to apply to lands held by Alaska Natives is rendered meaningless. Such action would be contrary to the congressional policy of self-determination embodied not only in IRA and ANCSA, but also in numerous other statutes enacted for the benefit of tribes in and outside Alaska.

The Secretary owes rigorous fiduciary obligations to Indians. Pyramid Lake Paiute Tribe of Indians v. Morton, 354 F. Supp. 252, 256 (D.D.C. 1973). In view of this fiduciary

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 14
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX:(907) 257-9498

AR00092

relationship, there is placed upon the Secretary a burden to justify the limitation within 25 C.F.R. §151.1. The limitation in the regulation is ambiguous and subject to varying interpretations.

The application of the regulation to Alaska Native lands may be considered inappropriate by the Secretary, because of ANCSA created land issues. ANSCA created a dichotomy in land ownership. The surface estate was conveyed to village corporations, and the subsurface estate was retained by regional corporations. However, regardless of these ANCSA issues, the Secretary has a duty to give effect to section 5 of IRA and develop an appropriate procedure for taking Petitioner's land in trust.

The Secretary may also intend for the limitation in the regulation to apply to Alaska tribal lands, other than Alaska Native allotments. This application results in unequal treatment constitutionally prohibited. On the otherhand, the Secretary might justify the limitation regarding Alaska Native lands by designating or classifying lands subject to the jurisdiction of the State of Alaska versus those "lands within Indian Country or traditionally occupied by Alaskan Native villages." In any event, the regulation should not preclude the taking of Petitioner's land in trust.

The Secretary may also have erroneously assumed that the regulation should not apply to Alaska, because ANCSA abrogated

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 15
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00093

the trust status of lands in Alaska. As previously discussed, the rights of tribes such as Petitioner are separate and distinct from the rights of corporations created under ANCSA. ANCSA does not preclude the conveyance of land by an ANCSA created corporation to a Native tribe such as Petitioner, who in turn may request the Secretary to take the lands in trust.

Even if the regulation is considered generally to exclude Alaska Native lands, the Secretary has the power to waive these regulations "in all cases where permitted by law and the Secretary finds that such waiver . . . is in the best interest of the Indians." 25 C.F.R. §1.2. See also State of Florida, Department of Business Regulation v. U.S.D. of Interior, 768 F.2d 1248, 1250 (11th Cir. 1985). The best interests of Petitioner's tribe compel a waiver upon the following specific grounds:

1. To preserve and protect the culture and lifestyle of the Inupiat of Point Hope.

2. To foster tribal self-determination and economic development, because those lands traditionally occupied by the Inupiat of Point Hope were in bankruptcy and could have been forever lost to the Native peoples of Point Hope.

3. To foster and protect the subsistence use of resources by the Inupiat of Point Hope.

4. To have a permanent homeland for the Inupiat of Point Hope.

By such a waiver, section 5 of IRA would not be rendered meaningless as it continues to apply to lands held by Alaska Natives. The specific grounds listed above, among others, would

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 16
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00094

provide sufficient bases to support a waiver and allow the Secretary to take Petitioner's lands in trust.

Moreover, the relationship between the United States and the Indian tribes has been one of guardian and ward, and such a relationship is constitutional. See <u>Crain v. First National Bank of Oregon, Portland</u>, 324 F.2d 532, 535, (9th Cir. 1963). In the application of IRA to the Indian tribes in the continental United States of America and Alaska Native villages, Congress made no distinctions between these groups of aboriginal peoples. To the extent the limitation in the regulation is applied to exclude lands currently held by Alaska Native villages such as petitioner, the Secretary of Interior has provided unequal treatment between the "lower 48" Indian tribes and the Alaska Native villages. Such treatment is unconstitutional and violates both express congressional legislation and the fiduciary relationship between the United States government and the Alaska Native villages. As currently applied, the regulation is unconstitutional and it should not be enforced to the detriment of Petitioner.

V.

### THE SECRETARY OF INTERIOR OWES A FIDUCIARY OBLIGATION TO THE NATIVE VILLAGE OF POINT HOPE.

As previously discussed, the unique federal trust relationship between the United States government and the Alaska Native villages was not affected by or diminished because of ANCSA. ANCSA was not a jurisdictional statute.

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 17
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00095

In <u>Native Village of Noatak</u>, 872 F.2d 1384, 1389 (9th Cir. 1989), the ninth circuit recently restated this special relationship as follows:

> The United States could bring suit on the causes of action alleged here. The standard was established long ago. In the Cherokee Nation case, Chief Justice Marshall observed that the relation between the Indian tribes and the United States "resembles that of a ward to his guardian. They look to our government for protection." The analogy was suggestive and effective in imposing fiduciary obligations upon the United States. The dependence of the tribes generated "the duty of protection."

Similarly, in <u>Pyramid Lake Paiute Tribe of Indians v. Morton</u>, 354 F. Supp 252, 256 (D.D.C. 1973) the court said:

> The United States, acting through the Secretary of Interior, "has charged itself with moral obligations of the highest responsibility and trust. Its conduct, as disclosed in the acts of those who represent it in dealings with the Indians, should therefore be judged by the most exacting fiduciary standards."
>
> The vast body of case law which recognizes this trustee obligation is amply complemented by the detailed statutory scheme for Indian affairs set forth in Title 25 of the United States Code. Undertakings with the Indians are to be liberally construed to the benefit of the Indians, and the duty of the Secretary to do so is particularly apparent.

A recent Alaska Supreme Court case has indicated that Alaska Native villages such as Petitioner are largely subject to state action. <u>See Native Village of Stevens v. Alaska Management and Planning</u>, 757 P.2d 32, 41 (Alaska 1988). Petitioner disagrees. In order to preserve the special status of its lands,

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 18
188:EAS:wjm

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00096

Petitioner looks to the federal government to take certain of its lands in trust, as it is required to do upon request. Petitioner is looking to the federal government for protection. Petitioner requests the Secretary of Interior to fulfill its "duty of protection" by taking the lands of Petitioner in trust.

Finally, in the exercise of his fiduciary responsibilities, the Secretary of Interior cannot arbitrarily and capriciously refuse to accept lands in trust on behalf of individual Indians or tribes/villages. In <u>Pyramid Lake Paiute Tribe of Indians</u>, the court explained:

> Failure to take appropriate steps, under the circumstances, by the regulation constitutes agency action unlawfully withheld and unreasonably delayed when viewed in the light of the Secretary's trust responsibilities to the Tribe, 5 U.S.C. §706(1).

354 F. Supp. at 257. Accordingly, the Secretary of Interior is authorized to take lands in trust. In this case, he should take Petitioner's lands in trust, as requested.

IV.

OTHER REQUIREMENTS OF PETITION

The legal description of the lands and the acreage are provided with the enclosed materials. Petitioner seeks the protection of its lands by requesting the Secretary of Interior through this Petition to take the lands in trust. Those lands traditionally occupied by the Petitioner and its tribal members were in the bankruptcy court where they were subject to the claims of creditors of Tigara. The Native Village of Point Hope

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 19
188:EAS:wjm

desires to have these lands as a permanent homeland for its tribal members.

DATED at Anchorage, Alaska this _18 th_ day of January, 1990.

LYNCH, CROSBY & SISSON
Attorneys for Point Hope


By _Ella Anagick-Stebing_
     Ella Anagick-Stebing


By _Madelon Blum_
     Madelon Blum

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

MEMORANDUM IN SUPPORT OF PETITION TO TAKE LANDS IN TRUST - 20
188:EAS:wjm

AR00098

# THE NATIVE VILLAGE OF POINT HOPE

### POINT HOPE, ALASKA

RESOLUTION OF NATIVE VILLAGE OF POINT HOPE

NO. 90-03

**WHEREAS,**

The Council of the Native Village of Point Hope met on Wednesday February 21, 1990, and voted to retain Ella Anaqick-Stebing, as counsel for the Native Village of Point Hope; and

**WHEREAS,**

Ella Anagick-Stebing has previously represented the Native Village Of Point Hope, as an associate with Lynch, Crosby & Sisson, in the research and drafting of legal documents, requesting the Secretary of Interior to take and hold in trust traditional Inupiat lands of Point Hope, pursuant to Indian Reorganization Act (IRA) Section Five; and

**WHEREAS,**

these tribal lands were conveyed by quitclaim deed from Tigara Corporation to the Native Village of Point Hope; and

**WHEREAS,**

Ella Anagick-Stebing has severed all ties with the firm of Lynch, Crosby & Sisson, and is no longer associated with the same; and

**WHEREAS,**

the law office of Ella Anagick-Stebing is presently with the Law Offices of Ronald E. Cummings, located at 731 I Street, Suite 201, Anchorage, Alaska 99501, telephone no: (907) 277-1677; and

**WHEREAS,**

the Native Village of Point Hope, herein Petitioner, has voted to continue the retention of Ella Anagick-Stebing, as its attorney, in the Petition, Memorandum in Support of Petition, and continuing request ot the Secretary of Interior to take and hold Petitioner's lands in trust, pursuant to IRA Sectionfive, until concluded.

