(4310-02-P)

DEPARTMENT OF THE INTERIOR

Bureau of Indian Affairs

25 CFR Part 151

RIN 1076–AD90

Acquisition of Title to Land in Trust

AGENCY: Bureau of Indian Affairs, Interior

ACTION: Final Rule

SUMMARY: This rule revises and clarifies the procedures used by Indian tribes and individuals to request the Secretary of the Interior to acquire title to land into trust on their behalf. It describes the criteria that the Secretary will use in determining whether to exercise his or her authority to accept title to land to be held in trust for the benefit of Indian tribes and individuals. This rule also describes the procedure for mandatory acquisitions of title and establishes a process to address the difficulties encountered by Indian tribes which have no reservation, have no trust land or have trust land whose character makes it unsuitable for development.

EFFECTIVE DATE: [Insert date 30 days after publication in the Federal Register].

FOR FURTHER INFORMATION CONTACT: Questions concerning this rule should be directed to: Terry Virden, Director, Office of Trust Responsibilities, Mail Stop: 4513-MIB, 1849 C Street NW, Washington, D. C.  20240; telephone: 202-208-5831; electronic mail: TerryVirden@BIA.GOV

SUPPLEMENTARY INFORMATION: The regulation makes more clear the process that is followed by the Secretary in the exercise of this discretionary authority.  The regulation also

1

AR00528

makes clear that we will follow a process which reflects (1) a presumption in favor of the acquisition of trust title when an application involves title to lands located inside the boundaries of a reservation ("on-reservation lands"), and (2) a more demanding standard for the acquisition of title when the application involves title to lands located outside the boundaries of a reservation ("off-reservation lands"). The delineation of these differing processes will better enable the Secretary to carry out the responsibility for assisting Indian tribes in re-establishing jurisdiction over land located within their own reservations. It also creates a framework that more adequately addresses concerns non-Indian governments may have about the potential ramifications of placing off-reservation lands into trust.

This regulation also describes the procedure for mandatory acquisitions of title. The general statutory authority giving the Secretary discretion to acquire title to lands in trust is found in Section 5 of the Indian Reorganization Act (IRA) of 1934, 25 U.S.C. § 465. Occasionally, Congress enacts more narrow legislation granting the Secretary discretionary authority to acquire title to land into trust for some specific purpose. Acquisitions of trust title under the IRA and other more narrow statutes that grant discretionary authority to the Secretary are referred to as "discretionary acquisitions" of title. Mandatory acquisitions of title are those that Congress has directed the Secretary to complete by removing any discretion in the administrative decision making process. The processing of these mandated acquisitions has not always been well-understood. The rule identifies the types of acquisitions that we consider mandatory and defines the process by which we acquire the title.

Finally, this regulation establishes a process to address the unique difficulties encountered by Indian tribes which have no reservations, have no trust land or have trust land the character of

AR00529

which renders it incapable of being developed. The process enables such tribes to designate a "Tribal Land Acquisition Area" (TLAA) in which it plans to acquire land. The TLAA requires approval of the Secretary and, when approved, will enable the tribe to acquire title to the lands within the TLAA into trust under the on-reservation provision of this regulation for a prescribed period of time.

On April 12, 1999, the proposed rule for the acquisition of title to land in trust was published in the **Federal Register** (Vol. 64, No. 69, pages 17574-17588). The initial deadline for receipt of comments was July 12, 1999, but extensions to the comment period were granted to allow additional time for comments on the proposed rule. The comment period expired on December 29, 1999. Comments were received from a wide variety of Indian tribes and individuals, tribal groups, local and state governments and other interested groups and individuals. The development of this final rule making was achieved through formal consultation on the record with affected tribal governments. A panel discussion meeting with federal, state and local governments, Indian tribes and various organizations was held in Washington, D. C. in May, 1999. Panel members included persons from California Indian Lands Office, attorneys representing various tribal and municipal clients, Minority Staff Director and Counsel of House Resources Committee for Indian Affairs, Majority Staff Director of Senate Committee of Indian Affairs, two tribal chair persons, Deputy Attorney General of South Dakota and National Association of Convenience Stores. In addition, in accordance with the government-to-government relationship with Indian tribes, formal consultations were held throughout the United States during the comment period to explain and provide interested parties with an opportunity to understand and comment on the final rule. Five nationwide consultation

3

AR00530

meetings with Indian tribes and individuals were conducted during the comment period. These meetings were held in Albuquerque, New Mexico in May 1999; St. Paul, Minnesota in May 1999; Sacramento, California in June 1999; Mesa, Arizona in June 1999 and Portland, Oregon in August 1999. In total, comments were received from 342 Indian tribes, 335 individuals, 65 state and local governments, 9 congressional offices and 7 federal agencies. Tribal participation was also achieved by consultation with the National Congress of American Indians (NCAI) for its member tribes. NCAI established a working group to assist in the development of the comments on the proposed regulations.

This notice is published in exercise of the authority delegated by the Secretary of the Interior to the Assistant Secretary - Indian Affairs pursuant to Part 290, Chapter 8, of the Departmental Manual.

**Summary of Regulations and Comments Received**

The following narrative and discussion of comments is keyed to specific subparts of the rule.

*Subpart A--Purpose, Definitions, General*

**Summary of Subpart**

This subpart addresses the purpose and scope of the regulation and provides interpretation for the key terms of the regulation. Subpart A also addresses the types of transactions affecting this regulation, how to apply to have title to land placed in trust, how requests are processed, what occurs after a decision is made on a request, when title to land attains trust status and the taking of fractional interests of land into trust.

**Comments**

Comments were received regarding the implementation of the proposed regulation, with

4

AR00531

some comments requesting that the rule be withdrawn. The suggestion was not accepted because the Secretary must ensure that his authority over the acquisition of title to land into trust is implemented in an orderly and fair manner.

There were several comments concerning the definition of "reservation." One suggestion was that term the "reservation" should be defined the same as the statutory term "Indian country." Another suggestion was that the definition of "reservation" should remain the same as in the existing regulation. Other comments suggested that "reservation" include a provision for Pueblo grant lands, others suggested that it include hunting and fishing treaty areas. The comments were duly considered and accepted to clarify that Pueblo lands within the exterior boundaries of lands granted or confirmed to, or acquired by, the Pueblo as reported by the Pueblo Lands Board under section 2 of the Act of June 7, 1924, ch. 331, 43 Stat. 636, plus any other lands reserved, set aside, or held in trust by the United States for the use of the Pueblo or its members are reservation lands for purposes of this regulation. Also, the term "reservation" is clarified to include lands created by federal agreement, Secretarial proclamation or final judicial determination. Further, the term "reservation" is clarified to include lands established by Executive or Secretarial proclamation in the State of Oklahoma. These changes to the definition of reservation appear in §151.2 of the rule.

There were many comments suggesting that lands contiguous to a reservation should be treated as on-reservation acquisitions. To define contiguous lands as on-reservation lands would enable applicants to use the less burdensome process which reflects a presumption in favor of the acquisition of trust title to on-reservation lands. The comments were considered but rejected and the rule remains as proposed that land(s) contiguous to reservation land will be treated as

5

AR00532

off-reservation acquisitions for purposes of this regulation, although because of their proximity to an existing reservation, the tribe will receive more favorable consideration than if the lands were more remote.

There were several comments regarding the type of acquisition transactions covered by the regulation. Comments suggested that only those acquisitions of title from fee simple to trust or restricted fee to trust or exchanges involving fee simple to trust should be governed by this regulation. The proposed rule included trust to trust, restricted fee to restricted fee, restricted fee to trust and land exchange acquisitions. The comments have been accepted and the rule is amended in §151.3 to provide that the requirements of the rule only apply to conveyances from fee simple to trust, fee simple to restricted fee and land exchanges involving fee simple land. The rationale for excluding the other types of acquisitions from the regulation is that trust to trust and restricted fee to restricted fee, restricted fee to trust and land exchanges not involving fee land do not have an impact on the local governments because these lands are not already under their jurisdiction. We accepted the comments and have revised §151.3(b) of the regulation to exclude these transfers.

There were comments suggesting that the final rule should establish special treatment for government-to-government trust transfers, because these lands already are exempt from local taxation and jurisdiction and because the federal transfer process involves similar criteria as the Part 151 process, and requiring another regulatory review would be duplicative and burdensome. These comments were accepted and §151.3(b) has been amended to exempt federal agency transfers of title of land from one federal agency to the BIA or tribe.

There were numerous comments suggesting that a time frame should be established for

6

AR00533

issuance of a decision to accept title to land in trust. The comments were accepted and the rule amended to provide that the applicant will be notified when an application is complete. Once an applicant is notified that their application is complete, the BIA will issue a decision on the request within 120 working days. Subsection (e) has been added to §151.5 to reflect this change.

There were several comments seeking clarification regarding the treatment of applications that are pending when the regulation becomes final. The comments were considered and the regulation now provides a definition of "Complete application" in §151.2. A new subsection (f) is added to §151.5 that establishes the standard for a request to be considered a complete application. Applications that satisfy the definition of complete application at the time this rule becomes final, will be processed under the previous rule. If it is determined that an application is not complete at the time the rule becomes final, the application will be processed in accordance with the requirements of this rule.

There were several comments concerning the authority to take land into trust in Alaska. The preamble to the proposed rule addressed in some detail the question of whether to continue the bar in the existing regulations to the acquisition of trust title in land in Alaska (other than for the Metlakatla Indian Community or its members). See 64 Fed. Reg. 17577-78 (1999). As the discussion there indicated, the Department had earlier received, and invited public comment on (See 60 Fed. Reg. 1956(1995)), a petition by Native groups in Alaska which requested that the Department initiate a rulemaking to remove the prohibition in the regulations on taking Alaska land in trust. That discussion also noted that the Associate Solicitor for Indian Affairs had concluded, in a brief September 15, 1978 Opinion, that the Alaska Native Claims Settlement Act (ANSCA) precluded the Secretary from taking land into trust for Natives in Alaska (except for

AR00534

Metlakatla).

The Solicitor has considered the comments and legal arguments submitted by Alaska Native governments and groups and by the State of Alaska and two leaders of the Alaska State Legislature on whether the 1978 Opinion accurately states the law. The Solicitor has concluded that there is substantial doubt about the validity of the conclusion reached in the 1978 Opinion. Among other things, the Associate Solicitor found "significant" that in 1976 Congress repealed section 2 of the Indian Reorganization Act (IRA). That section had extended certain provisions of the IRA to Alaska, and had given the Secretary the authority to designate certain lands in Alaska as Indian reservations. See 43 U.S.C. § 704(a), 90 Stat. 2743, repealing 49 Stat. 1250, 25 U.S.C. § 496. The 1978 Opinion gave little weight to the fact that Congress has not repealed section 5 of the IRA, which is the generic authority by which the Secretary takes Indian land into trust, and which Congress expressly extended to Alaska in 1936. See 25 U.S.C. § 473a. The failure of Congress to repeal that section, when it was repealing others affecting Indian status in Alaska, five years after Congress enacted the Alaska Native Claims Settlement Act, raises a serious question as to whether the authority to take land in trust in Alaska still exists. Accordingly, the Solicitor has signed a brief memorandum rescinding the 1978 Opinion.

At the same time, the position of the Department has long been, as a matter of law and policy, that Alaska Native lands ought not to be taken in trust. Therefore, the Department has determined that the prohibition in the existing regulations on taking Alaska lands into trust (other than Metlakatla) ought to remain in place for a period of three years during which time the Department will consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust. If the Department

8

determines that the prohibition on taking lands into trust in Alaska should be lifted, notice and comment will be provided.

## Subpart B--Discretionary Acquisitions of Title On-Reservation

### Summary of Subpart

This Subpart describes the information that must be included in a request involving land located inside a reservation boundary or an approved TLAA. This subpart also establishes the criteria that will be used to evaluate requests for the acquisition of title to lands located inside the reservation or an approved TLAA. Further, this subpart defines the consent needed of the recognized governing body when an Indian tribe or individual acquires land inside another tribe's reservation or approved TLAA.