DATED: _Feb 21, 1990_

_Ernest Frankson_

ERNEST FRANKSON, President of the Native Village of Point Hope

_Jack Schaefer_

Jack Schaefer, Secretary of the Native Village of Point Hope

AR00099



# THE NATIVE VILLAGE OF POINT HOPE

### POINT HOPE, ALASKA

RESOLUTION NO. 90-02

A RESOLUTION REGARDING:  DELEGATION OF FULL AUTHORITY OF THE NATIVE VILLAGE OF POINT HOPE COUNCIL TO ITS PRESIDENT, SECRETARY, AND TREASURER TO DO BUSINESS IN WASHINGTON D.C.

WHEREAS,
The Native Village of Point Hope is an Alaska Native Village organized as a Native American tribe pursuant to the provisions of the Federal Indian Reorganization Act of 1934, as amended; and

WHEREAS,
the Indian Reorganization Act (IRA) Council is the governing body of the Native Village of Point Hope; and

WHEREAS,
the Native Village of Point Hope is governed by a Constitution and Bylaws approved May 15, 1939, by the Secretary of Interior; and

WHEREAS,
the Native Village of Point Hope has acquired lands in fee from Tigara Corporation, an Alaska Native Claims Settlement Act (ANCSA) Village Corporation; and

WHEREAS,
the Native Village of Point Hope desires to have the lands so acquired from Tigara Corporation as a permanent homeland, and to have the Secretary of Interior hold these lands in trust, pursuant to Section five of the IRA, as applied in Alaska, and

NOW THEREFORE BE IT RESOLVED,
that the Native Village of Point Hope Village Council hereby gives its full authority to its president, Ernest Frankson; its secretary, Jack Schaefer; and its treasurer, Morris B. Oviok to conduct any tribal business in Washington, D. C.. This is effective until their return to Point Hope, Alaska.

*Ernest Frankson*

_____
COUNCIL PRESIDENT

*Feb 21, 1990*

ATTEST:

_____
SECRETARY OF THE COUNCIL

AR00100

PETITION FOR ACQUISITION OF LANDS IN TRUST

By this Petition, the Native Village of Point Hope (hereinafter Petitioner) files a written request for approval of the acquisition of certain of its lands in trust status by the Secretary of Interior. Pursuant to the requirements of 25 C.F.R. §151.9, 151.10 and 151.12, Petitioner sets forth the following:

1. **PARTIES:** Petitioner is an Alaska Native village organized as a Native American tribe pursuant to the provisions of the Federal Indian Reorganization Act of 1934. Petitioner's Constitution and By-laws were approved by the Secretary of Interior on May 15, 1939. Petitioner is a tribe as described in _Native Village of Noatak v. Hoffman,_ 872 F.2d 1934 (9th Cir. 1989). It has the requisite tribal status to be a valid party as that term is used in 25 C.F.R. §151.9. The only other party to this formal request for acquisition of lands in trust status is the United States of America, acting by and through its Congress, with the Department of Interior implementing relevant congressional Alaska Native enactments.

2. **LANDS TO BE ACQUIRED IN TRUST:** Petitioner has acquired lands from Tigara Corporation (hereinafter Tigara), an Alaska Native Claims Settlement Act (ANCSA) village corporation. These lands were selected by Tigara in fulfillment of its land claims settlement under ANCSA. The financial situation of Tigara caused it to file for bankruptcy. Those lands held by Tigara were considered to be assets of the bankrupt debtor, Tigara, and

PETITION FOR ACQUISITION OF LANDS IN TRUST - 1
28:EAS

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00101

as such, were subject to the claims of Tigara's creditors.

To protect Native ownership of these lands, Tigara sold and conveyed these lands to Petitioner. These lands have been and continue to be traditional tribal lands occupied by the Inupiat people of Point Hope from time immemorial. The legal description and location of these lands to be acquired in trust are attached. This information is provided to the Secretary of Interior to comply with the applicable regulations.

3.    STATUTORY AUTHORITY FOR THE ACQUISITION: Section 5 of the Indian Reorganization Act (IRA) of 1934 confers the authority upon the Secretary of Interior to take lands in trust. Provisions 465 and 473a of the IRA are applicable in Alaska, and have never been repealed by Congress. These statutory provisions provide the authority to the Secretary of Interior to take lands in trust, owned by IRAs, when requests are made to the Secretary of Interior by tribes, such as Petitioner. The attached Memorandum in Support of Petition to Take Lands in Trust demonstrates that there are no legal or equitable limitations on the authority of the Secretary of Interior to take lands in trust on behalf of Alaska Native villages or tribes.

4.    PETITIONER'S NEED FOR LAND: As stated previously, Petitioner and its tribal members have traditionally occupied these lands from time immemorial. Because these lands were in bankruptcy, Petitioner now seeks the protection of its land base by requesting the Secretary of Interior to take these lands in

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

PETITION FOR ACQUISITION OF LANDS IN TRUST - 2
28:EAS

trust. Petitioner is aware of the significant restrictions which will apply once the land is accepted into trust. However, Petitioner and its tribal members desire to have this land as its permanent homeland, in trust protected by the United States government. See the Native Village of Point Hope Resolution attached.

The lands will continue to be used by Petitioner and its tribal members for subsistence purposes, inherent cultural purposes, and for the future generations of Inupiat peoples in Point Hope. Petitioner and its tribal members have made it clear that they desire to have the Secretary of Interior take these lands in trust.

5. <u>IMPACT ON STATE OF ALASKA AND ITS POLITICAL SUBDIVISIONS</u>: Presently, the lands owned by Petitioner are tribal lands, and are not subject to any form of state taxation. To Petitioner's knowledge, these lands previously owned by Tigara were not subject to any State of Alaska taxes. Thus, the impact of removing these lands 'from the tax rolls' of the State of Alaska, would be minimal, if any, should these lands be taken in trust by the Secretary of Interior. Since these lands have provided no taxes or tax base to the North Slope Borough, the impact of removing these lands from the borough would be negligible.

6. <u>JURISDICTIONAL AND LAND USE PROBLEMS</u>: The legislative history of the Alaska Native Land Claims Act (ANCSA)

PETITION FOR ACQUISITION OF LANDS IN TRUST - 3
28:EAS

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00103

makes clear ANCSA did not affect the status of the IRAs in Alaska. See The Report of the House Committee on Interior and Insular Affairs chaired by Congressman Udall, H.R. Rep. No. 99-712, 99th Cong. 2d Sess. 27 (1986). From the jurisdictional viewpoint, the authority or self-governing powers of the Alaska Native villages (which were recognized by the IRA of 1934 with the Secretary implementing the same) continues to the present until Congress acts to repeal or revoke the tribal status of the Alaska Native villages. The Congress has chosen not to change the status of the Alaska Native villages. The express and inherent tribal powers of the Alaskan IRAs continue intact, post ANCSA, and comprise the 'res' of the federal fiduciary trust responsibility between the United States government and the Alaskan Native villages. There is a 'duty of protection' flowing between the United States and the Alaskan Native villages. See Native Village of Noatak v. Hoffman, 872 F. 2d 1384, 1389 (9th Cir. 1989).

The lands at issue have been and will continue to be occupied as traditional tribal lands. This status has never changed. Consequently, if these lands are taken in trust, Petitioner does not foresee any land use problems.