### Comments

One comment suggested that the regulation require applicants to address potential impacts to local governments when the land being acquired is located on-reservation. The comment was rejected because state and local governments already are invited to submit comments on a proposed acquisition and may address such impacts in their comments. One comment suggested that the final rule clarify the distinction between on-reservation and off-reservation land. We believe the regulation already clearly defines the terms of "reservation" and "TLAA" which are used for on-reservation acquisitions. There were a few comments concerning appropriate land use of a proposed acquisition. Comments suggested that the rule should require clarification of anticipated future uses after acquisition in trust, describe how appropriate use will be enforced and propose strict criteria for future uses of the land. These comments were rejected because the IRA allows Indian tribes to manage and control their lands in accordance with tribal

9

AR00536

policy. Therefore, the regulation provides that anticipated future uses are those identified that are reasonably foreseeable and achievable. There were a few comments suggesting that the regulation should allow acquisitions for cultural, religious, or ceremonial uses. The proposed regulation continues the existing practice of accepting applications for the acquisition of title to lands in trust for these purposes. There were comments suggesting that the Secretary more thoroughly consider the impact on the state and local governments by the taking of title to land into trust, loss of tax revenue, and that he resolve jurisdictional issues and impact to municipal and local services prior to deciding to take land into trust. The regulation provides state and local governments with the opportunity to comment on potential impacts of the proposed acquisition, and the Secretary may fully consider the potential impacts prior to making a decision to take title to land into trust.

There were numerous comments suggesting that the final rule should require objective standards for the Secretary to use in making decisions to take on-reservation land into trust. The comments were accepted and the regulation has been amended to provide clearer standards to evaluate on-reservation requests. Section §151.10 is amended to provide that once an application is complete, we will accept title to land into trust on-reservation or inside a TLAA if the application facilitates tribal self-determination, economic development, Indian housing, land consolidation or natural resource protection. We will deny applications to accept on-reservation lands in trust if the acquisition will result in severe negative impact to the environment or severe harm to the local government. Evidence of such harm must be clear and demonstrable and supported in the record.

There were several comments suggesting that the rule should encourage tribes to make

10

AR00537

payments in lieu of taxes. These comments were rejected. While it is the Department's policy to encourage tribes to work with local communities, the decision to consider in lieu contributions to the local governments is a matter for the tribe, not the United States. A few comments suggested that applicants not be required to provide an explanation or reason for the need for the trust acquisition. The comments stating that no documentation need be submitted were rejected because the information is needed by the Secretary in order to make an informed and supportable decision. Under the final rule, there is a presumption in favor of accepting land into trust for on-reservation acquisitions but the Secretary still requires basic information in order to make his determination. One comment suggested that the regulation should include an economic analysis of the intended use of the property. The comment was rejected because the Secretary must consider many factors in the decision making process, and the decision as to the economics of the tribal use of land is for the tribe to resolve, not the Secretary.

*Subpart C--Discretionary Acquisitions Off-Reservation*

**Summary of Subpart**

This subpart describes the information that must be included in an off-reservation request, that is, involving land located outside a reservation or TLAA. This subpart also sets forth the criteria that will be used to evaluate an off-reservation request. Further, this subpart establishes exceptions to the prohibition for individual Indians acquiring land that is located outside an individual Indian's reservation.

**Comments**

One comment suggested that the Department should recognize the benefits of off-reservation acquisitions. We agree. The Department has always, and continues to recognize

11

AR00538

such benefits. There were comments suggesting that the notification requirement as well as the public comment period be expanded. We believe the regulation provides adequate notification and comment periods. There were several comments suggesting that the regulation limit off-reservation acquisitions in a number of ways, such as treating disputed lands as off-reservation, limiting off-reservation acquisitions to former tribal lands, not allowing off-reservation trust acquisitions, securing Congressional approval for off-reservation acquisitions and creating a presumption against trust status for off-reservation lands. We believe these approaches are inconsistent with the Secretary's responsibilities under existing laws and the IRA. Affected parties are given the opportunity to comment on these proposed off-reservation acquisitions and such comments are thoughtfully considered in the decision-making process. There were numerous comments suggesting that the final rule should require objective standards for the Secretary to use in making decisions to take off-reservation land into trust. The comments were accepted and section 151.14 has been amended to provide clear standards to evaluate off-reservation requests. Once an application is complete, we will accept title to land in trust outside a reservation or outside an approved TLAA only if the application shows that the acquisition is necessary to facilitate tribal self-determination, economic development, Indian housing, land consolidation or natural resource protection and that meaningful benefits to the tribe outweigh any demonstrable harm to the local community. Furthermore, we will not accept title to land in trust outside a reservation or outside an approved TLAA if the acquisition would result in severe negative impacts to the environment or significant harm to the local community. Evidence of the harm must be clear and demonstrable and supported in the record.

*Subpart D--Mandatory Acquisitions of Title*

AR00539

**Summary of Subpart**

This subpart describes the information that is required to process a mandatory transfer of title to trust and how the request will be processed. Further, this subpart provides for an appeal of a determination that an acquisition is mandatory.

**Comments**

One comment suggested that the Department should treat an acquisition as mandatory only if Congress has mandated the Secretary to accept title to specific tracts of land. This comment was rejected because the Department cannot administratively limit Congress' authority to direct the Department to accept land into trust, and there clearly have been situations in which Congress has directed the Secretary to acquire land into trust, but does not specify clearly the parcel or parcels of land to be acquired. There were a few comments suggesting that the Secretary should view lands acquired under certain specific statutes as mandatory acquisitions. These comments were rejected as each mandatory acquisition must be reviewed on a case-by-case basis. Several comments were received that suggested that the term "mandatory" acquisition should be broadened to include "on-reservation" acquisitions, permit mandatory acquisition for the first 150,000 acres of land and make mandatory the acquisition of title to land in approved TLAAs. These suggestions were rejected since only Congress has the authority to mandate an acquisition and the Secretary cannot mandate acquisitions through these regulations. Each determination of whether an acquisition is mandatory or not must be made on a case-by-case basis, based on specific statutory direction provided by Congress.

One comment suggests that applicants should be permitted to file an appeal of a determination on whether or not an acquisition is mandatory. The comment is accepted and

13

AR00540

section §151.16 has been amended to reflect that denials or approvals of a determination that an acquisition is mandatory may be appealed under the provisions of part 2. One comment suggested that the appeal process outlined in 25 Code of Federal Regulations, Part 900 be used. This comment was rejected as Part 900 applies to contracts issued under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. 450, et. seq., and, thus, is inapplicable to the provisions of this rule.

There were a couple of comments suggesting that the Department of Justice title evidence standards should not apply to on-reservation gifts of lands, nor should the warranty deed requirement apply when tribes have purchased land through a quit claim deed and the title is accompanied by title insurance. These suggestions were rejected as the standards imposed by the Department of Justice must be met for the United States to acquire land into trust for a tribe or individual Indian.

*Subpart E--Tribal Land Acquisition Areas*

**Summary of Subpart**

The Subpart defines a TLAA, describes the information that must be included in a request for approval of a TLAA, describes how the request will be processed, identifies the criteria that will be used to evaluate requests and describes how to apply to modify an approved TLAA. This subpart also clarifies under what circumstances an Indian tribe can include in its TLAA land located inside another Indian tribe's reservation or TLAA. Further, this subpart establishes that an Indian tribe is not prohibited from acquiring land off-reservation if its request for a TLAA is denied. Lastly, this subpart clarifies that land acquired within an approved TLAA does not automatically attain reservation status.

14

AR00541

Federal policy has for many decades viewed the existence of a tribal land base as integral to the cultural, political, and economic well- being of Indian tribes. Because of the overwhelming importance of a tribal land base, this rule facilitates acquisitions by landless Indian tribes. The process to address these situations is the use of a TLAA. Upon approval of a TLAA by the Secretary, tribes will be able to benefit from the on-reservation acquisition provisions to create a homeland, and strive for tribal self-determination and economic self-sufficiency.

**Comments**

Several comments suggested that the final rule should be expanded to include not just reservation-less tribes but also Indian tribes which do not have trust land or which have a trust land base of which is incapable of being developed to create a homeland and strive for tribal self-determination and economic self-sufficiency. The comments were accepted and the definition of a TLAA at section 151.17 is amended to include Indian tribes that have no trust land or have trust land the character of which renders it incapable of being developed to take advantage of the TLAA. A new section 151.18 was added to make more clear what tribes are eligible to apply for a TLAA. One comment suggested that existing tribal consolidation areas approved pursuant to the current acquisition regulation should be grand-fathered and treated as a TLAA while another comment suggested that the rule should clarify whether or not tribes with existing approved tribal consolidation areas must reapply under the final rule for a TLAA. While this final rule eliminates the ability of tribes to obtain tribal consolidation areas as provided under the existing regulation, this rule provides an alternative mechanism in the form of a TLAA. Tribal consolidation areas approved under the existing regulation will remain in force and effect for the purposes for which they were approved, but such tribal consolidation areas are not deemed to

15

AR00542

constitute a TLAA under these regulations. In the event a tribe wants to amend or modify an existing approved tribal consolidation area to include the provisions of a TLAA, the proposed amendment or modification must be reviewed under the requirements of approval for a TLAA under the final rule. One comment suggested that TLAA receive congressional approval. We believe that the Secretary has the authority, and indeed the responsibility to prescribe procedures to fulfill the purposes of the IRA.

There were comments expressing the views that tribes should not be required to submit documentation that was different from that required for discretionary acquisitions; information documenting the history of the tribe, and information about the tribe; such as taxes, revenues and services; or other information that was viewed as impractical, unwarranted, or imposes a financial burden or is not readily available. We believe the information required under the final rule is reasonable, necessary, relevant to the decision making process and not burdensome upon the applicant as it may be readily obtained from existing sources. Further, the information is consistent with the kinds of information requested by applicants seeking off-reservation acquisitions. One comment suggested that the rule should clarify the requirements for notifying other governmental entities. We believe the rule provides sufficient notice requirements. One comment suggested that the 50-mile radius for notice be re-evaluated. The comment was rejected because the defined radius is considered a reasonable area that could be impacted by a trust acquisition and will provide sufficient notice to others.

There were a few comments concerning the 10 year term for an approved TLAA. The comments suggested that 10 years was an insufficient amount of time to acquire lands within the TLAA due the requirements for completing and securing approval to an acquisition. The

16

AR00543

comments were accepted and section 151.17 is amended to provide for a 25-year term for a TLAA.

There were several comments concerning the establishment of criteria or standards for evaluating requests for the approval of a TLAA. We believe that the regulation provides clear criteria for the Secretary to use in determining whether to approve a tribe's request for a TLAA. The criteria used for approving a TLAA is separate and distinct from the criteria and standards used to evaluate an on- or off-reservation acquisition request. Once a TLAA is approved by the Secretary, the on-reservation criteria will be used to determine whether to accept the title to land in trust. One comment suggested that a formal appeal process should be established when a request for a TLAA is denied. Section 151.6(a) sets out the process for the appeal of a decision under this part. One comment suggested that tribal trust land should be equivalent to reservation status. The comment was rejected because it was not within the scope of this rule and is governed by principles of Indian law. One comment suggested that the rule should clearly define a streamlined process for modification of approved tribal consolidation areas. The comment was rejected because the final rule establishes the criteria for the TLAA and eliminates the process to obtain a tribal consolidation area. Approved tribal consolidation areas, however, may form the basis for the development of a TLAA.

*Subpart F--False Statements, Record-Keeping, Information Collection*

**Summary of Subpart**

This Subpart describes the penalties for making false statements pertaining to a request. This subpart also describes the record keeping and reporting requirements under this part as well as the information collection requirements.