7.    THE BUREAU OF INDIAN AFFAIRS (BIA) IS EQUIPPED

The BIA in Alaska is equipped to discharge the additional responsibilities which may arise from the acquisition of land in trust status. The BIA in Alaska has not been

PETITION FOR ACQUISITION OF LANDS IN TRUST - 4
28:EAS

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

AR00104

dismantled in Alaska because of ANCSA. On the contrary, the BIA has assisted the tribal governments in Alaska in numerous ways. The BIA is an essential part of the services provided by the United States government to Alaska Natives. This matter is an 'in-house' matter of the Department of Interior, and should be addressed in this fashion.

By this Petition, Petitioner has attempted to satisfy all the requirements of the Department of the Interior to take lands in trust on behalf of Petitioner. Petitioner respectfully requests the Secretary of Interior to take certain of their lands in trust.

February 21, 1990          *Ernest R. Frankson*

Council President

*Josh Shane*

Secretary to Council

LAW OFFICES
LYNCH, CROSBY & SISSON
A PROFESSIONAL CORPORATION
550 WEST 7TH AVENUE, SUITE 1100
ANCHORAGE, ALASKA 99501
(907) 276-3222
FAX: (907) 257-9498

PETITION FOR ACQUISITION OF LANDS IN TRUST - 5
28:EAS

ELLA ANAGICK-STEBING
731 "I" Street, Suite #201
Anchorage, Alaska  99501
(907)  277-1677


May 24, 1990


Honorable Manuel Lujan, Jr.
Secretary of the Interior
1849 C Street Northwest
Washington, DC  20240

Dear Secretary Lujan:

Several months ago, the Inupiat people of the Native Village of Point Hope submitted to you two documents:  A Petition to Take Lands in Trust and a Memorandum in Support of the Petition to Take Lands in Trust.  These documents were submitted to you pursuant to the authority of a federal statute, Section 5 of the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. §465.  That section specifically conferred authority on the Secretary of the Interior to take lands in trust on behalf of Indian tribes.

As you are aware Mr. Secretary, the Native Village of Point Hope, is an Alaskan Native village organized as a Native American tribe pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. §476.  Petitioner has a constitution approved in 1939 by the Secretary of the Interior,  and is a tribe as described in Native Village of Noatak v. Hoffman, 872 F 2d 1384 (9th Cir. 1989).

The basic reasons why the Native Village of Point Hope seeks trust status for its lands are set forth in the petition.  There is however an additional reason which has just come to light.  As you are aware as a result of the decision in the Alaska Supreme Court in McDowell v. Collingsworth, 785 P.2d 1 (Alaska 1989), Alaska will no longer provide a subsistence priority for rural residents as required by Title VIII of the Alaska National Interest Lands Conservation Act (ANILCA).  Accordingly, your Department will be assuming jurisdiction over hunting and fishing on public lands and the State will retain jurisdiction over private lands.

The Point Hope lands at issue here, are owned by the Tribe and are therefore private lands.  This means the State will not provide the residents of Point Hope with a subsistence priority.

As we have pointed out in our earlier submission, subsistence is a prerequisite to life in Point Hope.  Accordingly, a subsistence priority is indispensable.  If Point Hope lands are taken into trust, however, they will automatically become "public

AR00106

Honorable Manuel Lujan, Jr.
May 24, 1990
Page 2

lands" within the meaning of ANILCA, 16 U.S.C. § 3102, and
therefore covered by the subsistence protections of Title VIII.
For this reason alone, Point Hope lands should be placed in trust
status without further delay.

    Counsel for Petitioner believes that the Inupiat peoples'
request to take its lands in trust in Point Hope, Alaska on behalf
of the IRA tribe is ripe for decision.  Please respond to me
affirmatively by letter of approval, or some other document, to
Petitioner's request to have its lands taken in trust.  We have
been and will await your response and decision on this matter.

        Thank you.

                            Sincerely,

                            *Ella Anagick-Stebing*

                            Ella Anagick-Stebing
                            Counsel for Native Village
                            of Point Hope

EAS:tmt

cc:  Ernest Frankson, Native Village of Point Hope
     Lare Ashenbrenner, Native American Rights Fund





# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C.  20245

IN REPLY REFER TO:
Real Estate
Technical Services

Ernest Frankson, President                    AUG 1 7 1990
The Native Village of Point Hope
P.O. Box 91
Point Hope, Alaska  99766

Dear President Frankson:

Thank you for your proposed petition for approval of the
acquisition of certain lands in trust status for the Native Village
of Point Hope.

As the Village of Point Hope is under the jurisdiction of the
Juneau Area Office, we are forwarding your petition along with the
resolutions to our Juneau Area Office for review.  When they
complete the review and in accordance with the Land Acquisition
Regulations - 25 CFR 151 and 54 BIAM Bulletin 2, they may resubmit
the request to the Central Office for further review along with
their recommendations.

If we may be of further assistance, please contact the Division of
Real Estate Services at (202) 208-4317.

                    Sincerely,

                    /s/ MARSHALL M. CUTSFORTH

                    Acting Deputy to the Assistant Secretary -
                        Indian Affairs (Trust and Economic
                        Development)

cc:  **Juneau Area Director**

     Joe Donahue, Alaska Liaison Officer



RECEIVED
AUG 2 3 1990

AR00108

A D V A N C E   C O P Y

## United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C.  20245

IN REPLY REFER TO:

Real Estate
Techincal Services

APR 20 1990

54 BIAM Bulletin 2



MEMORANDUM

To:        Holders of 54 BIAM

From:      Deputy to the Assistant Secretary - Indian Affairs
           (Operations)

Subject:   Land Acquisition Regulations - 25 CFR 151

On July 17, 1989, Departmental Manual Release No. 2863 was issued,
superseding our November 4, 1988, delegation to reflect that this
office would retain the authority to proclaim new Indian
reservations (or add lands to existing reservations) but not the
authority to preliminarily approve off-reservation acquisitions or
acquisitions for gaming purposes.

Effective immediately, all land acquisition applications affecting
lands that are not within the exterior boundaries of a reservation
must be submitted for Central Office review.  In addition, all land
acquisition applications of Oklahoma tribes and individuals, with
the exception of housing requests, will also be submitted to the
Central Office for review.   Area Office action on these
applications shall not be taken until the Area Director is notified
in writing that action on the application is appropriate.

The Area Offices should ensure that all acquisition packages
submitted for review contain an explanation of why trust status is
necessary for the intended use of the land.  The packages should
also contain a detailed analysis of potential conflicts, as
required by 25 CFR 151.10(f), with state and local law that will
result if the land is taken in trust.  (If the intended use will
not conflict with state and local law, this should be specifically
noted in the package.)

Walter R. Mills

Expiration Date: October 20, 1990



# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C.  20240

SEP 1 1990

Ms. Ella Anagick-Stebing
731 "I" Street, Suite 201
Anchorage, Alaska  99501

Dear Ms. Anagick-Stebing:

On behalf of Secretary Lujan, thank you for your letter of May 24
concerning a February 21 petition submitted by the Inupiat people
of the Native Village of Point Hope.  The petition requests that
certain lands be acquired in trust status on behalf of the Village,
pursuant to Section 5 of the Indian Reorganization Act of 1934
(25 U.S.C. 465).

Since the Village of Point Hope is under the jurisdiction of the
Juneau Area Office, the petition and its supporting documents have
been transmitted to that office for review.  When the Area Office
completes its review, it may resubmit the petition to this office
with a recommendation for approval.

By copy of this letter, we are forwarding your correspondence to
our Juneau Area Office and instructing that office to consider your
comments in conducting its review.  We trust that this information
will be of assistance to you, and we sincerely apologize for the
delay in responding to your inquiry.

Sincerely,

/S/ Eddie F. Brown

Assistant Secretary – Indian Affairs

Enclosures

cc:  **Juneau Area Director**, with copy of incoming for action
     Joe Donahue, Alaska Liaison Officer



RECEIVED
SEP 17 1990
BUREAU OF INDIAN AFFAIRS
DIVISION OF TRUST SVCS.