17

AR00544

Comments

One comment received suggested that Indian tribes should not be penalized for making false statements and another comment suggested the penalty for false statements should also apply to non-Indians. The first comment was rejected, and the second deemed already addressed because the False Statements Accountability Act of 1996 (18 U.S.C. 1001) applies to all statements submitted in connection with a trust title acquisition whether such statements are made by the applicant or interested parties. Section 151.27 was amended to clarify who owns the records associated with this part and a new Section 151.28 was added to clarify how records associated with this part will be preserved.

### Clarity of this regulation.

Executive Order 12866 requires each agency to write regulations that are easy to understand. This regulation has been written in a question and answer format, arranged in a manner to make it easier to follow, with technical language or jargon eliminated to make it is easier to understand.

### Regulatory Planning and Review (E.O. 12866)

In accordance with the criteria in Executive Order 12866, this rule is not a significant regulatory action and is not subject to review by the Office of Management and Budget.

(a) The amendments to this rule basically conform to the policies and practices that currently guide the Department's decision making on land into trust applications. The rule does not have an annual effect of $100 million or more on the economy. It does not adversely affect in a material way the economy, productivity, competition, jobs, the environment, public health or safety, or State, local, or tribal governments or communities. This rule simply identifies a

18

AR00545

"minimum standard" of criteria and requirements to be considered in the exercise of the Secretary's discretion to place lands in trust for individual Indians and tribes.

Looking at the overall picture of how much land we have taken into trust historically, the annual number of requests to place lands in trust has been small. Based on the BIA's Annual Report of Indian Lands for 1996, only 35 States have Indian lands, four of which have fewer than 1,000 acres of Indian lands. The 1996 report indicated that there were 6,941 total applications (fee-to-trust; trust-to-trust; restricted-to-restricted; restricted-to-trust) involving 212,000 acres cumulatively, i.e., the average amount of land involved in an application was only about 30 acres. Based on the annual caseload report for FY 1996, the total dollar amount Tribes and individual Indians paid for acquisitions of land in trust is $19,420,303.81. The trust-to-trust, restricted-fee-to-restricted fee, and restricted fee- to- trust land acquisitions do not impact local and state governments because these lands are not presently subject to state or local jurisdiction or taxation. Some States and local governments may have a decrease in revenues derived from taxes from the Secretary's determination to accept title to land in trust. However, the loss in annual revenues for State and local jurisdictions is only be a fraction of the value of the land involved. Moreover, some tribes may choose to offset this loss by making payments in lieu of taxes, or supplying services to the local communities. Finally, any losses or gains to State or local tax rolls would be spread over several states and many local governments. Thus, overall, the net changes in tax revenues due to this rule are minimal, and do not significantly affect State or local governments.

(b) This rule does not create a serious inconsistency or otherwise interfere with an action taken or planned by another Federal agency. Actions taken by this rule affect tribal or individual

19

AR00546

Indian land titles. The Department of the Interior, Bureau of Indian Affairs is the only governmental agency that makes the determination whether to take land into trust.

(c) This rule does not alter the budgetary effects or entitlement, grants, user fees, or loan programs or the rights or obligations of their recipients. This rule sets out the criteria and procedures the Secretary uses in determining whether to accept title of certain Indian lands to the United States, as trustee, for the benefit of an individual Indian or a tribe.

(d) OMB has determined that this rule does not raise novel legal or policy issues and is therefore not subject to review under E.O. 12866.

**Regulatory Flexibility Act**

The Department of the Interior certifies that this regulation does not have a significant economic effect on a substantial number of small entities under the Regulatory Flexibility Act (5 U.S.C. 601 et seq.). A Regulatory Flexibility analysis is not required. See our initial analysis above item 1(a) under Regulatory Planning and Review. The effect on small entities is minimal.

**Small Business Regulatory Enforcement Fairness Act (SBREFA)**

This rule is not a major rule under 5 U.S.C. 804(2), the Small Business Regulatory Enforcement Fairness Act. See the initial analysis above, item 1(a) under Regulatory Planning and Review. This rule:

(a) Does not have an annual effect on the economy of $100 million or more. An economic analysis is not required.

(b) Does not cause a major increase in costs or prices for consumers, individual industries, Federal, State, or local government agencies, or geographic regions. Actions under this rule only affect title to tribal or individual Indian owned lands.

20

AR00547

(c) Does not have significant adverse effects on competition, employment, investment, productivity, innovation, or the ability of U.S.-based enterprises to compete with foreign-based enterprises. Actions under this rule only affect title to tribal or individual Indian owned lands.

## Unfunded Mandates Reform Act

In accordance with the Unfunded Mandates Reform Act (2 U.S.C. 1531 et seq.):

(a) The rule does not significantly or uniquely affect small governments, or the private sector. A Small Government Agency Plan is not required. Additional expenses may be incurred by the requesting tribe or individual Indian to provide information to the Secretary. Tribes or an individual Indian provide information in order to receive a benefit.

(b) This rule does not produce a federal mandate of a $100 million or greater in any year. The overall effect of this rule is likely not to be significant to the State, local, or tribal governments or the private sector.

## Takings (E.O. 12630)

With respect to Executive Order 12630, the rule does not have significant takings implications. A takings implication assessment is not required because actions under this rule do not constitute a taking. Tribes or individual Indians are voluntarily transferring title to the United States for their own benefit.

## Federalism (E.O. 13123)

With respect to Executive Order 13123, the rule does not have significant federalism implications to warrant the preparation of a Federalism Assessment. The local tax base may be affected. Actions in this rule apply only to a relatively small amount of land. Due to the loss of tax revenue, the relationship between the State and local governments with tribes and/or the

21

AR00548

Federal Government may be affected. However, the loss of revenue overall is likely to be minimal and the vast majority of the land to be acquired will likely be within the boundaries of reservations where there is already a measure of Indian sovereignty. Therefore, the effects are "insignificant" within the meaning of E. O. 13123.

## Civil Justice Reform (E.O. 12988)

With respect to Executive Order 12988, the Office of the Solicitor has determined that this rule does not unduly burden the judicial system and meets the requirements of sections 3(a) and 3(b)(2) of the Order. This rule contains no drafting errors or ambiguity and is written to minimize litigation, provides clear standards, simplifies procedures, reduces burden, and is clearly written. These regulations do not preempt any statute. They do supersede the current land acquisition regulations and the current procedure for establishing Indian Land Consolidation Areas. They would not be retroactive with respect to any land already taken into trust, but would apply to applications that are determined not be complete at the time of final publication of this rule.

## Paperwork Reduction Act

This regulation requires an information collection from ten or more parties and a submission under the Paperwork Reduction Act (44 U.S.C. 3501 et seq.). The information collection requirements in §§ 151.9; 151.12, 151.15, 151.19, and 151.28 under 44 U.S.C. 3501 et seq. were submitted to the Office of Management and Budget (OMB) for approval and were assigned OMB control number 1076-xxxx. This information is required from Indian tribes and individual Indians who wish to convey land into trust status.

Information is collected from Indian tribes and individuals to support their request to the

22

AR00549

Secretary to acquire title to land in trust for their benefit. The Secretary uses the information to evaluate the request and forms the basis of a decision to accept or deny a request for the taking of title to land in trust.

The total average annual burden hours for the collection of information for the above specified sections of the regulation is broken down as follows.

| Citation 25 CFR 151 | Information | Average number of hours | Average number per year | Annual burden hours |
|---|---|---|---|---|
| 151.9 for on-reservation | Applicant must submit:<br>(a) Copy of authority<br>(b) Explanation of need<br>(c) Explanation of ownership status (tribe)<br>(d) Explanation of ownership status (individual)<br>(e) Title evidence | 16 | 850 | 13,600 |
| | (f) Documentation for NEPA - tribe and individual | 40 | 120 | 4,800 |
| | (f) Documentation for NEPA - tiering | 20 | 200 | 4,000 |
| 151.12 for off-reservation acquisitions | Applicant must submit:<br>(a) Copy of authority<br>(b) Explanation of need<br>(c) Description of proposed use<br>(d) Description of location of land<br>(e) Description of effect on state & political subdivisions<br>(f) Description of jurisdictional issues<br>(g) Title evidence | 56 | 150 | 8,400 |
| | (h) Documentation for NEPA - tribe provides documentation | 40 | 150 | 6,000 |
| 151.15 for Mandatory acquisitions | Applicant must submit:<br>(a) Copy of authority<br>(b) Title evidence<br>(c) Additional information upon request | .5 | 69 | 35 |

AR00550

| 151.19 for Tribal Land Acquisition Areas (TLAA) | Applicant must submit: (a) Copy of authority (b) Copy of tribal documents to establish TLAA (c) Summary of purposes and goals (d) Summary of tribe's history (e) Description of TLAA (f) Location of rights of way (g) Description of effect on state and political subdivisions (h) Description of jurisdictional and land use issues | 96 | 325 | 31,200 |
| --- | --- | --- | --- | --- |

We invite the public to provide any comments concerning the accuracy of the burden estimate and any suggestions for reducing the burden. Submit comments to the Bureau of Indian Affairs, Director, Office of Trust Responsibilities, 1849 C Street, NW, MS-4513-MIB, Washington, DC 20240.

The collection of information is voluntary in order for an Indian tribe or individual to obtain a benefit, acquiring title to land in trust. None of the solicited information is confidential. However, if the applicant submits an application that contains financial information, it is covered by the Privacy Act.

A federal agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

**National Environmental Policy Act**

This rule does not constitute a major Federal action significantly affecting the quality of the human environment. A detailed statement under the National Environmental Policy Act of 1969 is not required because this rule is of an administrative, technical, and procedural nature.

**Government-to-Government Relationship with Tribes**

In accordance with the President's memorandum of May 14, 1998, "Consultation and

24

AR00551

Coordination with Indian Tribal Governments" (FR Vol. 63, No. 96, Pages 27655-27657) and 512 DM 2, we evaluated any potential effects upon Federally recognized Indian tribes and have determined that there are no potential adverse effects. No action is taken under this rule unless a tribe or an individual Indian voluntarily requests that the United States place land in trust for their benefit. Tribes were asked for comments prior to publication as a final regulation of this rule and their comments were considered prior to publication.

## PART 151 - Acquisition of Title to Land in Trust

### Subpart A - Purpose, Definitions, General

Sec.

151.1    What is the purpose of this part?

151.2    How are key terms defined in this part?

151.3    To what types of transactions does this part apply?

151.4    How does an individual Indian or a tribe apply to have title to land conveyed to the United States in trust?

151.5    How does BIA process a request?

151.6    How does BIA proceed after making a decision on a request?

151.7    When does the land attain trust status?

151.8    Will BIA accept and hold in trust an undivided fractional interest in land for an individual Indian or a tribe?

### Subpart B - Discretionary Acquisitions of Title On-Reservation

151.9    What information must be provided in a request involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

25

AR00552

151.10   What criteria will BIA use to evaluate a request involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

151.11   Can an individual Indian or a tribe acquire land inside a reservation or inside an approved Tribal Land Acquisition Area of another tribe?

### Subpart C - Discretionary Acquisitions of Title Off-Reservation

151.12   What information must be provided in a request involving land outside a reservation or outside a Tribal Land Acquisition Area?

151.13   Can an individual Indian acquire land outside his or her own reservation?

151.14   What criteria will BIA use to evaluate a request involving land outside a reservation or outside an approved Tribal Land Acquisition Area?

### Subpart D - Mandatory Acquisitions of Title

151.15   What information must be provided in a request to process a mandatory transfer of title into trust status, and how will BIA process the request?

151.16   Can our determination that a transfer of title into trust status is mandatory be appealed?

### Subpart E - Tribal Land Acquisition Areas

151.17   What is a Tribal Land Acquisition Area?

151.18   What tribes are eligible to apply for approval of a Tribal Land Acquisition Area?

151.19   What must be included in a request for Secretarial approval of a Tribal Land Acquisition Area?

151.20   How is a tribal request for Secretarial approval processed?

151.21   What criteria will BIA use to decide whether to approve a proposed Tribal Land Acquisition Area?

26

AR00553

151.22    Can a tribe include in its Tribal Land Acquisition Area land inside another tribe's

reservation or Tribal Land Acquisition Area?