RECEIVED
SEP 17 1990
BUREAU OF INDIAN AFFAIRS
OFFICE OF THE AREA DIRECTOR

AR00110



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
WASHINGTON, D.C.  20245



IN REPLY REFER TO:

Real Estate
Technical Services

AUG 0 9 1990



RECEIVED
AUG 16 1990
BUREAU OF INDIAN AFFAIRS
OFFICE OF THE AREA DIRECTOR

Certified Mail Receipt Requested

To:       Juneau Area Director

From:     Deputy to the Assistant Secretary - Indian Affairs
          (Trust and Economic Development)

Subject:  Proposed Petition for Acquisition of Lands in Trust
          for The Native Village of Point Hope

The Native Village of Point Hope has submitted a written request
for approval of the acquisition of certain lands in trust status
by the Secretary of the Interior. They acquired these lands from
the Tigara Corporation, an Alaska Native Claims Settlement Act
(ANCSA) village corporation.  Tigara selected these lands as part
of its fulfillment of the lands claims settlement under ANCSA.
Under bankruptcy proceedings, Tigara conveyed the lands in fee to
Point Hope by Quitclaim Deed executed on November 5, 1989.

As the request was mailed directly to the Central Office, we are
returning the package to your office for review.  Upon completion
of your review and in accordance with the Land Acquisition
Regulations - 25 CFR 151 and 54 BIAM Bulletin 2, please resubmit
the request to the Central Office for further review along with
your recommendation.

Patrick A. Hayes

Attachments

RECEIVED
AUG 16 1990
BUREAU OF INDIAN AFFAIRS
DIVISION OF TRUST SVCS.

AR00111

June 11, 1990

Ernest Frankson, President
Native Village of Point Hope
P.O. Box 91
Point Hope, Alaska  99776

Dear Mr. Frankson:

I recently received copies of Point Hope Council Resolutions No.'s 90-01, 90-02, 90-03, the Petition for Acquisition of Lands in Trust and the Memorandum in Support of Petition to Take Lands in Trust. As there was no cover letter accompanying the document copies I am unsure what your exact intention was in transmitting them to me. I assume you are requesting the Bureau to take the lands in trust.

Before we can do anything we will need a copy of the deed of sale which provides a precise legal description of the lands conveyed to the Council from the Tigara Corporation. (While the Petition referred to an attachment providing a legal description there was no such attachment with the copy sent to our office.) Your request should also include the signed originals of the resolutions (or duplicate originals) and an explanation of the purpose for which the lands will be used.

I am quite concerned with the connection between the conveyance of the land to the Council and the insolvency of the ANCSA corporation, Tigara Corporation. Section 1 of the Petition states that the conveyed lands "were included assets of the bankrupt debtor, Tigara, and as such, were subject to the claims of Tigara's creditors. To protect Native ownership of these lands, Tigara sold and conveyed these lands to Petitioner." Was the property released for sale by the creditors? Has the sale actually occurred - if so, what are the terms of the sale? Who is representing the Council in this transaction? Has the bankruptcy hearing been held?

Until a proper request is submitted, complete with proper documentation, I can take no action. If you have any questions please call me or James Brafford, Realty Officer, at 456-0222.

Sincerely,

Michael J. Stancampiano
Superintendent

cc: James Brafford

RECEIVED
SEP 26 1990
SOUTHEAST AGENCY, BIA

AR00112

September 19, 1990

Ms. Ella Anagick-Stebing
731 "I" Street, Suite 201
Anchorage, Alaska  99501

Dear Ms. Anagick-Stebing:

This is to follow up the Assistant Secretary - Indian Affairs'
September 11 letter to you regarding the acquisition of land in
trust for the Native Village of Point Hope.  Your package has been
recently forwarded to my office for action.  Because this request
is unprecedented in Juneau Area, we have requested technical
assistance from the Portland Area Office.

Glenda Miller, Juneau Area Realty Specialist, will be handling the
case for this office.  Her direct telephone number is 586-7304.
Please feel free to call her for updates.

                              Sincerely,




                              Loren J. Farmer
                              Acting Area Director


cc:  Superintendent, Fairbanks Agency
     Director, Division of Trust Services
     Joe Donahue, Alaska Liaison Officer
     BCCO Control Number 2341

GMiller:gm
C:\WP51\AREA\L-PTHOPE.9-H



FILE COPY
SURNAME

AR00113

UNITED STATES GOVERNMENT

# memorandum

**DATE:** October 18, 1990

**REPLY TO ATTN OF:** Superintendent, Fairbanks Agency

**SUBJECT:** Native Village of Point Hope Petition to Take Lands in Trust

**TO:** Area Director, Juneau Area Office

Attached for your review and recommendation for action is subject petition and its supporting documents (copies of which JAO may have a case working file).

The Native Village of Point Hope has not responded to my letter of June 11, 1990 where I requested a copy of the deed of sale to determine the land base they petition to take in trust.

The deed of sale it seems, would be paramount to any procedural fee land to trust conversion undertaking. Juneau Area Office Memorandum dated September 18, 1990 seeking technical assistance from Portland Area Office and the letter dated September 19, 1990 to Ella Anagick-Stebing, both indicated Juneau Area Realty is taking the lead on this action.

If this remains the strategy, please advise of any role Fairbanks Agency should have with regard to delivery of technical assistance to clients under our jurisdiction.

Please respond in writing as to the Agency's responsibility in this matter.

Michael J. Stancampiano

attachments

RECEIVED
OCT 22 1990
BUREAU OF INDIAN AFFAIRS
OFFICE OF THE AREA DIRECTOR

RECEIVED
OCT 22 1990
BUREAU OF INDIAN AFFAIRS
DIVISION OF TRUST SVCS.

OPTIONAL FORM NO. 10
(REV. 1-80)
GSA FPMR (41 CFR) 101-11.6
5010-114
*U.S.GPO:1987-0-181-247/40255

AR00114

September 18, 1990

Acting Area Director, Juneau Area

Acquisition of Land Pursuant to 25 CFR 151

Area Director, Portland Area, Bureau of Indian Affairs
Attention:   Realty Officer

Juneau Area Realty has been directed to process a request for acquisition of lands in trust for the Native Village of Point Hope. This is the first such request which we have handled since at least passage of the Alaska Native Claims Settlement Act in 1971.   We have no area-wide procedures or policies on the issue.   Therefore, we request your assistance in providing copies of:   any procedural and policy guidelines; a completed successful package; and anything else you think might be helpful.

If you have an individual in your office who has expertise in this area and is willing to work with us on this transaction, I would appreciate knowing that as well.   The Juneau Area contact is Glenda Miller (907) 586-7304 or FTS 871-7304.   Our mailing address is: Post Office Box 3-8000, Juneau, Alaska  99802.

Thank you very much for your help in this matter.




                    Loren J. Farmer


cc:   Fairbanks Agency Superintendent


GMiller:gm
C:\WP51\AREA\M-CFR151.9-G

FILE COPY
SURNAME

AR00115

**Attorneys**

Lawrence A. Aschenbrenner
Bart K. Garber
Robert T. Anderson

# Native American Rights Fund

310 "K" Street, Suite 708  •  Anchorage, Alaska 99501  •  (907) 276-0680

Executive Director
*John E. Echohawk*

Deputy Director
Ethel J. Abeita

Main Office
1506 Broadway
Boulder, CO 80302-6926
(303) 447-8760
FAX 443-7776

April 22, 1991

Ms. Glenda Miller
Realty Specialist
Bureau of Indian Affairs
P.O. Box  3-8000
Juneau, Alaska  99802

     Re:  Point Hope Trust Lands

Dear Glenda:

     I spoke to you on April 10, 1991 regarding the status of the Native Village of Point Hope's petition to have certain lands taken in trust by the United States.  You confirmed my understanding that the request would be transferred back to the Fairbanks Agency office for further proceedings.  Has this been done yet?  If the matter has not been formally transferred, would you please inform me of the transfer as soon as it takes place. This request has been pending for some time and the Village is anxious to pursue it.

     I will be in Fairbanks in early May and would like to review the BIA file that has been compiled to date and meet with the staff who will process the request.  I expect that the Village will provide supplementary materials in support of the petition after meeting with Fairbanks agency staff.

     Thank you for your assistance on this important matter.  I look forward to your response.