151.23    If a Tribal Land Acquisition Area is not approved, is the tribe prohibited from acquiring

land within it?

151.24    If a Tribal Land Acquisition Area is approved, does the land taken into trust within it

attain reservation status?

151.25    Can a Tribal Land Acquisition Area be modified after approval?

### Subpart F - False Statements, Record-keeping, Information Collection

151.26    What is the penalty for making false statements in connection with a request that BIA

place land in trust?

151.27    Who owns the records associated with this part?

151.28    How must a record associated with this part be preserved?

AUTHORITY: R.S. 161: 5 U.S.C. 301. Interpret or apply 46 Stat. 1106, as amended; 46 Stat.

1471, as amended; 48 Stat. 985, as amended; 49 Stat. 1967, as amended, 53 Stat. 1129; 63 Stat.

605; 69 Stat. 392, as amended; 70 Stat. 290, as amended; 70 Stat. 626; 75 Stat. 505; 77 Stat. 349;

78 Stat. 389; 78 Stat. 747; 82 Stat. 174, as amended; 82 Stat. 884; 84 Stat. 120; 84 Stat. 1874; 86

Stat. 216; 86 Stat. 530; 86 Stat. 744; 88 Stat. 78; 88 Stat. 81; 88 Stat. 1716; 88 Stat. 2203; 88

Stat. 2207; 18 U.S.C. 1001; 25 U.S.C. 2, 9, 409a, 450h, 451, 464, 465, 467, 487, 488, 489, 501,

502, 573, 574, 576, 608, 608a, 610, 610a, 622, 624, 640d-10, 1466, 1495, and other authorizing

acts.

### Subpart A - Purpose, Definitions, General

## § 151.1 What is the purpose of this part?

27

AR00554

The purpose of this part is to describe the authorities, policies, and procedures that we use to decide whether to accept title to land in the name of the United States to be held in trust for the benefit of an individual Indian or a tribe.

§ 151.2 How are key terms defined in this part?

*Alienation* means a conveyance or transfer of title to property.

*Bureau* means the Bureau of Indian Affairs within the Department of the Interior.

*Complete Application* means an application that contains all the documentation, analysis and information required by section 151.5(f).

*Discretionary acquisitions of title* means those acquisitions of trust title which Congress has authorized, but not required us to accept administratively.

*Encumbrance* means a limitation on the title of property, such as a claim, lien, easement, charge, or restriction of any kind.

*Fee simple land* means land held absolute and clear of any condition or restriction, and where the owner has unconditional power of disposition.

*Governing tribe* means the tribe having governmental jurisdiction over the land being acquired.

*Individual Indian* means a person who:

      (1) Is a member of a federally recognized tribe; or

      (2) Was physically residing on a federally recognized Indian reservation as of June 1, 1934, and is a descendant of an enrolled member of a federally recognized tribe; or

      (3) Possesses a total of one-half degree or more Indian blood of a federally recognized tribe.

*Land* means real property or any title interest therein, as defined by the statute that authorizes the

28

AR00555

land acquisition.

*Legislative transfer of title* means the direct transfer of title to land into trust status for the benefit of an individual Indian or Indian tribe by Congress through legislation. The regulations in this part do not apply to legislative transfers of title.

*Mandatory acceptance of title* means a conveyance of trust title which Congress has required the Secretary to accept if certain specified conditions over which the Secretary has no control are met.

*Reservation* means, for purposes of this part, that area of land which has been set aside or which has been acknowledged as having been set aside by the United States for the use of the tribe, the exterior boundaries of which are more particularly defined in a final treaty, federal agreement, Executive or Secretarial Order, Executive or Secretarial Proclamation, United States patent, federal statute or final judicial or administrative determination, provided that:

(1) in the State of Oklahoma, "reservation" means that area of land constituting the former reservation of the tribe. "Former reservation" means lands that are within the jurisdictional area of an Oklahoma Indian tribe and are within the boundaries of the last reservation established by final treaty, federal agreement, Executive or Secretarial Order, Executive or Secretarial Proclamation, United States patent, federal statute or final judicial or administrative determination; and

(2) for Pueblo Indian tribes in the State of New Mexico, "reservation" means lands within the exterior boundaries of lands granted or confirmed to or acquired by the Pueblo as reported by the Pueblo Lands Board under section 2 of the Act of June 7, 1924, ch. 331, 43 Stat. 636, notwithstanding any finding of extinguishment of title, plus any other lands reserved, set aside, or

29

AR00556

held in trust by the United States for the use of the Pueblo or its members.

*Restricted fee land*  means land the title to which is held by an individual Indian or a tribe and which can only be alienated or encumbered by the owner with the approval of the Secretary because of limitations in the conveyance instrument pursuant to federal law.

*Secretary*  means the Secretary of the Interior or an authorized representative.

*Tribal Land Acquisition Area (TLAA)*  means an area of land approved by the Secretary and designated by a tribe that (1) does not have a reservation; or (2) does not have trust land; or (3) has a trust land base which is incapable of being developed in a manner that promotes tribal self-determination, economic development and Indian housing, and within which the tribe plans to acquire land over a specified period of time.

*Tribe*  means any Indian tribe, nation, band, pueblo, town, community, rancheria, colony, or other group of Indians, which is recognized by the Secretary as eligible for the special programs and services provided by the Bureau of Indian Affairs, and listed in the Federal Register under Pub. L. 103-454, Act of Nov. 2, 1994 (108 Stat. 4791; 25 U.S.C. 479a (1994)).

*Trust land*  means land, or an interest therein, for which the United States holds fee title in trust for the benefit of an individual Indian or a tribe.

*Undivided fractional interest* means an interest of co-owners which is in the entire property, that is not divided out from the whole parcel. (Example: If you own 1/4 interest in 160 acres, you do not own 40 acres. You own 1/4 interest in the whole 160 acres because your 1/4 interest has not been divided out from the whole 160 acres.)

*We/Us/Our* means the Secretary of the Interior or an authorized representative.

§ 151.3 <u>To what types of transactions does this part apply?</u>

30

(a) Except as provided in paragraphs (b) and (c) of this section, this part applies to all fee simple land-to-trust, fee simple land-to-restricted fee or land exchanges involving fee simple land.

(b) This part does not apply to the following transactions:

(1) Trust-to-trust

(2) Restricted-fee to restricted-fee

(3) Transfer of title to trust and restricted land through inheritance, devise or escheat

(4) Legislative transfer of title into trust status; or

(5) Federal agency transfers of title

(c) We will not accept title to land in trust in the State of Alaska, except for the Metlakatla Indian Community of the Annette Island reserve of Alaska or its members.

§ 151.4 How does an individual Indian or a tribe apply to have title to land conveyed to the United States in trust?

Individual Indians and tribes must send us a written request asking that we accept title and place the land into trust.

(a) The request must:

(1) Identify the applicant (including the applicant's tribal affiliation);

(2) Include the legal description of the land to be acquired; and

(3) Include all information which shows that the proposed acquisition meets the applicable requirements in this regulation.

(b) The request does not need to be in any special form. However, we strongly urge the applicant to address each section of this part that is relevant to the type of acquisition (e.g., on- or

31

AR00558

off-reservation, discretionary or mandatory), in the order it appears here. Constructing the request in this way will enable us to review the request more efficiently.

(c) We may also ask for additional information to aid us in reaching a decision.

§ 151.5 How does BIA process the request?

(a) After we receive the request, we will notify the State, county, and municipal governments having regulatory jurisdiction over the land. We will send all notices under this section by certified mail, return receipt requested. The notice will contain the information described in paragraph (a)(1) or (a)(2) of this section, as appropriate.

(1) If the request is for on-reservation lands or lands inside an approved TLAA, the notice we send under this section will:

(i) Include the name of the applicant;

(ii) Describe the lands proposed to be taken in trust;

(iii) State the proposed use of the land; and

(iv) Invite the State and local governments from the State in which the land is located to comment in writing within 30 days from date of receipt of the notice on the proposed acquisition.

(2) If the request is for land outside a reservation and outside a TLAA, the notice we send under this section will:

(i) Include the name of the applicant;

(ii) Describe the lands proposed to be taken in trust;

(iii) Describe the proposed use of the land; and

(iv) Invite the State and local governments from the State in which the land is located to

32

AR00559

comment in writing within 60 days from the date of receipt of notice on the acquisition's potential effects on the State and local governments, including on their regulatory jurisdiction, real property taxes, and special assessments.

(b) After the comment period has ended, we will send to the applicant copies of any comments made by State and local governments on the applicant's request. We will give the applicant a reasonable time in which to reply to the comments.

(c) Subject to restrictions on disclosure required by the Freedom of Information Act (5 U.S.C. 552), the Privacy Act (5 U.S.C. 552a), and the Trade Secrets Act (18 U.S.C. 1905) the request will be available for review at the local BIA agency or area office having administrative jurisdiction over the land.

(d) We will consider all the documentation that the applicant submits.

(e) A complete application consists of the following:

(1) The applicant's request that the land be taken into trust, as follows:

(i)     If the applicant is an Indian tribe, the written request must be a properly prepared and executed tribal resolution requesting trust status, or .

(ii)    If the applicant is an individual Indian, the written request must be a signed letter requesting trust status.

(2)    Documentation that the applicant has addressed all the applicable information requirements in this section;

(3)    A map depicting the location of the land to be acquired, and either

(i)     A legal description of the land, including a statement of the estate being acquired, e.g. all surface and mineral rights, surface rights only, surface rights and a portion

33

AR00560

of the mineral rights, etc., or

(ii)  A survey if the land cannot be described by an aliquot legal description.  The survey must be completed by a land surveyor registered in the state in which the land is located when the land being acquired is fee simple land,

(4)  Hazardous Level I Survey,

(5)  Environmental Documentation,

(6)  Title evidence,

(7)  Impact notification letters, including all associated responses,

(8)  Statement from the applicant that any existing rights of way, easements or encumbrances will *not interfere with applicant's intended use* of the land, and

(9)  Any additional information we have requested, in writing, if warranted by the specific application.

(f)  After BIA is in possession of a complete application, we will:

(1)  Notify the applicant, in writing, that the application is complete,

(2)  Issue a decision on an application within 120 working days after issuance of the notice of a complete application.

## § 151.6 How does BIA proceed after making a decision on the request?

(a) Within 120 days of our having a complete application package, we will send the applicant a certified letter describing our decision to accept or deny a request.  We will also send a copy of the decision letter to everyone (including State and local governments) who sent us written comments on the request. The notice to interested parties will explain that they have a right to appeal our decision under part 2 of this title.

34

AR00561

(b) If our decision is to deny the request, we will take no further action.

(c) If our decision is to approve the request, after the exhaustion of administrative remedies, we will:

(1) Complete a preliminary title examination. For both discretionary and mandatory acquisitions, after we examine the title evidence, we will notify the applicant of any liens, encumbrances, or infirmities. If the liens, encumbrances, or infirmities make title to the land unmarketable, we will require the applicant to eliminate the liens, encumbrances, or infirmities before we act on the application.

(2) Publish in the Federal Register, or in a newspaper of general circulation serving the affected area, a notice of the decision to take land into trust under this part. The notice will state that we have made a final decision to take land in trust and that we will accept title in the name of the United States no sooner than 30 days after the notice is published;

(3) Respond to any judicial appeals that may be filed; and

(4) After sufficient opportunity for judicial relief has been provided, accept trust title to the land by issuing or approving an appropriate instrument of conveyance. If we determine to accept trust title to land in a case before all judicial remedies have been exhausted, we will give the party/parties opposing the acquisition at least five days notice before we take any action.