     Sincerely,

     Robert T. Anderson

cc: Ernest Frankson President, Pt. Hope
    Jack Schaefer, Secretary, Pt. Hope
    Mike Stancampiano, Agency Superindent
    Joe Donahue, Alaska Liaison Officer
    Ella Anagick, Co-counsel

RECEIVED

APR 24 1991

Bureau of Indian Affairs
Area Realty

AR00116



IN REPLY REFER TO:

# UNITED STATES
# DEPARTMENT OF THE INTERIOR
### BUREAU OF INDIAN AFFAIRS
Juneau Area Office
P. O. Box 3-8000
Juneau, Alaska  99802

May 1, 1991

Mr. Robert T. Anderson
Native American Rights Fund
310 "K" Street, Suite 708
Anchorage, Alaska  99501

RE:  Point Hope Petition

Dear Mr. Anderson:

This is in response to your April 22 letter to Glenda Miller, Area Realty Specialist.  The Point Hope petition was referred to the Fairbanks Agency for action today.  The Fairbanks Agency Realty Officer James Brafford will take the lead in putting together a transaction package and Ms. Miller will be working closely with him from Area Realty.  I have also requested an Attorney be assigned the case from our Regional Solicitor's office.

Sincerely,

Niles C. Cesar
Area Director

cc:    Office of the Regional Solicitor
       Fairbanks Agency

AR00117

UNITED STATES GOVERNMENT

# memorandum

**DATE:** May 1, 1991

**REPLY TO ATTN OF:** Area Director

**SUBJECT:** Native Village of Point Hope Petition to Take Lands in Trust

**BUREAU OF INDIAN AFFAIRS**

JUNEAU AREA OFFICE

**TO:** Superintendent, Fairbanks Agency
ATTN: Realty Officer

The subject petition has been held in Area Realty pending receipt of technical assistance from Portland Area Realty. Apparently this assistance in not forthcoming. I would therefore appreciate your Realty Office taking action using 25 CFR 151 - Land Acquisitions and Juneau Area Realty Memorandum Releases as guidance. Your office should have copies of all correspondence and documents regarding this transaction.

Attached is a copy of a memorandum notifying the Regional Solicitor's office of this pending transaction. I'm sure that this office will be intensely involved in this transaction.

Attached is a recent letter from Robert T. Anderson, who is an attorney with the Native American Rights Fund and a copy of our response to him.

As stated before, Glenda Miller will be the Area Realty Specialist handling the transaction from this end. Feel free to call her to discuss it at (8) 871-7403.

Niles C. Cesar

Attachments

cc: Office of the Regional Solicitor

Tribal Operations

UNITED STATES GOVERNMENT

# memorandum

DATE: May 7, 1991

REPLY TO
ATTN OF: Area Realty Officer

SUBJECT: Native Village of Point Hope Petition
to Take Lands in Trust

TO: Superintendent, Fairbanks Agency
ATTN: Realty Officer

**BUREAU OF INDIAN AFFAIRS**

JUNEAU AREA OFFICE

Attached is additional guidance to be used in processing the subject petition. It was provided by Fred Garcia, who was an employee in the Albuquerque Area office prior to coming on board here. If you have any questions in following these guidelines, please call Glenda Miller.

Frank Parot, Jr.

Attachment

cc: Office of the Regional Solicitor
w/copy of attachment

OPTIONAL FORM NO. 10
REV. 7-76
GSA FPMR (41 CFR) 101-11.6
5010-112

AR00119

LAND ACQUISITION GUIDELINES

This is a step by step analysis of how to prepare fee land acquisition transactions by tribes and individual Indians with the intent of placing that land into trust status.  These guidelines will cover the regulations in 25 C.F.R. Part 151, the Bureau issued guidelines for implementation of those regulations and Bureau issued policies on land acquisition.  Since all our work to date has involved acquisitions for tribes, that is where we will concentrate this discussion.  However, agencies would follow the same procedures for acquisitions by individual Indians.  This will also cover the additional process of having trust land placed into reservation status.


## FEE ACQUISITIONS FOR TRUST STATUS

The regulations at 25 C.F.R. Part 151 set forth the authorities, policy and procedures governing the acquisition of land by the United States in trust status for individual Indians and tribes.  (Attachment No. 1)  The Central Office prepared a five page memorandum of general guidelines dated November 3, 1980, to provide assistance in implementation of the regulations.  (Attachment No. 2)  These guidelines explain what to do and how to comply with each section of the regulations.  In preparing a transaction the important thing is to build a proper acquisition record that can be used to support the decision to acquire the land in trust status and to defend the transaction in case of possible protests or litigation.

The acquisition record is put together at the agency level and when completed, it is submitted to the Area Office for an initial review and a determination of whether to accept the property into trust status.  Depending upon the location of the subject property (inside or outside the existing reservation boundaries) the transaction may have to be sent to the Central Office for their review and determination.  The acquisition record will consist of the conveyance documents, relevant title evidence documents (title insurance or title abstract), purchase agreement, appraisal information, legal description, maps of location, evidence of notice of the purchase to the state and local governments, evidence of National Environmental Policy Act (NEPA) compliance, physical inspection of the property, issuance of the Certificate of Inspection and Possession and other necessary documentation.  The tribe should submit a written request for approval of the acquisition and placement into trust status in the form of a tribal council resolution.  The resolution should also include a statement of need and state the purposes for which the land will be used in order to satisfy 25 C.F.R. §151.10(c).

POLICY - Title 25 C.F.R. §151.3 sets forth the Bureau policy on fee land acquisitions for an individual Indian or a tribe.  This has been supplemented by policy announcements from the Central Office from time to time.  However, most of the policy changes have involved procedural matters such as who has review and approval authority over a particular transaction, the Area or Central Office.  These matters will be discussed later in these guidelines at the appropriate place.  Basically the Bureau policy states that non-trust land may only be acquired in trust when authorized by Act of Congress.  For all but the Pueblo of Jemez and the Ramah Navajo Chapter, the usual cited authority is Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. §465.  (Attachment No. 3)  All trust acquisitions require approval of the Secretary in order to be valid.

AR00120

-3-

The letters should be sent by certified mail so you will have a record of when they were mailed out. The agency then has to wait 30 days for any responses. If no responses are received within 30 days, the realty staff should make a statement for the record that no comments were received and we can assume there are no adverse impacts on the state and local governments. When you submit the acquisition package for review, include copies of the letters you sent to the state and county(ies) and copies of any responses you received. If no responses are received, send us a statement to that effect.

The original Central Office instructions stated notice of proposed trust status should be sent to the political subdivision in which the land is located. The guidelines indicated this should be sent to the "local" government and did not mention the state level. Our February 28, 1984, memorandum advised the Superintendents, Albuquerque Area, of the Central Office's decision to give 30-day notice of reservation status. However, it too was written in terms of "local" governments, not the state government level. Our original course of action was to have the agencies notify just the local level governments of these transactions, not the state level.

We have nothing in writing from them, however, the Central Office staff informed us to advise the agencies to send the 30-day notices to the state in addition to the local governments. It was brought to the Bureau's attention that the Bureau's own regulations at 25 C.F.R. §151.10(e), in listing the factors to be considered state:

> "If the land to be acquired is in unrestricted fee status, the impact on the <u>State</u> and its political subdivisions resulting from the removal of the land from the tax rolls." (emphasis added)

Therefore, as a result of inquiries from various state officials and the wording of the regulations, the Central Office advised the Area Office to have the agencies send the 30-day notice to the state in addition to the local governments. The important thing we are trying to do is to build a proper record that will support taking this land into trust status and that can be used to defend the acquisition in case of possible protests or litigation stemming from removing the property from the tax rolls. The easiest way for a state or county to attack our actions is to show that we did not follow our own procedural steps for taking the land into trust. By having the agency realty staffs follow all the regulations, we can prevent this from happening.

OTHER EVALUATION FACTORS – The sixth item addresses jurisdictional problems and potential conflicts of land use which may arise from the acquisition. Our usual practice is to have the tribe and/or agency provide a statement as to whether this transaction will create or solve any jurisdictional problems. For example, if the subject land is within or adjoins the existing reservation, the acquisition may solve jurisdictional problems for the tribe by allowing tribal and Bureau police to exercise jurisdiction over it. If the tribe plans to continue using the land in the near future as it has been used in the past (such as continued ranching or grazing) then there should be no conflicts of land use and a statement should be made to this effect. If, on the other hand, the tribe plans a new use (such as housing or industrial development) this should be spelled out.