## § 151.7 When does land attain trust status?

After the Secretary has published a notice of intent to take the land into trust pursuant to § 151.6 (c)(2), the time period for appeal has run, and all title objections have been cleared, we will approve or issue the appropriate instrument of conveyance. Only after these steps have been completed will the land attain trust status. The approved deed will then be recorded in the county

35

AR00562

where located, title evidence will be updated, a final title opinion will be issued and the deed will be recorded in the appropriate Bureau of Indian Affairs Land Titles and Records Office under part 150 of this chapter.

§ 151.8 <u>Will we accept and hold in trust an undivided fractional interest in land for an individual Indian or a tribe?</u>

We will not accept and hold in trust for an individual Indian or a tribe an undivided fractional interest in land, except under one of the following conditions:

(a) The individual Indian or tribe already owns an undivided fractional restricted or trust interest in the land, and is acquiring the additional interest(s) to consolidate ownership.

(b) The individual Indian or tribe acquires the undivided fractional interest as the result of a gift under § 152.25(d) of this chapter and the conveyance does not result in further fractionation of interest in the land.

(c) The individual Indian or tribe is acquiring fee simple interest and there are existing undivided fractional trust or restricted interests in the same land.

(d) The individual Indian or tribe offers and agrees to purchase the remaining undivided fractional trust or restricted interest in the land, at not less than fair market value.

(e) A specific statute grants the individual Indian or tribe the right to purchase an undivided fractional interest in trust or restricted land without offering to purchase all interests.

(f) The owner(s) of a majority of the interests of the remaining undivided trust or restricted fractional interest agree in writing that the individual Indian or tribe may acquire the interest.

(g) A tribe acquires an undivided fractional interest in trust or restricted land under the

AR00563

Indian Land Consolidation Act, 25 U.S.C. 2201 et seq., under one of the following conditions:

(1) The land is inside the tribe's reservation, or inside an approved Tribal Land Consolidation Area, or is otherwise subject to the tribe's jurisdiction, and

(2) The tribe acquires the land:

(i) At not less than the fair market value; and

(ii) With the written consent of a majority of the owners of the remaining undivided fractional trust or restricted interest of this land;

(h) The tribe acquires, at not less than the fair market value, part or all of the undivided fractional interests in a parcel of trust or restricted land within the tribe's reservation, or subject to the tribe's jurisdiction and:

(1) Over 50 percent of the owners of the undivided fractional interests consent in writing to the acquisition; or

(2) An individual Indian makes an offer under paragraph (e) of this section;

(i) An individual Indian:

(1) Already owns an undivided fractional interest in the land;

(2) Offers to match a tribal offer to purchase under paragraph (d) of this section; and

(3) Has used and possessed the land for at least 3 years preceding the tribe's offer to purchase.

## Subpart Part B - Discretionary Acquisitions of Title On-Reservation

### § 151.9 What information must be provided in a request involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

A request from an individual Indian or a tribe asking that the United States accept title

37

AR00564

to land inside a reservation boundary or to land inside an approved TLAA must include:

(a) A complete description, or a copy, of the federal statute that authorizes the United States to accept the land in trust and any limitations contained in the authority.

(b) An explanation of why the individual Indian or tribe needs land to be in trust and how the land will be used.

(c) If the applicant is a tribe, an explanation of whether the tribe:

(1) Already owns an undivided fractional trust or restricted interest in the land; and

(2) Maintains jurisdiction over the land.

(d) If the applicant is an individual Indian, an explanation of:

(1) Whether the applicant already owns an undivided fractional trust or restricted interest in the land;

(2) The amount of land that the applicant already owns and the status of the land (fee, restricted, or trust); and

(3) Whether the applicant needs assistance in handling real estate affairs. For example, tell us if the applicant is a minor or has been declared legally incompetent.

(e) Title insurance or an abstract of title that meets the <u>Standards for the Preparation of Title Evidence in Land Acquisitions by the United States</u>, issued by the U. S. Department of Justice.

(f) Documentation that we need to comply with 516 DM 6, Appendix 4, National Environmental Policy Act (NEPA) Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations. (For copies of these directives, write to the Department of Interior, Bureau of Indian Affairs, 1849 C Street, N.W., Mail Stop: 4513-MIB,

38

AR00565

Washington, D. C. 20240). Include a record of consultation with appropriate authorities

regarding environmental, endangered species, water quality, fish and wildlife, wetlands,

transportation, air quality, cultural, historical value, hazardous waste, and toxic material issues.

§ 151. 10 <u>What criteria will BIA use to evaluate requests involving land inside a reservation</u>

<u>or inside an approved Tribal Land Acquisition Area?</u>

Upon receipt of the information required under §151.9 and upon a determination that

the application is complete;

(a) We will approve the application and accept title to land in trust inside a reservation

or inside an approved TLAA if we determine that the application facilitates tribal self-

determination, economic development, Indian housing, land consolidation or natural resources

protection; except that

(b) Notwithstanding a determination in paragraph (a) of this section, we may not

approve the application and accept transfer of title into trust for land inside a reservation or inside

an approved TLAA if the approval of the acquisition will result in severe negative impact to the

environment or severe harm to the local government.  Evidence of such harm must be clear and

demonstrable and supported in the record.

§ 151.11 <u>Can an individual Indian or a tribe acquire land inside a reservation or inside an</u>

<u>approved Tribal Land Acquisition Area of another tribe?</u>

An individual Indian or a tribe, including individual Indians and tribes in Oklahoma,

may acquire land in trust on another tribe's reservation, or inside another tribe's approved TLAA,

if the recognized tribe's governing body consents in writing.   No consent is required if:

(a) An individual Indian or tribe already owns an undivided fractional trust or restricted

39

AR00566

interest in the parcel of land to be acquired; or

(b) The proposed acquisition is inside a reservation or an approved TLAA that is shared by two or more tribes, and the acquisition is for one of these tribes, or one of these tribes' members.

## Subpart C - Discretionary Acquisitions Off-Reservation

### § 151.12 What information must be provided in a request involving land outside a reservation or outside a Tribal Land Acquisition Area?

A request from an individual Indian or a tribe asking that the United States accept title to land outside a reservation boundary and outside an approved TLAA, must include:

(a) A complete description, or a copy of, the statutory authority that authorizes the United States to accept land in trust and any limitations contained in the authority;

(b) An explanation of the need of the individual Indian or tribe for land in trust and how the land will be used. This explanation is a crucial factor in determining if the request should be approved. The request must explain:

(1) Why the present land base is not appropriate or adequate for the activity contemplated in the request;

(2) Why the applicant needs the land to be in trust for the proposed use; and

(3) How trust status will benefit the applicant's economic and/or social conditions.

(c) A description of how the applicant will use the land. This description must include an explanation of:

(1) The past uses of the land;

(2) The present use of the land;

40

AR00567

(3) The anticipated future uses of the land;

(4) The cultural or historical interest in the land;

(5) The objectives that the individual Indian or tribe hopes to attain; and

(6) If the acquisition is for housing:

(i) The projected number of units to be built; and

(ii) The number of members who will benefit.

(7) If the applicant is acquiring the land for business purposes, the tribe must provide a business plan that specifies the anticipated economic benefits of the proposed use.

(d) As complete a description as is possible of the following:

(1) The location of the land relative to State boundaries;

(2) The distance of the land from the boundaries of the tribe's reservation;

(3) The distance of the land from the Bureau's nearest agency or area office;

(4) The location of roads and rights-of-way that provide access to the land; and

(5) The location of land in relation to the tribe's other trust lands.

(e) A description of the effect on the State and its political subdivisions of removing the land from tax rolls. Describe any measures the applicant will take to reduce these effects. The description of effects must include an explanation of:

(1) The amount of annual taxes currently assessed by the local government(s);

(2) The amount of annual revenue lost from special assessments to the local government(s), if any;

(3) The amount of annual revenue lost from mineral receipts to the local government(s), if any; and

41

AR00568

(4) The local government's ability to provide public safety services for the land.

(f) A description of any jurisdictional and land use infrastructure issues that might arise. The description must address each of the following issues.

(1) Zoning, including:

(i) The current zoning of the land;

(ii) Any proposed use conflicts with current zoning; and

(iii) Any tribal zoning ordinances.

(2) Law enforcement and cross-deputizing, including:

(i) Who currently provides law enforcement services for the land;

(ii) If the applicant is a tribe, whether the tribe already has its own law enforcement;

(iii) Who will supply law enforcement if the land is approved for trust status; and

(iv) Any additional resources required to provide adequate law enforcement and how they will be funded.

(3) Safety factors, including:

(i) Who supplies fire protection service for the land;

(ii) Who supplies emergency medical service for the land; and

(iii) Whether the land is in a flood area or flood control area.

(4) Traffic, roads, and streets, including:

(i) A description of existing access to the land;

(ii) Description and quantification of increased traffic in the area anticipated from the proposed use; and

(iii) A description of whether existing roads and streets are adequate to handle any

42

AR00569

anticipated increase in traffic caused by the proposed use.

(5) Sanitation, including whether:

(i) The land is served by a city sewage system;

(ii) The land is served by an some other type of sewage system that is adequate to meet applicable standards;

(iii)Trash pickup service or another method of trash disposal is available for the land;

(iv) The city or another facility supplies services to the land;

(v) There is an adequate water supply for the proposed use and any future anticipated uses; and

(vi) Whether the applicant tribe has water rights to the available water supply.

(6) Utilities, including:

(i) Whether a city or a rural electric company supplies electricity to the land; and

(ii) The source of heating for any structures located on or to be located on the land, such as: natural gas, propane, oil, coal, wood, electric, or solar.

(7) Whether there are any cooperative agreements or voluntary actions intended to address jurisdictional and land use conflicts.

(8) Whether the applicant has made any provisions to compensate the State or local governments for revenue lost because of the removal of the land from the tax rolls. (Include any increases in Title IX funding from the Indian Education Act or Impact Aid funding.)

(g) Whether there is title evidence that meets the <u>Standards for the Preparation of Title Evidence in Land Acquisitions by the United States</u>, issued by the U. S. Department of Justice. The evidence will be examined to determine if the applicant has marketable title.

43

AR00570

(h) The documentation that we need to comply with 516 DM 6, Appendix 4, National Environmental Policy Act (NEPA) Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations. (For copies of these directives, write to the Department of Interior, Bureau of Indian Affairs, 1849 C Street, NW, Mail Stop: 4513-MIB, Washington, D. C. 20240). Include a record of consultation with appropriate authorities regarding environmental, endangered species, water quality, fish and wildlife, wetlands, transportation, air quality, cultural, historical value, hazardous waste, and toxic material issues.

(i) If the request is for an individual Indian, documentation demonstrating that the applicant's request meets one of the criteria described in § 151.13.

§ 151.13 <u>Can an individual Indian acquire land outside his or her own reservation?</u>

Except as provided in paragraphs (a) and (b) of this section, we will not accept title to land in trust outside an individual Indian's reservation. We may approve acquisitions of land outside an individual Indian's reservation if:

(a) The individual Indian already owns an undivided fractional trust or restricted interest in the property being acquired; or

(b) The individual Indian has sold trust or restricted interest in land and the money received from the sale is reinvested in other land selected and purchased with these funds, or the individual Indian is purchasing land with funds obtained as a result of a sale of trust or restricted land under 25 U.S.C. 409a.

§ 151.14 <u>What criteria will BIA use to evaluate a request involving land outside a reservation or outside an approved Tribal Land Acquisition Area?</u>

Upon receipt of the information required under § 151.12 and upon a determination that

44

AR00571

the application is complete:

(a)   We will approve the application to accept land into trust outside a reservation or outside an approved TLAA only if the application shows that the acquisition is necessary to:

(1) Facilitate tribal self-determination, economic development, Indian housing, land consolidation or natural resource protection; and

(2) We determine that the acquisition provides meaningful benefits to the Tribe that outweigh any demonstrable harm to the local community.