AR00121

-4-

The seventh item addressed whether the Bureau is equipped to discharge the additional responsibilities resulting from the acquisition of the fee land in trust status. The agency should provide a statement as to whether it has the capability to handle any additional responsibilities. A small tract of land should not impose any burdens while a large tract might. It also depends upon how well staffed the agency is to handle the old land base and the new land.

PHYSICAL INSPECTION - A physical inspection of the subject property should be made by the agency realty officer to ascertain the existence of any of the following:

     1) rights or claims of persons in possession, if any, not shown of record;

     2) mechanics' liens, if any, not shown of record, and,

     3) easements for roads, highways, railroads, pipelines, ditches, canals and public utilities, if any, not shown of record.

These are potential problems with the title to a tract of land and technically relate more to the title examination aspect of the transaction than they do to the decision of whether or not to acquire the land in trust. However, as a practical matter, if the title to the subject land is made unmarketable due to third party claims and liens, the Bureau can not place the land into trust status until these problems are cleared up. Therefore, the physical inspection should be made at an early date to determine whether any of these problems do in fact exist.

CERTIFICATE OF INSPECTION AND POSSESSION - After completing the inspection, a Certificate of Inspection and Possession should be filled out by the person making the inspection and approved by the Superintendent. (See Attachment No. 5 for format of certificate.) Basically the certificate states that the person inspected the property and that none of these problems exist. If any problems are discovered, the problems will either have to be clear up or the affected portion of the property excluded from the transaction before the land can be placed into trust status. A copy of the completed Certificate should be included in the acquisition package that is submitted for review.

NEPA COMPLIANCE - By memorandum dated February 14, 1985, the Central Office reminded us that since trust land acquisitions are federal actions, the NEPA process must be completed before the land can actually be transferred to trust status. However, by memorandum dated March 26, 1986, the Central Office announced that they were in the process of amending Appendix 4 of Departmental Manual 516, by providing for a categorical exclusion for three listed types of land conveyances. For most of our transactions, the second listed type is pertinent:

     "Purchase, sale, abandonment or exchange of tracts of lands, mineral rights or other interests in land in which no change in land use or operation is planned."

As a result of this action, any land conveyance which fits within one of these types will be categorically excluded and exempted from the requirements to

AR00122

-5-

prepare an Environmental Assessment or Environmental Impact Statement. However, in order to insure total NEPA compliance, the "Exception Review Checklist" must be completed and included with the acquisition package. (See Attachment No. 6 for checklist format for agency use.)

ACTION ON REQUESTS - The regulations state that the Secretary shall review all requests and shall promptly notify the applicant in writing of his decision. Also, the Secretary may request any additional information or justification he considers necessary to enable him to reach a decision. At the time the regulations and guidelines were issued, the Area Offices had the delegated authority to approve acquisitions of land that were either within or adjacent to existing reservation boundaries. All applications for acquisitions that were not within or adjacent to a reservation had to be forwarded, together with the complete acquisition record, to the Central Office for a decision by the Office of the Secretary.

In December 1985 and March 1987, the Central Office advised the field of proposed changes in the implementation of the land acquisition regulations. In effect, the changes stated that all land acquisitions that are not within the reservation boundaries, even though they are adjacent to the reservation boundaries, and all land acquisitions associated with gaming would have to go to the Central Office for review and approval. Only purchases of land within the reservation boundaries could be approved at the Area level. However, the Central Office never followed up on these proposed changes by formally changing the regulations, the manuel or the delegations of authority to the field.

On June 23, 1987, the Bureau published a proposed rule in the Federal Register that would prohibit the acquisition in trust status of lands located outside the boundaries of Indian reservations for individual Indians or Indian tribes if the purpose of the acquisition is to establish a bingo or other gaming enterprise. We later received notice that on January 22, 1988, the Bureau formally withdrew this proposed rule making action due to overwhelming public comments in opposition to the action.

Upon inquiry, the Central Office informed us that since the delegations of authority were never formally changed, the Area Office still has the authority to approve off-reservation acquisitions that are adjacent to the existing reservation boundaries. Accordingly, requests that off-reservation land be taken into trust will continue to be considered on a case-by-case basis pursuant to the existing guidelines found in the regulations.

TITLE EXAMINATION - The regulations state if the Secretary determines that he will approve a request for the acquisition of fee land to trust status, he shall acquire or require the applicant to furnish title evidence meeting certain United States standards on the ALTA US FORM. The regulations do not require an applicant to provide the title evidence until after a decision on the request for trust status is made. This was done to prevent unnecessary expenses being incurred by the applicant. As a practical matter, however, if the parties are reasonably sure the acquisition will be approved, they should obtain title evidence at an earlier date in order to speed up the process and prevent delays.

AR00123

-6-

TITLE INSURANCE - As written the regulations allow the applicant to provide either an abstract of title or title insurance for the title evidence. However, after working with the Office of the Field Solicitor for a number of years it was agreed upon that obtaining title insurance is the better and faster route to follow. This is due in part to the fact that the delegation of authority to the Department of the Interior by the Attorney General, and in turn re-delegated to Field Solicitors, is limited to cases where the title evidence consists of abstracts of title to acquisitions valued at $100,000 or less. All acquisitions exceeding this amount must be sent to the Department of Justice in Washington, D.C., for action which adds several months in time to the process.

Therefore, after consultation with the Field Solicitor, by memorandum dated June 30, 1986, we issued a land acquisition policy of a strong preference for title insurance over a title abstract for title evidence. (Attachment No. 7) We requested that the agencies provide title insurance policies for the Field Solicitor for all land acquisitions. The Field Solicitor will only review a title abstract for a transaction where there is the absence of a title insurance company to write a title insurance policy to cover the acquisition in question.

REQUESTING A TITLE OPINION - After an initial decision has been made to put the land into trust status, we submit a request to the Field Solicitor for a Preliminary Title Opinion to determine whether the title to the property is marketable. We submit the title evidence, the items in the acquisition package listed above, the purchase agreement and a copy of the closing statement indicating how the taxes for that year are being handled. If there are any problems with the title, they should be cleared up before the Field Solicitor will approve the transaction. At the very least, the Field Solicitor will ask for a letter from the tribe stating that the exceptions and reservations in the title insurance policy will not interfere with the tribe's contemplated use of the property.

FORMAL ACCEPTANCE - The regulations make clear that the land is not in trust until there has been a formal acceptance. After the Field Solicitor issues his Final Title Opinion stating that the title is acceptable, the Area Director can place the property into trust status by approving the deed if he has approval authority over the transaction. If the transaction does not fall within the Area Director's delegation of authority, we submit the documentation to the Central Office for their review. For past Albuquerque Area transactions the Central Office has not yet actually approved a deed themselves. Instead if they approve the acquisition, they write a memorandum authorizing the Area Office to approve the transaction.

AFTER ACCEPTANCE - After the property has been put into trust status, we record the deed in the Bureau Land Titles and Records Office, and notify the agency. We also advise the agency to write to the county to tell them the land is now being held in trust status and that it should be removed from the tax rolls.

AR00124

-7-

RESERVATION STATUS FOR LAND ACQUISITIONS

Obtaining reservation status for a tract of acquired land is different from and in addition to trust status. Applications for reservation status must still be directed through the Area Office to the Secretary since authority to add lands to a reservation has not been delegated below the Secretarial level. The Secretary puts land in reservation status by a Section 7 proclamation issued pursuant to Section 7 of the Indian Reorganization Act of 1934, 25 U.S.C. §467. (Attachment No. 8)

PROCESS – Currently there are no regulations listing the procedures to take for reservation status. However, we have followed certain steps in the past which will be explained here. First, the agency obtains a tribal council resolution requesting that the Secretary of Interior put the subject land into reservation status.

NOTICE TO LOCAL GOVERNMENTS – In the Fall of 1983, it was determined by the Deputy Assistant Secretary – Indian Affairs and the Office of the Solicitor that the Bureau would henceforth provide the local governments, where the subject land is located, with a 30-day notice for all Section 7 proclamations. (See Attachment No. 9 for sample formats.) Previously, the local governments were given a 30-day notice of intent to acquire the land in trust status but were given no notice of intent to put the land into reservation status. By memorandum dated February 3, 1984, the Central Office reminded the field of the requirement to provide 30-day notice of intent to put land into reservation status.