(b) Notwithstanding a determination in paragraph (a) of this section that the acquisition is necessary to facilitate tribal self-determination and that the benefits of the acquisition to the tribe outweigh any harm to the local community, we may disapprove an application to accept land into trust outside a reservation or outside an approved TLAA if the acquisition will result in:

(1) Severe negative impacts to the environment, or

(2) Significant harm to the local community.  Evidence of such harm must be clear and demonstrable and supported in the application record; or

(3) The inability of the Bureau of Indian Affairs to adequately handle the additional law enforcement and other responsibilities that would result from the acquisition of the land into trust status.

(c) When making a determination under paragraphs (a) or (b) of this section to approve or deny an application, we will consider the location of the land relative to the state boundaries, and its distance from the boundaries of the tribe's reservation and whether that distance is reasonable based on the following:

(1) If the land is in a different state than the tribe's reservation, the tribe's justification

45

AR00572

of anticipated benefits from the acquisition will be subject to greater scrutiny

      (2) As the distance between the tribe's reservation or approved TLAA and the land to be acquired increases, the tribe's justification of anticipated benefits from the acquisition will be subject to greater scrutiny

      (3) As the distance between the tribe's reservation or approved TLAA and the land to be acquired increases, the concerns raised by the state and local governments will be given greater weight.

Subpart D - Mandatory Acceptance of Title

**§ 151.15 What information must be provided in a request to process a mandatory transfer of title into trust status, and how will BIA process the request?**

      (a) To help us determine whether we are mandated by legislation to accept trust title to a specific tract of land, we require submission of the following documentation:

      (1) A complete description, or a copy of, the statutory authority that directs the Secretary to place the land in trust, and any limitations contained in that authority;

      (2) Title insurance or an abstract of title that meets the Standards for the Preparation of Title Evidence in Land Acquisitions by the United States, issued by the U. S. Department of Justice; and

      (3) Any additional information that we may request.

      (b) If we determine that the transfer of title into trust status is mandatory, we will publish that determination along with a notice of intent to take the land in trust in the Federal Register or in a newspaper of general circulation serving the affected area.

**§ 151.16 Can our determination that a transfer of title into trust status is mandatory be**

46

AR00573

appealed?

The Department's determination that a transfer of title into trust status is or is not mandatory may be appealed according to requirements set forth in part 2 of this title.

## Subpart E - Tribal Land Acquisition Areas

### § 151.17 What is a Tribal Land Acquisition Area?

A TLAA is an area of land approved by the Secretary and designated by a tribe within which the tribe plans to acquire land over a 25-year period of time. If the Secretary approves the TLAA under this part, the tribe can acquire parcels of land within the TLAA during that 25-year period under the on-reservation provisions of this part.

### § 151.18 What Tribes Are Eligible to Apply for Approval of a Tribal Land Acquisition Area?

Tribes which may apply for approval of a TLAA are those tribes which:

(a)    Do not have a reservation,

(b)    Do not have trust land, or

(c)    Have a trust land base which is incapable of being developed in a manner that promotes tribal self-determination, economic development and/or Indian housing.

### § 151. 19 What must be included in a request for Secretarial approval of a Tribal Land Acquisition Area?

A request for Secretarial approval of a TLAA must be made in writing, although we do not require that it take any special form. However, we strongly urge the applicant to address each applicable section of this part in the order it appears here. Constructing the application in this way will help us review the request more efficiently. To be complete, a request for Secretarial

47

AR00574

approval of a TLAA must identify the applicant tribe, and must include:

(a) A complete description, or a copy, of the federal statute(s) that authorize the Secretary to accept land in trust on behalf of the tribe, and any limitations contained in that authority.

(b) Copies of tribal documents relating to the establishment of the TLAA and the acquisition of land within it, including:

(1) A copy of the tribe's constitution and by-laws, corporate charter, resolution, or excerpts from those documents that identify and grant tribal officials the authority to acquire tribal lands on behalf of the tribe;

(2) A copy of a tribal resolution designating the TLAA, including a legal description of the lands located within it; and

(3) A copy of a tribal resolution requesting that the Secretary approve the proposed TLAA.

(c) A narrative summary that describes the purposes and goals for acquiring lands in trust within the TLAA, including general information about whether the lands are to be used for residential, governmental, educational, economic development, or other purposes.

(d) A narrative of the tribe's history that explains:

(1) When the tribe was federally recognized, and whether it was through legislation, treaty, or the Bureau of Indian Affairs' Federal Acknowledgment Process; and

(2) If applicable, how the tribe became dispossessed of its former reservation lands.

(e) A description of the TLAA, including:

(1) A legal description of the lands within the TLAA;

48

AR00575

(2) Information about whether the lands are within the tribe's former reservation or aboriginal homelands;

(3) Information about whether the lands are Federal lands, State lands, or private lands;

(4) Information about whether the lands overlap with another tribe's jurisdictional area;

(5) Information about the significance of the land to the tribe, including whether the land has any particular historical, cultural, religious, or other value to the tribe; and

(6) Information about the distance of the TLAA from the Bureau's nearest agency or area office.

(f) A description of the location of roads and rights-of-way, or of additional rights-of-way that may be needed to provide access to lands located within the TLAA.

(g) A description of the reasonably anticipated overall effect on the State and its political subdivisions of removing lands located within the TLAA from tax rolls, and a description of any measures the applicant will take to reduce these effects. The description of effects must include an explanation of:

(1) The amount of annual taxes currently assessed by the local governments for lands located within the TLAA;

(2) The amount of annual revenue which would be lost from special assessments to the local governments, if any;

(3) The amount of annual revenue lost from mineral receipts to the local governments, if any; and

(4) The local governments' ability to provide public safety services for lands located within the TLAA.

49

AR00576

(h) A description of any overall jurisdictional and land use infrastructure issues that might arise if the lands within the TLAA is taken into trust. The description must address each of the following issues.

(1) Zoning, including:

(i) The current zoning of the land;

(ii) Any proposed use conflicts with current zoning; and

(iii) Applicable tribal zoning ordinances.

(2) Law enforcement and cross-deputizing, including:

(i) Who currently provides law enforcement services for the land;

(ii) Whether the tribe already has its own law enforcement;

(iii) Who will supply law enforcement if the land is approved for trust status; and

(iv) Whether additional resources would be needed to provide adequate law enforcement.

(3) Safety factors, including:

(i) Who supplies fire protection service for lands located within the TLAA.;

(ii) Who supplies emergency medical service for lands located within the TLAA; and

(iii) Information about whether lands located within the TLAA are in a flood area or flood control area.

(4) Traffic, roads, and streets, including:

(i) A description of current access to the land;

(ii) Describes and quantifies anticipated increased traffic in the area from proposed use; and

50

AR00577

(iii) A description of whether existing roads and streets are adequate to handle any anticipated increase in traffic caused by the proposed use.

(5) Sanitation, including whether:

(i) The lands located within the TLAA are on a city sewage system;

(ii) The lands located within the TLAA are served by an adequate sewage system that meets applicable standards;

(iii) Trash pickup service or another method of trash disposal is available for lands located within the TLAA;

(iv) The city or another facility supplies sanitation services to the lands located within the Tribe Land Acquisition Area;

(v) There is an adequate water supply for the proposed use and any future anticipated uses; and

(vi) Whether the tribe has water rights to the available water supply.

(6) Utilities, including:

(i) Whether a city or a rural electric company supplies electricity to lands located within the TLAA; and

(ii) The source of heating for lands located within the TLAA, such as: natural gas, propane, oil, coal, wood, electric, or solar.

(7) Whether there exist any cooperative agreements or voluntary actions intended to address jurisdictional and land use conflicts.

(8) Whether the tribe has made any provisions to compensate the State and local governments for revenue lost because of the removal of the lands from the tax rolls. (Include any

51

AR00578

increases in Title IX funding from the Indian Education Act or Impact Aid funding.)

## § 151.20  How is a tribal request for Secretarial approval processed?

When we receive a request for Secretarial approval of a TLAA, we will review the supporting documentation to determine if the request meets the requirements of this part. If the request is complete, we will:

(a) Provide notice of the request for Secretarial approval to the Governor's Office, to appropriate local government officials, and to appropriate officials of tribes located within a 50-mile radius of the boundaries of the proposed TLAA. Recipients of the notice will be provided 60 days from the date of receipt in which to comment on the proposed TLAA and the request supporting it. Other interested parties may also submit comments during the 60-day consultation period.

(b) After the close of the comment period, based on the criteria described in § 151.21, we will decide whether to approve the TLAA. Our decision on whether to approve the TLAA will be communicated in the form of a certified letter to the applicant. We also will provide notice of our decision to interested parties by sending a copy of the decision letter to everyone (including State and local governments) who sent us written comments on the request for approval.

(c) If we decide not to approve the TLAA, we will take no further action.

(d) If we decide to approve the TLAA, we will:

(1) Publish in the Federal Register, or in a newspaper of general circulation serving the affected area, a notice of the decision to approve the TLAA; and

(2) Thereafter, for a period of 25 years, review requests to accept trust title land located

52

AR00579

within the TLAA as "on-reservation" acquisitions under the applicable on-reservation provisions in this part.

## § 151. 21 What criteria will BIA use to decide whether to approve a proposed Tribal Land Acquisition Area?

In general, because tribes without reservations are significantly disadvantaged, both in terms of cultural preservation and in terms of being ineligible for federal land-based programmatic funding and technical assistance, there is a presumption in favor of the tribe's need for at least some trust land. However, in determining whether to approve establishment of a TLAA, we will consider the individual circumstances of each applicant tribe, surrounding community, and affected land base. There are some standard criteria which will help direct our decision-making process. These standard criteria include:

(a) The request must be complete and contain all supporting documents;

(b) The statutory basis upon which the tribe proposes creation of the TLAA. If the tribe is the subject of a statute directing the Secretary to take some unspecified land into trust for the tribe's benefit, the tribe will enjoy a greater presumption in favor of approval of its proposed TLAA. (For example, there is statutory language such as "the Secretary shall take land into trust within the tribe's service area," or "the Secretary shall take land into trust within X and Y counties.")

(c) The size of the proposed TLAA in relation to the size of the tribe's membership: we will look for a reasonable connection between the amount of land the tribe wishes to take into trust, and the basic trust needs (housing, health, employment opportunities) of the tribe's membership.

AR00580

(d) The relationship of the tribe to the lands located within the TLAA: we will give greater weight to a request for approval of a TLAA that encompasses lands to which the tribe has established a strong cultural, historical, and/or legal connection.

(e) The ability of the tribe and the local non-Indian community to adjust to the jurisdictional changes that will occur if the lands within the TLAA are taken into trust, including:

(1) That there are adequate arrangements for provision of police and fire protection and other emergency response for persons living within the TLAA (whether living on trust or non-trust property);

(2) That there are adequate arrangements for provision of other municipal-type services, such as garbage removal, water, sewage;

(3) That adverse impacts on local governments and communities are reasonable compared to the benefits flowing to the applicant.

## § 151.22 Can a tribe include in its Tribal Land Acquisition Area land inside another tribe's reservation or Tribal Land Acquisition Area?

A tribe may include land inside the reservation boundaries or within an approved TLAA of another tribe, if:

(a) The tribe's governing body consents in writing;

(b) The tribe already owns undivided fractional trust or restricted interests in the tracts of land identified in its TLAA; or

(c) The tracts of land to be included in the TLAA are inside a reservation or an approved TLAA that is shared by two or more tribes, and the plan is for one of these tribes.

## § 151. 23 If a Tribal Land Acquisition Area is not approved, is the tribe prohibited from

54

acquiring land within it?

No.  However, the tribe will have to apply to have individual parcels taken into trust under the off-reservation provisions of this part.

§151. 24  If a Tribal Land Acquisition Area is approved, does the land taken into trust within it attain reservation status?

No.  Lands taken into trust within a TLAA will enjoy "Indian country" status as that term has been defined in relevant federal statutes and case law.  However, those lands do not attain "reservation" status by virtue of the TLAA having been approved by the Secretary. Reservation status can only be attained if:

(a) The tribe has applied to the Secretary under 25 U.S.C. 467; or

(b) There is a federal statute specifically designating the land as a reservation.