Accordingly, 30-day notice should be sent to the state and county(ies) by certified mail so that the agency will have a record of when the notices were sent. Any comments you receive should be included in the materials you transmit to the Area Office. If no comments are received, the realty staff should make a statement to this effect to include in the record.

The agency then submits their recommendation to the Area Office along with the resolution, a copy of the approved deed placing the land into trust status, maps of location, an explanation of why the tribe needs reservation status for the subject land and evidence of the 30-day notice to the state and county.

CENTRAL OFFICE ACTION – The Area Office submits the above materials to the Central Office with our recommendation. The Central Office then reviews the request, and if they agree, they prepare the proclamation and a Federal Register notice stating that the subject land is being proclaimed part of an Indian reservation.

Upon receipt of the proclamation, we have it recorded in the Land Titles and Records Office and send copies to the agency so they can advise the tribe.

AR00125



United States Department of the Interior

OFFICE OF THE SOLICITOR
ALASKA REGION

222 West 8th Avenue, #34
Anchorage, Alaska 99513-7584
(907)271-4131

IN REPLY REFER TO:





AW RIGHT!
LET'S PAY
ATTENTION
HERE!!

FACSIMILE TRANSMISSION
COVER PAGE

DATE: _5/9/91_

TO: _Scott Keep_

ORGANIZATION: _Off of the Sol, DIA_

PHONE: _77 - 268 - 5134_

FAX NUMBER: _(202) 208-3877_

FROM: _Roger Hudson_

ORGANIZATION: U.S. Department of the Interior,
Office of the Regional Solicitor

PHONE:      (907) 271-4131 - Commercial
            863-4131      - FTS

FAX NUMBER: (907) 258-5734

NUMBER OF PAGES: _cover plus 8_

CONTENTS: (1) _status of Pt. Hope petition to
take land in trust; (2) memo
re tribal status of Alaska
Native villages under Oil Pollution
Control Act,
33 USC 2701
et seq._

NOTE:    IF YOU DO NOT RECEIVE THE TOTAL NUMBER OF PAGES
         INDICATED, PLEASE CALL THE SENDING INDIVIDUAL
         LISTED ABOVE.

DID YOU GET
ALL THE PAGES
?!?

# DEPARTMENT OF THE INTERIOR

**Bureau of Indian Affairs**

**25 CFR Part 151**

**RIN 1076-AC51**

**Off Reservation Land Acquisitions for Indian Tribes**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Proposed rule.

**SUMMARY:** On July 19, 1990, the Secretary of the Interior announced a new policy for the placement of lands in trust status for Indian tribes when such lands are located outside of and noncontiguous to a tribe's existing reservation boundaries. The proposed regulations will modify an existing section within Part 151 (Land Acquisitions) and create a new section *which will contain additional criteria* and requirements to be used by the Secretary in evaluating requests for the acquisition of tribal lands in trust when such lands are located outside of and noncontiguous to the tribes' existing reservation boundaries.

**DATES:** *Comments must be received* on or before September 13, 1991.

**ADDRESSES:** Written comments should be directed to the Chief, Branch of Technical Services, Division of Real Estate Services, Bureau of Indian Affairs, 1849 C Street, NW., MS–4522 MIB, Washington, DC 20240.

**FOR FURTHER INFORMATION CONTACT:** Alice A. Harwood, Acting Chief, Branch of Technical Services, Division of Real Estate Services, Bureau of Indian Affairs, Room 4522, Main Interior Building, 1849 C Street, NW., Washington, DC; Telephone No. (202) 208–4861; or by mail at the address listed above.

**SUPPLEMENTARY INFORMATION:** This proposed amendment to a rule is published in exercise of the authority delegated by the Secretary of the Interior (Secretary) to the Assistant Secretary—Indian Affairs by 209 DM 8.

On July 19, 1990, the Secretary announced a new policy for the placement of land in trust status for an Indian tribe when such land is located outside of and noncontiguous to the tribe's existing reservation boundaries. *The Secretary is vested by statute with* broad discretionary authority to accept land in trust status for individual Indians and Indian tribes, within or outside existing Indian reservation boundaries. To assist in making these discretionary decisions, the Secretary promulgated the current land acquisition regulations (25 CFR part 120a, now 151) and associated Implementation Instructions which set forth a very generalized policy and set of procedures. Since each tribe's circumstances are different, all such acquisition requests have been reviewed on a case by case basis using the following factors found in 25 CFR 151.10: Statutory authority, need, purpose, amount of trust land currently owned, impact of removing land from local government tax rolls, potential land use and zoning conflicts, and the impact on Bureau of Indian Affairs services.

In recent years, the Bureau has witnessed a number of requests by tribes for the acquisition of land, in trust, located outside of and noncontiguous to the reservation, for purposes of economic development projects and, in particular, gaming establishments. These enterprises, which are often located in urbanized *areas, are sought by tribes as a stated* means of achieving economic and financial self-sufficiency. Such acquisitions have in many cases become highly visible and controversial due to their possible impact on local governments. The loss of regulatory control and removal of the property from the tax rolls are the objections most often voiced by local governments to the acquisition of noncontiguous, off-reservation land in trust status.

The Secretary has announced the aforementioned policy and rule change in order to ensure that requests for the placement of off-reservation, noncontiguous lands in trust will be reviewed in a consistent manner and, if possible, reduce or eliminate adverse impacts on surrounding local governments, while supporting tribal sovereignty and self determination.

*The proposed rules, which incorporate* the Departmental policy, add new criteria and requirements to be used in evaluating tribal off-reservation and noncontiguous acquisitions, in trust, differentiating between lands acquired for gaming and for nongaming purposes.

Section 151.10 will be modified to clarify that listed criteria presently found in this section pertain only to requests for the acquisition of tribal and individual lands in trust when such lands are located within or contiguous to the tribe's reservation.

Section 151.10(d) will be modified to be all inclusive in terms of gender.

Section 151.10(h) is added to incorporate the Department's concern that proposed trust property be free of hazardous and toxic substances before title is accepted by the Secretary.

The original § 151.11 will be renumbered as § 151.13. The new

§ 151.11 will establish several criteria and requirements, in addition to applicable criteria found in § 151.10, to assist the Secretary in reviewing requests for the acquisition of tribal lands in trust when such lands are located outside of and noncontiguous to the tribe's reservation. The new section provides that the property to be acquired in trust be free of hazardous substances (consistent with existing acquisition policy), and that the land should be located within the same state(s) where other tribal trust land for that tribe currently exists. This requirement will be relaxed for tribes with *no existing reservation land base,* or tribes which have reservations near state borders. However, the Secretary will give greater weight to the concerns of state and local governments for such "out of state" land acquisition requests. The tribe must provide an economic plan with an in depth analysis of the costs and benefits of such plan. The analysis must demonstrate the economic feasibility of the plan and must list any factor, economic, legal or political, which may jeopardize the development plan or expose tribal assets to risk of loss. As distance from the reservation land base increases, particularly towards or into urbanized areas, the value of reasonable alternative uses of the land must be examined and a relatively stronger justification for trust status will be required. As warranted and relevant to the proposal under consideration, the justification could address such factors as the cost and ability to administer the land to be acquired in trust. A documented effort by the tribe must be made in order to resolve various differences or objections from local governments, as well as to adopt standards similar to local ordinances pertaining to health, safety, building construction and zoning.

The new § 151.12 will also establish several additional criteria and requirements to assist the Secretary in reviewing requests for the acquisition of tribal lands in trust when such lands, located outside of and noncontiguous to the tribe's reservation, are for gaming purposes. Such requests must be in compliance with the Indian Gaming Regulatory Act, Public Law 100–497, and reviewed (when applicable) by the *National Gaming Commission and the* Secretary of the Interior. The tribes request must also include a feasibility study and an economic analysis of possible non-gaming alternative enterprises which would provide equivalent economic benefits from said property.

The primary author of this document is Alice A. Harwood, Acting Chief, Branch of Technical Services, Division of Real Estate Services.

The policy of the Department is, whenever practicable, to afford the public an opportunity to participate in the rulemaking process. Accordingly, interested persons may submit their written comments, suggestions, or objections regarding the proposed rule to the location identified in the ADDRESSES section of this preamble.