§ 151.25  Can a Tribal Land Acquisition Area be modified after approval?

Yes.  However, the changes must be submitted with a request for approval in compliance with the criteria in this part and must be approved by the Secretary.

Subpart F - False Statements, Record-keeping, Information Collection

§ 151.26 What is the penalty for making false statements in connection with a request that BIA place land into trust?

Anyone who knowingly and willfully makes a false statement in connection with a trust title acquisition request may be subject to criminal prosecution under the False Statements Accountability Act of 1996, 18 U.S.C. 1001.

§ 151.27 Who owns the records associated with this part?

(a) Records are the property of the United States if they:

55

AR00582

(1) Are made or received by a tribe or tribal organization in the conduct of a federal trust function under this part, including the operation of a trust program; and

(2) Evidence the organization, functions, policies, decisions, procedures, operations, or other activities undertaken in the performance of a federal trust function under this part.

(b) Records not covered by paragraph (a) of this section that are made or received by a tribe or tribal organization in the conduct of business with the Department of the Interior under this part are the property of the tribe.

### §151.28 How must a record associated with this part be preserved?

(a) Any organization, including tribes and tribal organizations, that have records identified in §151.26(a) must preserve the records in accordance with approved Departmental records retention procedures under the Federal Records Act, 44 U.S.C. Chapters 29, 31 and 33. These records and related records management practices and safeguards required under the Federal Records Act are subject to inspection by the Secretary and the Archivist of the United States.

(b) A tribe or tribal organization should preserve the records identified in §151.26(b) for the period of time authorized by the Archivist of the United States for similar Department of the Interior records in accordance with 44 U.S.C. Chapter 33. If a tribe or tribal organization does not preserve records associated with its conduct of business with the Department of the Interior under this part, it may prevent the tribe or tribal organization from being able to adequately document essential transactions or furnish information necessary to protect its legal and financial rights or those of persons directly affected by its activities.

AR00583

December 29, 2000

Kevin Gover

Dated:

Assistant Secretary - Indian Affairs

57

AR00584

*66 FR 3452, \**

FEDERAL REGISTER

Vol. 66, No. 10

Rules and Regulations

DEPARTMENT OF THE INTERIOR

Assistant Secretary for Indian /

Bureau of Indian Affairs (BI.

**25 CFR Part 151**

**RIN 1076-AD90**

**Acquisition of Title to Land in**

66 FR 3452

**DATE:** Tuesday, January 16, 2001

**ACTION:** Final rule.

------------------------------------------------------------------
To view the next page, type .np* TRANSMIT.
To view a specific page, transmit p* and the page number, e
------------------------------------------------------------------

 **[\*3452]**

**SUMMARY:** This rule revises and clarifies the procedures use
to request the Secretary of the Interior to acquire title to lan(
describes the criteria that the Secretary will use in determinii
authority to accept title to land to be held in trust for the ber
individuals. This rule also describes the procedure for manda
establishes a process to address the difficulties encountered I
reservation, have no trust land or have trust land the characi
of being developed.

**DATES:** Effective February 15, 2001.

**FOR FURTHER INFORMATION CONTACT:** Questions conce
to: Terry Virden, Director, Office of Trust Responsibilities, Ma
NW., Washington, DC 20240; telephone: 202-208-5831; ele(
TerryVirden@BIA.GOV.

AR00585

*66 FR 3452, **

FEDERAL REGISTER

Vol. 66, No. 10

Rules and Regulations

DEPARTMENT OF THE INTERIOR (DOI)

Assistant Secretary for Indian Affairs

Bureau of Indian Affairs (BIA)

**25 CFR Part 151**

**RIN 1076-AD90**

**Acquisition of Title to Land in Trust**

66 FR 3452

**DATE:** Tuesday, January 16, 2001


**ACTION:** Final rule.

--------------------------------------------------------------------------
To view the next page, type .np* TRANSMIT.
To view a specific page, transmit p* and the page number, e.g. p*1
--------------------------------------------------------------------------

**[\*3452]**

**SUMMARY:** This rule revises and clarifies the procedures used by Indian tribes and individuals to request the Secretary of the Interior to acquire title to land into trust on their behalf. It describes the criteria that the Secretary will use in determining whether to exercise his or her authority to accept title to land to be held in trust for the benefit of Indian tribes and individuals. This rule also describes the procedure for mandatory acquisitions of title and establishes a process to address the difficulties encountered by Indian tribes which have no reservation, have no trust land or have trust land the character of which renders it incapable of being developed.


**DATES:** Effective February 15, 2001.


**FOR FURTHER INFORMATION CONTACT:** Questions concerning this rule should be directed to: Terry Virden, Director, Office of Trust Responsibilities, Mail Stop: 4513-MIB, 1849 C Street NW., Washington, DC 20240; telephone: 202-208-5831; electronic mail: TerryVirden@BIA.GOV.

AR00586

**SUPPLEMENTARY INFORMATION:** The regulation makes more clear the process that is followed by the Secretary in the exercise of this discretionary authority. The regulation also makes clear that we will follow a process which reflects (1) a presumption in favor of the acquisition of trust title when an application involves title to lands located inside the boundaries of a reservation ("on-reservation lands"), and (2) a more demanding standard for the acquisition of title when the application involves title to lands located outside the boundaries of a reservation ("off-reservation lands"). The delineation of these differing processes will better enable the Secretary to carry out the responsibility for assisting Indian tribes in re-establishing jurisdiction over land located within their own reservations. It also creates a framework that more adequately addresses concerns non-Indian governments may have about the potential ramifications of placing off-reservation lands into trust.

This regulation also describes the procedure for mandatory acquisitions of title. The general statutory authority giving the Secretary discretion to acquire title to lands in trust is found in section 5 of the Indian Reorganization Act (IRA) of 1934, 25 U.S.C. 465. Occasionally, Congress enacts more narrow legislation granting the Secretary discretionary authority to acquire title to land into trust for some specific purpose. Acquisitions of trust title under the IRA and other more narrow statutes that grant discretionary authority to the Secretary are referred to as "discretionary acquisitions" of title. Mandatory acquisitions of title are those that Congress has directed the Secretary to complete by removing any discretion in the administrative decision making process. The processing of these mandated acquisitions has not always been well-understood. The rule identifies the types of acquisitions that we consider mandatory and defines the process by which we acquire the title.

Finally, this regulation establishes a process to address the unique difficulties encountered by Indian tribes which have no reservations, have no trust land or have trust land the character of which renders it incapable of being developed. The process enables such tribes to designate a "Tribal Land Acquisition Area" (TLAA) in which it plans to acquire land. The TLAA requires approval of the Secretary and, when approved, will enable the tribe to acquire title to the lands within the TLAA into trust under the on-reservation provision of this regulation for a prescribed period of time.

On April 12, 1999, the proposed rule for the acquisition of title to land in trust was published in the **Federal [*3453] Register** (Vol. 64, No. 69, pages 17574-17588). The initial deadline for receipt of comments was July 12, 1999, but extensions to the comment period were granted to allow additional time for comments on the proposed rule. The comment period expired on December 29, 1999. Comments were received from a wide variety of Indian tribes and individuals, tribal groups, local and state governments and other interested groups and individuals. The development of this final rule making was achieved through formal consultation on the record with affected tribal governments. A panel discussion meeting with federal, state and local governments, Indian tribes and various organizations was held in Washington, DC in May, 1999. Panel members included persons from California Indian Lands Office, attorneys representing various tribal and municipal clients, Minority Staff Director and Counsel of House Resources Committee for Indian Affairs, Majority Staff Director of Senate Committee on Indian Affairs, two tribal chairpersons, Deputy Attorney General of South Dakota and National Association of Convenience Stores. In addition, in accordance with the government-to-government relationship with Indian tribes, formal consultations were held throughout the United States during the comment period to explain and provide interested parties with an opportunity to understand and comment on the final rule. Five nationwide consultation meetings with Indian tribes and individuals were conducted during the comment period. These meetings were held in Albuquerque, New Mexico in May 1999; St. Paul, Minnesota in May 1999; Sacramento, California in June 1999; Mesa, Arizona in June 1999 and Portland, Oregon in August 1999. In total, comments were received from 342 Indian tribes, 335 individuals, 65 state and local governments, 9 congressional offices and 7 federal agencies. Tribal participation was also achieved by consultation with the National Congress of American Indians (NCAI) for its member tribes. NCAI established a working group to assist in the development of the comments on the proposed regulations.

AR00587

This notice is published in exercise of the authority delegated by the Secretary of the Interior to the Assistant Secretary-Indian Affairs pursuant to Part 290, Chapter 8, of the Departmental Manual.

## Summary of Regulations and Comments Received

The following narrative and discussion of comments is keyed to specific subparts of the rule.

### Subpart A--Purpose, Definitions, General

*Summary of Subpart*

This subpart addresses the purpose and scope of the regulation and provides interpretation for the key terms of the regulation. Subpart A also addresses the types of transactions affecting this regulation, how to apply to have title to land placed in trust, how requests are processed, what occurs after a decision is made on a request, when title to land attains trust status and the taking of fractional interests of land into trust.

*Comments*

Comments were received regarding the implementation of the proposed regulation, with some comments requesting that the rule be withdrawn. The suggestion was not accepted because the Secretary must ensure that his authority over the acquisition of title to land into trust is implemented in an orderly and fair manner.

There were several comments concerning the definition of "reservation." One suggestion was that term the "reservation" should be defined the same as the statutory term "Indian country." Another suggestion was that the definition of "reservation" should remain the same as in the existing regulation. Other comments suggested that "reservation" include a provision for Pueblo grant lands, others suggested that it include hunting and fishing treaty areas. The comments were duly considered and accepted to clarify that Pueblo lands within the exterior boundaries of lands granted or confirmed to, or acquired by, the Pueblo as reported by the Pueblo Lands Board under section 2 of the Act of June 7, 1924, ch. 331, 43 Stat. 636, plus any other lands reserved, set aside, or held in trust by the United States for the use of the Pueblo or its members are reservation lands for purposes of this regulation. Also, the term "reservation" is clarified to include lands created by federal agreement, Secretarial proclamation or final judicial determination. Further, the term "reservation" is clarified to include lands established by Executive or Secretarial proclamation in the State of Oklahoma. These changes to the definition of reservation appear in § 151.2 of the rule.

There were many comments suggesting that lands contiguous to a reservation should be treated as on-reservation acquisitions. To define contiguous lands as on-reservation lands would enable applicants to use the less burdensome process which reflects a presumption in favor of the acquisition of trust title to on-reservation lands. The comments were considered but rejected and the rule remains as proposed that land(s) contiguous to reservation land will be treated as off-reservation acquisitions for purposes of this regulation, although because of their proximity to an existing reservation, the tribe will receive more favorable consideration than if the lands were more remote.

There were several comments regarding the type of acquisition transactions covered by the regulation. Comments suggested that only those acquisitions of title from fee simple to trust or restricted fee to trust or exchanges involving fee simple to trust should be governed by this regulation. The proposed rule included trust to trust, restricted fee to restricted fee, restricted fee to trust and land exchange acquisitions. The comments have been accepted and the rule is amended in § 151.3 to provide that the requirements of the rule only apply to conveyances from fee simple to trust, fee simple to restricted fee and land exchanges involving fee simple

AR00588

land. The rationale for excluding the other types of acquisitions from the regulation is that trust to trust and restricted fee to restricted fee, restricted fee to trust and land exchanges not involving fee land do not have an impact on the local governments because these lands are not already under their jurisdiction. We accepted the comments and have revised § 151.3(b) of the regulation to exclude these transfers.

There were comments suggesting that the final rule should establish special treatment for government-to-government trust transfers, because these lands already are exempt from local taxation and jurisdiction and because the federal transfer process involves similar criteria as the Part 151 process, and requiring another regulatory review would be duplicative and burdensome. These comments were accepted and § 151.3(b) has been amended to exempt federal agency transfers of title of land from one federal agency to the BIA or tribe.