The information collections requirements contained in §§ 151.09 through 151.15 have been approved by the Office of Management and Budget and assigned approval number 1076–0100. The information collected in this part is being collected to meet the requirements in this regulation and will be used to evaluate off-reservation acquisition requests. In response to this requirement it is necessary to obtain an estimate of its benefit in accordance with 5 U.S.C. 601. Public reporting burden for this requirement is estimated to average 4 hours per response, including the time for reviewing instructions, gathering and maintaining data and completing and reviewing this submission. Direct comments regarding the burden estimate for any other aspect of this requirement should be directed to Gail Sheridan (telephone number 202–208–2685) at the Bureau of Indian Affairs, Department of the Interior, and Department of the Interior Desk Officer, Office of Management and Budget, room 3108, NEOB Washington, DC 20503.

The Department of the Interior has determined that this document is not a major rule under Executive Order 12291 because it simply identifies a limited number of criteria and requirements to be considered in the exercise of the Secretary's discretion to place lands in trust for tribes when such lands are located outside of and noncontiguous to Indian reservations. Historically, the annual number of tribal requests to place such lands in trust has been small. In terms of additional expense incurred by the requesting tribes in providing studies and information to the Secretary, the overall effect of this rule will be negligible. The rule will not have any significant effects on the economy or result in increases in costs or prices for consumers, individual industries, Federal, State, or local governments, agencies, or geographical regions. The rule will not have any adverse effects on competition, employment, investment, productivity, innovation, or the export/import market.

The Department of the Interior has determined that this rule will not have a significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act (5 U.S.C. 601 et seq.) because of the limited applicability as stated above.

This proposed rulemaking is categorically excluded from the National Environmental Policy Act of 1969 because it is of an administrative, financial, legal, technical, and procedural nature, and therefore neither an environmental assessment nor an environmental impact statement is warranted.

List of Subjects in 25 CFR Part 151

Indians—lands, Reporting and recordkeeping requirements.

Accordingly, it is proposed that part 151 of subchapter H of chapter I of the Code of Federal Regulations be amended as follows:

PART 151—LAND ACQUISITIONS

1. The authority citation for part 151 continues to read as follows:

Authority: R.S. 161; 5 U.S.C. 301. Interpret or apply 46 Stat. 1106, as amended; 46 Stat. 1471, as amended; 48 Stat. 985, as amended; 49 Stat. 1967, as amended; 53 Stat. 1129; 63 Stat. 605; 69 Stat. 392, as amended; 70 Stat. 290, as amended; 70 Stat. 626; 75 Stat. 505; 77 Stat. 349; 78 Stat. 389; 78 Stat. 747; 82 Stat. 174, as amended; 82 Stat. 884; 84 Stat. 120; 84 Stat. 1874; 86 Stat. 216; 86 Stat. 530; 88 Stat. 744; 88 Stat. 78; 88 Stat. 81; 88 Stat. 1716; 88 Stat. 2203; 88 Stat. 2207; 25 U.S.C. 409a, 450h 451, 464, 465, 487, 488, 489, 501, 502, 573, 574, 576, 608, 608a, 610, 610a, 622, 624, 640d–10, 1466, and 1495, and other authorizing acts.

2. Section 151.10 is amended by revising the introductory text of the section and adding new paragraph (h) to read as follows:

§ 151.10   Factors to be considered in evaluating requests.

The Secretary shall consider the following criteria in evaluating requests for the acquisition of land in trust status when the land is located within or contiguous to an Indian reservation:

(h) The property must be free of all hazardous and toxic material as required by 602 DM 2 Land Acquisitions: Hazardous Substances Determinations (for copies write to the Office Management Improvement, 1849 C Street NW., room 2252, Washington, DC 20240).

§§ 151.11–151.14   [Redesignated as §§ 151.13–151.16]

3. Sections 151.11, 151.12, 151.13 and 151.14 will be redesignated as 151.13, 151.14, 151.15, and 151.16, respectively.

4. A new § 151.11 will be added to read as follows:

§ 151.11   Considerations in evaluating requests when the land is located outside of and noncontiguous to an Indian reservation.

The Secretary shall consider the following criteria and requirements in evaluating requests for the acquisition of tribal land in trust status, when the land is located outside of and noncontiguous to the tribe's reservation:

(a) Criteria presented in paragraphs (a) through (c) and (e) through (h) of § 151.10;

(b) The land to be acquired in trust should, in general, be located within the state(s) in which the tribe's reservation or trust lands are currently located. Exception to this requirement may be made for tribes which have lands in one state but are located near the border of another state, or tribes which have no trust lands. In situations where the land to be acquired is in a state in which the tribe is not located, the Secretary will give greater weight to the considerations concerning the effect of the land acquisition on state and local governments. However, all other things being equal, the greater the distance of the land proposed to be taken in trust from the tribe's current or former reservation or trust land, the greater the justification required to take the land in trust. As warranted and relevant to the proposal under consideration, the justification could address such factors as the cost and ability to administer the land to be acquired in trust. In addition, applications for trust land located within an urbanized, and primarily non-Indian community must demonstrate that trust status is essential for the planned use of the property and the economic benefits to be realized from said property.

(c) The tribe shall provide an economic development plan specifying the proposed uses for the trust land with an in-depth analysis of the costs and benefits of such plan. The cost/benefit analysis should contain, at a minimum, start up costs, anticipated operating costs, the anticipated employment opportunities for tribal members, the anticipated net revenue to the tribes and any economic, legal or political factor which could jeopardize the development plan or expose tribal assets to risk of loss.

(d) The tribe will adopt standards and safeguards comparable to all local ordinances including, but not limited to, fire safety, building codes, health codes, and zoning requirements.

(e) Upon receipt of the tribe's formal written request to have the Secretary take lands in trust, the Assistant Secretary—Indian Affairs shall notify

the affected state and local governments of the proposal and shall inform them that they shall be given 30 days to provide written comment to the Assistant Secretary—Indian Affairs. If the acquisition is formally opposed by the state or local governments, or if the state and local governments raise concerns, then the tribe must consult with them and attempt to resolve any conflicts including, but not limited to, issues concerning taxation, zoning and jurisdiction. After the 30 day comment period for state and local governments has expired, and, if necessary, after the tribe has consulted with the state and local governments, the tribe may submit a written request statement describing its discussions with the state and local governments and requesting that the Assistant Secretary—Indian Affairs issue a final decision. The Assistant Secretary—Indian Affairs is then authorized to issue a final decision.

5. A new § 151.12 will be added to read as follows:

**§ 151.12   Considerations in evaluating requests when the land is located outside of and noncontiguous to an Indian reservation and will be used for gaming purposes.**

The Secretary shall consider the following criteria and requirements in evaluating requests for the acquisition of tribal land in trust status, when the land is located outside of and noncontiguous to the tribe's reservation:

(a) Criteria presented in paragraphs (a) through (c) and (e) through (h) of § 151.10;

(b) Criteria presented in paragraphs (a) through (e) of § 151.11;

(c) The request must be in compliance with section 20 of the Indian Gaming Regulatory Act (Pub. L. 100–497);

(d) When appropriate, the request must be reviewed by the National Indian Gaming Commission;

(e) The request must include an analysis by the tribe showing that it explored the feasibility of all reasonable alternatives (other than gaming) which would provide equivalent economic benefits from said property; and

(f) The request must provide that the tribe, in any gaming activities on the lands to be acquired, will withhold the appropriate portion of individual winnings from gaming activities for Federal taxes pursuant to Federal tax laws and the amount assessed by the National Indian Gaming Commission pursuant to Section 18 of the Indian Gaming Regulatory Act.

6. Newly redesignated Section 151.16 is amended by revising the first sentence to read as follows:

**§ 151.16   Information collection.**

The information collection requirements contained in §§ 151.9 through 151.15 have been approved by the Office of Management and Budget under 44 U.S.C. 3501 et seq. and assigned clearance number 1076–0100.

\* \* \* \* \*

Dated: July 8, 1991.

**Eddie F. Brown,**

*Assistant Secretary—Indian Affairs.*

[FR Doc. 91–16715 Filed 7–12–91; 8:45 am]

**BILLING CODE 4310-02-M**