There were numerous comments suggesting that a time frame should be established for issuance of a decision to accept title to land in trust. The comments were accepted and the rule amended to provide that the applicant will be notified when an application is **[*3454]** complete. Once an applicant is notified that their application is complete, the BIA will issue a decision on the request within 120 working days. Subsection (f) has been added to § 151.5 to reflect this change.

There were several comments seeking clarification regarding the treatment of applications that are pending when the regulation becomes final. The comments were considered and the regulation now provides a definition of "Complete application" in § 151.2. A new subsection (e) is added to § 151.5 that establishes the standard for a request to be considered a complete application. Applications that satisfy the definition of complete application at the time this rule becomes final, will be processed under the previous rule. If it is determined that an application is not complete at the time the rule becomes final, the application will be processed in accordance with the requirements of this rule.

There were several comments concerning the authority to take land into trust in Alaska. The preamble to the proposed rule addressed in some detail the question of whether to continue the bar in the existing regulations to the acquisition of trust title in land in Alaska (other than for the Metlakatla Indian Community or its members). See 64 FR 17577-78 (1999). As the discussion there had indicated, the Department had earlier received, and invited public comment on (See 60 FR 1956(1995)), a petition by Native groups in Alaska which requested that the Department initiate a rulemaking to remove the prohibition in the regulations on taking Alaska land in trust. That discussion also noted that the Associate Solicitor for Indian Affairs had concluded, in a brief September 15, 1978 Opinion, that the Alaska Native Claims Settlement Act (ANSCA) precluded the Secretary from taking land into trust for Natives in Alaska (except for Metlakatla).

The Solicitor has considered the comments and legal arguments submitted by Alaska Native governments and groups and by the State of Alaska and two leaders of the Alaska State Legislature on whether the 1978 Opinion accurately states the law. The Solicitor has concluded that there is substantial doubt about the validity of the conclusion reached in the 1978 Opinion. Among other things, the Associate Solicitor found "significant" that in 1976 Congress repealed section 2 of the Indian Reorganization Act (IRA). That section had extended certain provisions of the IRA to Alaska, and had given the Secretary the authority to designate certain lands in Alaska as Indian reservations. See 43 U.S.C. 704(a), 90 Stat. 2743, repealing 49 Stat. 1250, 25 U.S.C. 496. The 1978 Opinion gave little weight to the fact that Congress has not repealed section 5 of the IRA, which is the generic authority by which the Secretary takes Indian land into trust, and which Congress expressly extended to Alaska in 1936. See 25 U.S.C. 473a. The failure of Congress to repeal that section, when it was repealing others affecting Indian status in Alaska, five years after Congress enacted the Alaska Native Claims Settlement Act, raises a serious question as to whether the authority to take land in trust in Alaska still exists. Accordingly, the Solicitor has signed a brief memorandum rescinding the 1978 Opinion.

AR00589

Case 1:06-cv-01405-RWR    Document 21-14    Filed 02/08/2008    Page 63 of 65

At the same time, the position of the Department has long been, as a matter of law and policy, that Alaska Native lands ought not to be taken in trust. Therefore, the Department has determined that the prohibition in the existing regulations on taking Alaska lands into trust (other than Metlakatla) ought to remain in place for a period of three years during which time the Department will consider the legal and policy issues involved in determining whether the Department ought to remove the prohibition on taking Alaska lands into trust. If the Department determines that the prohibition on taking lands into trust in Alaska should be lifted, notice and comment will be provided.

## Subpart B--Discretionary Acquisitions of Title On-Reservation

*Summary of Subpart*

This subpart describes the information that must be included in a request involving land located inside a reservation boundary or an approved TLAA. This subpart also establishes the criteria that will be used to evaluate requests for the acquisition of title to lands located inside the reservation or an approved TLAA. Further, this subpart defines the consent needed of the recognized governing body when an Indian tribe or individual acquires land inside another tribe's reservation or approved TLAA.

*Comments*

One comment suggested that the regulation require applicants to address potential impacts to local governments when the land being acquired is located on-reservation. The comment was rejected because state and local governments already are invited to submit comments on a proposed acquisition and may address such impacts in their comments. One comment suggested that the final rule clarify the distinction between on-reservation and off-reservation land. We believe the regulation already clearly defines the terms of "reservation" and "TLAA" which are used for on-reservation acquisitions. There were a few comments concerning appropriate land use of a proposed acquisition. Comments suggested that the rule should require clarification of anticipated future uses after acquisition in trust, describe how appropriate use will be enforced and propose strict criteria for future uses of the land. These comments were rejected because the IRA allows Indian tribes to manage and control their lands in accordance with tribal policy. Therefore, the regulation provides that anticipated future uses are those identified that are reasonably foreseeable and achievable. There were a few comments suggesting that the regulation should allow acquisitions for cultural, religious, or ceremonial uses. The proposed regulation continues the existing practice of accepting applications for the acquisition of title to lands in trust for these purposes. There were comments suggesting that the Secretary more thoroughly consider the impact on the state and local governments by the taking of title to land into trust, loss of tax revenue, and that he resolve jurisdictional issues and impact to municipal and local services prior to deciding to take land into trust. The regulation provides state and local governments with the opportunity to comment on potential impacts of the proposed acquisition, and the Secretary may fully consider the potential impacts prior to making a decision to take title to land into trust.

There were numerous comments suggesting that the final rule should require objective standards for the Secretary to use in making decisions to take on-reservation land into trust. The comments were accepted and the regulation has been amended to provide clearer standards to evaluate on-reservation requests. Section 151.10 is amended to provide that once an application is complete, we will accept title to land into trust on-reservation or inside a TLAA if the application facilitates tribal self-determination, economic development, Indian housing, land consolidation or natural resource protection. We will deny applications to accept on-reservation lands in trust if the acquisition will result in severe negative impact to the environment or severe harm to the local government. Evidence of such harm must be clear **[*3455]** and demonstrable and supported in the record.

AR00590

There were several comments suggesting that the rule should encourage tribes to make payments in lieu of taxes. These comments were rejected. While it is the Department's policy to encourage tribes to work with local communities, the decision to consider in lieu contributions to the local governments is a matter for the tribe, not the United States. A few comments suggested that applicants not be required to provide an explanation or reason for the need for the trust acquisition. The comments stating that no documentation need be submitted were rejected because the information is needed by the Secretary in order to make an informed and supportable decision. Under the final rule, there is a presumption in favor of accepting land into trust for on-reservation acquisitions but the Secretary still requires basic information in order to make his determination. One comment suggested that the regulation should include an economic analysis of the intended use of the property. The comment was rejected because the Secretary must consider many factors in the decision making process, and the decision as to the economics of the tribal use of land is for the tribe to resolve, not the Secretary.

## Subpart C--Discretionary Acquisitions Off-Reservation

*Summary of Subpart*

This subpart describes the information that must be included in an off-reservation request, that is, involving land located outside a reservation or TLAA. This subpart also sets forth the criteria that will be used to evaluate an off-reservation request. Further, this subpart establishes exceptions to the prohibition for individual Indians acquiring land that is located *outside an individual Indian's reservation.*

*Comments*

One comment suggested that the Department should recognize the benefits of off-reservation acquisitions. We agree. The Department has always, and continues to recognize such benefits. There were comments suggesting that the notification requirement as well as the public comment period be expanded. We believe the regulation provides adequate notification and comment periods. There were several comments suggesting that the regulation limit off-reservation acquisitions in a number of ways, such as treating disputed lands as off-reservation, limiting off-reservation acquisitions to former tribal lands, not allowing off-reservation trust acquisitions, securing Congressional approval for off-reservation acquisitions and creating a presumption against trust status for off-reservation lands. We believe these approaches are inconsistent with the Secretary's responsibilities under existing laws and the IRA. Affected parties are given the opportunity to comment on these proposed off-reservation acquisitions and such comments are thoughtfully considered in the decision-making process. There were numerous comments suggesting that the final rule should require objective standards for the Secretary to use in making decisions to take off-reservation land into trust. The comments were accepted and § 151.14 has been amended to provide clear standards to evaluate off-reservation requests. Once an application is complete, we will accept title to land in trust outside a reservation or outside an approved reservation only if the application shows that the acquisition is necessary to facilitate tribal self-determination, economic development, Indian housing, land consolidation or natural resource protection and that meaningful benefits to the tribe outweigh any demonstrable harm to the local community. Furthermore, we will not accept title to land in trust outside a reservation or outside an approved TLAA if the acquisition would result in severe negative impacts to the environment or significant harm to the local community. Evidence of the harm must be clear and demonstrable and supported in the record.

## Subpart D--Mandatory Acquisitions of Title

*Summary of Subpart*

This subpart describes the information that is required to process a mandatory transfer of title

to trust and how the request will be processed. Further, this subpart provides for an appeal of a determination that an acquisition is mandatory.

*Comments*

One comment suggested that the Department should treat an acquisition as mandatory only if Congress has mandated the Secretary to accept title to specific tracts of land. This comment was rejected because the Department cannot administratively limit Congress' authority to direct the Department to accept land into trust, and there clearly have been situations in which Congress has directed the Secretary to acquire land into trust, but does not specify clearly the parcel or parcels of land to be acquired. There were a few comments suggesting that the Secretary should view lands acquired under certain specific statutes as mandatory acquisitions. These comments were rejected as each mandatory acquisition must be reviewed on a case-by-case basis. Several comments were received that suggested that the term "mandatory" acquisition should be broadened to include "on-reservation" acquisitions, permit mandatory acquisition for the first 150,000 acres of land and make mandatory the acquisition of title to land in approved TLAAs. These suggestions were rejected since only Congress has the authority to mandate an acquisition and the Secretary cannot mandate acquisitions through these regulations. Each determination of whether an acquisition is mandatory or not must be made on a case-by-case basis, based on specific statutory direction provided by Congress.

One comment suggests that applicants should be permitted to file an appeal of a determination on whether or not an acquisition is mandatory. The comment is accepted and section § 151.16 has been amended to reflect that denials or approvals of a determination that an acquisition is mandatory may be appealed under the provisions of part 2. One comment suggested that the appeal process outlined in 25 CFR part 900 be used. This comment was rejected as part 900 applies to contracts issued under the Indian Self-Determination and Education Assistance Act, 25 U.S.C. 450 *et. seq.*, and, thus, is inapplicable to the provisions of this rule.

There were a couple of comments suggesting that the Department of Justice title evidence standards should not apply to on-reservation gifts of lands, nor should the warranty deed requirement apply when tribes have purchased land through a quit claim deed and the title is accompanied by title insurance. These suggestions were rejected as the standards imposed by the Department of Justice must be met for the United States to acquire land into trust for a tribe or individual Indian.

## Subpart E--Tribal Land Acquisition Areas

*Summary of Subpart*

The subpart defines a TLAA, describes the information that must be included in a request for approval of a TLAA, describes how the request will be processed, identifies the criteria that will be used to evaluate requests and describes how to apply to modify an approved TLAA. This subpart also **[*3456]** clarifies under what circumstances an Indian tribe can include in its TLAA land located inside another Indian tribe's reservation or TLAA. Further, this subpart establishes that an Indian tribe is not prohibited from acquiring land off-reservation if its request for a TLAA is denied. Lastly, this subpart clarifies that land acquired within an approved TLAA does not automatically attain reservation status.

Federal policy has for many decades viewed the existence of a tribal land base as integral to the cultural, political, and economic well-being of Indian tribes. Because of the overwhelming importance of a tribal land base, this rule facilitates acquisitions by landless Indian tribes. The process to address these situations is the use of a TLAA. Upon approval of a TLAA by the Secretary, tribes will be able to benefit from the on-reservation acquisition provisions to create a homeland, and strive for tribal self-determination and economic self-sufficiency.

AR00592