2/26/99 O:\151FINAL.VHS

PART 151 - Acquisition of Title to Land in Trust

Sec.              SUBPART A - PURPOSE, DEFINITIONS, GENERAL

151.1 What is the purpose of this part?

151.2 How are key terms defined in this part?

151.3 To what types of transactions does this part?

151.4 How does an individual Indian or a tribe apply to have title to land conveyed to the United States in trust?

151.5 How do we process a request?

151.6 How do we proceed after making a decision on a request?

151.7  When does the land attain trust status?

151.8  Will we accept and hold in trust an undivided fractional interest in land for an individual Indian or a tribe?


              SUBPART B - DISCRETIONARY ACQUISITIONS OF TITLE

151.9.  What information must be provided in a request involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

151.10 What criteria will we use to evaluate a request involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

151.11 Can an individual Indian or a tribe acquire land inside the reservation boundaries or inside an approved Tribal Land Acquisition Area of another tribe?

              SUBPART C - MANDATORY ACCEPTANCE OF TITLE
              OFF-RESERVATION

151.12 What information must be provided in a request involving land outside a reservation or outside a Tribal Land Acquisition Area?

AR00851

2/26/99 O:\151FINAL.VHS

151.13 Can an individual Indian acquire land outside his or her own reservation?

151.14 What criteria will we use to evaluate a request involving land outside a reservation or outside an approved Tribal Land Acquisition Area?

## SUBPART D - MANDATORY ACQUISITIONS OF TITLE

151.15 What information must be provided in a request to process a mandatory transfer of title into trust status, and how will we process the request?

151.16 Can our determination that a transfer of title into trust status is mandatory be appealed?

## SUBPART E - TRIBAL LAND ACQUISITION AREAS

151.17 What is a Tribal Land Acquisition Area?

151.18 What must be included in a request for Secretarial approval of a Tribal Land Acquisition Area?

151.19 How is a tribal request for Secretarial approval processed?

151.20 What criteria will we use to decide whether to approve a proposed Tribal Land Acquisition Area?

151.21 Can a tribe include in its Tribal Land Acquisition Area land inside another tribe's reservation or Tribal Land Acquisition Area?

151.22 If a Tribal Land Acquisition Area is not approved, is the tribe prohibited from acquiring land within it?

151.23 If a Tribal Land Acquisition Area is approved, does the land taken into trust within it attain reservation status?

151.24 Can a Tribal Land Acquisition Area be modified after approval?

## SUBPART F - FALSE STATEMENTS, RECORDKEEPING, INFORMATION

2/26/99 O:\151FINAL.VHS

COLLECTION

151.25 What is the penalty for making false statements in connection with a request that we place land in trust?

151.26 What recordkeeping and reporting requirements apply to acquisitions of trust title under this part?

151.27 Do information collections under this part have Office of Management and Budget approval?

AUTHORITY: R.S. 161: 5 U.S.C. 301. Interpret or apply 46 Stat. 1106, as amended; 46 Stat. 1471, as amended; 48 Stat. 985, as amended; 49 Stat. 1967, as amended, 53 Stat. 1129; 63 Stat. 605; 69 Stat. 392, as amended; 70 Stat. 290, as amended; 70 Stat. 626; 75 Stat. 505; 77 Stat. 349; 78 Stat. 389; 78 Stat. 747; 82 Stat. 174, as amended; 82 Stat. 884; 84 Stat. 120; 84 Stat. 1874; 86 Stat. 216; 86 Stat. 530; 86 Stat. 744; 88 Stat. 78; 88 Stat. 81; 88 Stat. 1716; 88 Stat. 2203; 88 Stat. 2207; 18 U.S.C. 1001; 25 U.S.C. 2, 9, 409a, 450h, 451, 464, 465, 467, 487, 488, 489, 501, 502, 573, 574, 576, 608, 608a, 610, 610a, 622, 624, 640d-10, 1466, 1495, and other authorizing acts.

## SUBPART A - PURPOSE, DEFINITIONS, GENERAL

## § 151.1 <u>What is the purpose of this part?</u>

The purpose of this part is to describe the authorities, policies, and procedures that we use to decide whether to accept title to land in the name of the United States to be held in trust for the benefit of an individual Indians or a tribe.

AR00853

2/26/99 O:\151FINAL.VHS

## § 151.2 How are key terms defined in this part?

Alienation  means to convey or transfer title to property.

Bureau  means the Bureau of Indian Affairs within the Department of the Interior.

Discretionary acquisitions of title  means those acquisitions of trust title which we are authorized, but are not required, to accept administratively.

Encumbrance  means a limitation on the title of property, such as a claim, lien, easement, charge, or restriction of any kind.

Fee simple land means title to land is absolute and clear of any condition or restriction, and with unconditional power of disposition.

Host tribe means the tribe having jurisdiction over the land being acquired.

Individual Indian  means a person who:

(1) Is a member of a federally recognized tribe; or

(2) Was physically residing on a federally recognized Indian reservation as of June 1, 1934, and is a descendant of an enrolled member of a federally recognized tribe; or

(3) Possesses a total of one-half degree or more Indian blood of a federally recognized tribe.

AR00854

2/26/99 O:\151FINAL.VHS

Land means real property or any title interest therein, as defined by the statute that authorizes the land acquisition.

Legislative transfer of title means the direct transfer of title to land into trust status for the benefit of an individual Indian or Indian tribe by Congress through legislation. The regulations in this part do not apply to legislative transfers of title.

Mandatory acceptance of title means a conveyance of trust title which Congress has required the Secretary to accept if certain specified conditions over which the Secretary has no control are met.

Reservation means that area of land which has been set aside or which has been acknowledged as having been set aside by the United States for the use of the tribe, the exterior boundaries of which are more particularly defined in the final tribal treaty, agreement, Executive Order, federal statute, Secretarial Order, or judicial determination, except that in the State of Oklahoma, " reservation" means that area of land constituting the former reservation of the tribe. "Former reservation" means lands that are within the jurisdictional area of an Oklahoma Indian tribe and that are within the boundaries of the last reservation established by treaty, Executive Orders, or Secretarial Orders.

Restricted fee land means land for which an individual Indian or a tribe holds fee simple title subject to limitations or restrictions against alienation or encumbrance as set forth in the title and/or by operation of law.

2/26/99 O:\151FINAL.VHS

<u>Secretary</u> means the Secretary of the Interior or an authorized representative.

<u>Tribal Land Acquisition Area</u> means a geographic boundary designated by a tribe that does not have a reservation, within which the tribe plans to acquire land over a specified period of time.

<u>Tribe</u> means any Indian tribe, nation, band, pueblo, town, community, rancheria, colony, or other group of Indians, which is recognized by the Secretary as eligible for the special programs and services provided by the Bureau of Indian Affairs, and listed in the Federal Register under PL 103-454, Act of Nov. 2, 1994 (108 Stat. 4791; 25 U.S.C. 479a (1994)).

<u>Trust land</u> means land, or an interest therein, for which the United States holds fee title in trust for the benefit of an individual Indian or a tribe.

<u>Undivided fractional interest</u> means that the interest of co-owners is in the entire property and that such interest is indistinguishable. The interest has not been divided out from the whole parcel. (Example: If you own 1/4 interest in 160 acres, you do not own 40 acres. You own 1/4 of the whole 160 acres because your 1/4 interest has not been divided out from the whole 160 acres.)

<u>We</u> means the Secretary of the Interior or an authorized representative.

## § 151.3 <u>To what types of transactions does this part apply?</u>

(a) Except as provided in paragraphs (b) and (c) of this section, this part applies to all fee simple land-to-trust, restricted fee land-to-trust, trust-to-trust, and land exchange transactions.

2/26/99 O:\151FINAL.VHS

(b) This part does not apply to the following transactions:

(1) Fee to restricted fee or restricted fee to restricted fee;

(2) The transfer of title of trust land through inheritance or escheat; or

(3) The Legislative transfer of title into trust status.

(c) We will not accept title to land in trust in the State of Alaska, except for the Metlakatla Indian Community of the Annette Island Reserve of Alaska or its members.

### § 151.4 How does an individual Indian or a tribe apply to have title to land conveyed to the United States in trust?

Individual Indians and tribes must send us a written request asking that we accept title and place the land into trust.

(a) The request must:

(1) Identify the applicant (including the applicant's tribal affiliation);

(2) Include the legal description of the land to be acquired; and

(3) Include all information which shows that the proposed acquisition meets the applicable requirements in this regulation.

(b) The request does not need to be in any special form. However, we strongly urge the applicant to address each section of this part that is relevant to the type of acquisition (e.g., on- or off-reservation, discretionary or mandatory), in the order it appears here. Constructing the request in this way will enable us to review the request more efficiently.

AR00857

(c) We may also ask for additional information to aid us in reaching a decision.

## § 151.5 How do we process the request?

(a) After we receive the request, we will notify the State, county, and municipal governments having regulatory jurisdiction over the land. We will send all notices under this section by certified mail, return receipt requested. The notice will contain the information described in paragraph (a)(1) or (a)(2) of this section, as appropriate.

(1) If the request is for on-reservation lands or lands inside an approved Tribal Land Acquisition Area, the notice we send under this section will:

(i) Include the name of the applicant;

(ii) Describe the lands proposed to be taken in trust;

(iii) State the proposed use of the land; and

(iv) Invite the State and local governments from the State in which the land is located to comment in writing within 30 days on the proposed acquisition.

(2) If the request is for land outside a reservation and outside a Tribal Land Acquisition Area, the notice we send under this section will:

(i) Include the name of the applicant;

(ii) Describe the lands proposed to be taken in trust;

(iii) Describe the proposed use of the land; and

(iv) Invite the State and local governments from the State in which the land is located to comment in writing within 60 days on the acquisition's potential effects on the State and local

AR00858

2/26/99 O:\151FINAL.VHS

governments, including on their regulatory jurisdiction, real property taxes, and special assessments.

(b) After the comment period has ended, we will send to the applicant copies of any comments made by State or local governments on the applicant's request. We will give the applicant a reasonable time in which to reply to the comments.

(c) Subject to restrictions on disclosure required by the Freedom of Information Act (5 U.S.C. 552), the Privacy Act (5 U.S.C. 552a), and the Trade Secrets Act (18 U.S.C. 1905) the request will be available for review at the local BIA agency or area office having administrative jurisdiction over the land.

(d) We will consider all the documentation that the applicant submits.

## § 151.6 How do we proceed after making a decision on the request?

(a) We will send the applicant a certified letter describing our decision to accept or deny a request. We will also send a copy of the decision letter to everyone (including State and local governments) who sent us written comments on the request. The notice to interested parties will explain that they have a right to appeal our decision under part 2 of this title.

(b) If our decision is to deny the request, we will take no further action.

(c) If our decision is to approve the request, after the exhaustion of administrative remedies we will:

(1) Complete a preliminary title examination. For both discretionary and mandatory

acquisitions, after we examine the title evidence, we will notify the applicant of any liens, encumbrances, or infirmities. If the liens, encumbrances, or infirmities make title to the land unmarketable, we will require the applicant to eliminate the liens, encumbrances, or infirmities before we act on the application.

(2) Publish in the Federal Register, or in a newspaper of general circulation serving the affected area, a notice of the decision to take land into trust under this part. The notice will state that we have made a final decision to take land in trust and that we will accept title in the name of the United States no sooner than 30 days after the notice is published;

(3) Act on any judicial appeals that may be filed; and

(4) After the exhaustion of judicial remedies, accept trust title to the land by issuing or approving an appropriate instrument of conveyance.

### § 151.7  When does land attain trust status?

After the Secretary has published notice of intent to take the land into trust pursuant to §"151.6 (c)(2), the time period for appeal has run, all appeals rights have been exhausted, and all title objections have been cleared, we will approve or issue the appropriate instrument of conveyance. Only after these steps have been completed will the land attain trust status. The approved deed will then be recorded in the county where located, title evidence will be updated, a final title opinion will be issued and the deed will be recorded in the appropriate Bureau of Indian Affairs title plant under part 150.

### § 151.8  Will we accept and hold in trust an undivided fractional interest in land for an individual Indian or a tribe?

2/26/99 O:\151FINAL.VHS

We will not accept and hold in trust for an individual Indian or a tribe an undivided fractional interest in land, except under one of the following conditions:

(a) The individual Indian or tribe already owns an undivided fractional restricted or trust interest in the land, and is acquiring the additional interest(s) to consolidate ownership.

(b) The individual Indian or tribe acquires the undivided fractional interest as the result of a gift under part 152.25(d) and the conveyance does not result in further fractionation of interest in the land.

(c) The individual Indian or tribe is acquiring interest in fee and there are existing undivided fractional trust or restricted interests in the same land.

(d) The individual Indian or tribe offers and agrees to purchase the remaining undivided fractional trust or restricted interest in the land, at not less than fair market value.

(e) A specific statute grants the individual Indian or tribe the right to purchase an undivided fractional interest in trust or restricted land without offering to purchase all interests.

(f) A majority of the owners of the remaining undivided trust or restricted fractional interest agree in writing that the individual Indian or tribe may acquire the interest.

(g) Under the Indian Land Consolidation Act, 25 U.S.C. 2201 et seq., a tribe may acquire an undivided fractional interest in trust or restricted land under these conditions:

AR00861

2/26/99 O:\151FINAL.VHS

(1) The land is inside the tribe's reservation, or inside an approved Tribal Land Acquisition Area, or is otherwise subject to the tribe's jurisdiction, and

(2) The tribe acquires the land:

(i) At not less than the fair market value; and

(ii) With the written consent of a majority of the owners of the remaining undivided fractional trust or restricted interest of this land.

(h) The tribe acquires, at not less than the fair market value, part or all of the undivided fractional interests in a parcel of trust or restricted land within the tribe's reservation, or subject to the tribe's jurisdiction and:

(1) Over 50 percent of the owners of the undivided fractional interests consent in writing to the acquisition; or

(2) An individual Indian makes an offer under paragraph (e) of this section.

(i) An individual Indian:

(1) Already owns an undivided fractional interest in the land;

(2) Offers to match a tribal offer to purchase under paragraph (d) of this section; and

(3) Has used and possessed the land for at least 3 years preceding the tribe's offer to purchase.

## SUBPART B - DISCRETIONARY ACQUISITIONS OF TITLE ON-RESERVATION

## § 151.9 What information must be provided in a request involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

AR00862

2/26/99 O:\151FINAL.VHS

A request from an individual Indian or a tribe asking that the United States accept title to land inside a reservation boundary or to land inside an approved Tribal Land Acquisition Area must include:

(a) A complete description, or a copy, of the federal statute that authorizes the United States to accept the land in trust and any limitations contained in the authority.

(b) An explanation of why the individual Indian or tribe needs land to be in trust and how the land will be used. This explanation is a crucial factor in determining if the request should be approved.

(c) If the applicant is a tribe, an explanation of explain whether the tribe:

(1) Already owns an undivided fractional trust or restricted interest in the land; and

(2) Maintains jurisdiction over the land.

(d) If the applicant is an individual Indian, an explanation of:

(1) Whether the applicant already owns an undivided fractional trust or restricted interest in the land;

(2) The amount of land that the applicant already owns and the status of the land (fee, restricted, or trust); and

(3) Whether the applicant needs assistance in handling real estate affairs. For example, tell us if the applicant is a minor or has been declared legally incompetent.

AR00863

(e) Title insurance or an abstract of title that meets the Standards for the Preparation of Title Evidence in Land Acquisitions by the United States, issued by the U. S. Department of Justice.

(f) Documentation that we need to comply with 516 DM 6, Appendix 4, National Environmental Policy Act (NEPA) Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations. (For copies of these directives, see the Department of Interior, Bureau of Indian Affairs web site at: <http://www.doi.gov/bureau-indian-affairs.html>.) Include a record of consultation with appropriate authorities regarding environmental, endangered species, water quality, fish and wildlife, wetlands, transportation, air quality, cultural, historical value, hazardous waste, and toxic materials.

## § 151. 10 What criteria will we use to evaluate requests involving land inside a reservation or inside an approved Tribal Land Acquisition Area?

We will review all information submitted under §151.9. We may decide to accept trust title to the land if the acquisition meets all of the following criteria:

(a) We determine that the conveyance is necessary to facilitate tribal self-determination, economic development, Indian housing, or land consolidation;

(b) There is legal authority that authorizes us to accept the land in trust;

(c) The request is complete (including all supporting documents);

2/26/99 O:\151FINAL.VHS

(d) The request will benefit the economic and/or social condition of the applicant;

(e) There is title insurance or an abstract of title that meets the Standards for the Preparation of Title Evidence in Land Acquisitions by the United States, issued by the U. S. Department of Justice;

(f) There is information sufficient for compliance with 516 DM 6, Appendix 4, National Environmental Policy Act (NEPA) Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations, including, a record of coordination with agencies having jurisdiction over cultural, historic, or natural resources; and

(g) We determine after mitigation of effects on the environment, cultural resources, historic resources, and endangered or threatened species, that the conveyance is consistent with applicable environmental, cultural, historic, or natural resources law.

## § 151.11 Can an individual Indian or a tribe acquire land inside a reservation or inside an approved Tribal Land Acquisition Area of another tribe?

An individual Indian or a tribe, including individual Indians and tribes in Oklahoma, may acquire land in trust on another tribe's reservation, or inside another tribe's approved Tribal Land Acquisition Area, if the host tribe's governing body consents in writing.   No consent is required if:

(a) An individual Indian or tribe already owns an undivided fractional trust or restricted

AR00865

2/26/99 O:\151FINAL.VHS

interest in the parcel of land to be acquired; or

(b) The proposed acquisition is inside a reservation or an approved Tribal Land Acquisition Area that is shared by two or more tribes, and the acquisition is for one of these tribes, or one of these tribes' members.

## SUBPART C - DISCRETIONARY ACQUISITIONS OFF-RESERVATION

### § 151.12 What information must be provided in a request involving land outside a reservation and outside a Tribal Land Acquisition Area?

A request from an individual Indian or a tribe asking that the United States accept title to land outside a reservation boundary and outside an approved Tribal Land Acquisition Area, must include:

(a) A complete description, or a copy of, the statutory authority that authorizes the United States to accept land in trust and any limitations contained in the authority;

(b) An explanation of the need of the individual Indian or tribe for land in trust and how the land will be used. This explanation is a crucial factor in determining if the request should be approved. The request must explain:

(1) Why the present land base is not appropriate for the activity contemplated in the request;

(2) Why the applicant needs the land in trust for the proposed use; and

(3) How trust status will benefit the applicant's economic and/or social conditions.

2/26/99 O:\151FINAL.VHS

(c) A description of how the applicant will use the land. This description must include an explanation of:

(1) The past uses of the land;

(2) The present use of the land;

(3) The anticipated future uses of the land;

(4) The cultural or historical interest in the land;

(5) The objectives that the individual Indian or tribe hopes to attain; and

(6) If the acquisition is for housing:

(i) The projected number of units to be built; and

(ii) The number of members who will benefit.

(7) If the applicant is acquiring the land for business purposes, the tribe must provide a business plan that specifies the anticipated economic benefits of the proposed use.

(d) A description of the following:

(1) The location of the land relative to State boundaries;

(2) The distance of the land from the boundaries of the tribe's reservation;

(3) The distance of the land from the Bureau's agency or area office;

(4) The location of roads and rights-of-way that provide access to the land; and

(5) The location of land in relation to the tribe's other trust lands.

(e) A description of the effect on the State and its political subdivisions of removing the land from tax rolls. Describe any measures the applicant will take to reduce these effects. The

AR00867

2/26/99 O:\151FINAL.VHS

description of effects must include an explanation of:

(1) The amount of annual taxes currently assessed by the local governments;

(2) The amount of annual revenue lost from special assessments to the local governments, if any;

(3) The amount of annual revenue lost from mineral receipts to the local governments, if any; and

(4) The local governments' ability to provide public safety services for the land.

(f) A description of any jurisdictional and land use infrastructure issues that might arise. The description must address each of the following issues.

(1) Zoning, including:

(i) The current zoning of the land;

(ii) Any proposed use conflicts with current zoning; and

(iii) Any tribal zoning ordinances.

(2) Law enforcement and cross-deputization, including:

(i) Who currently provides law enforcement services for the land;

(ii) Whether the tribe already has its own law enforcement;

(iii) Who will supply law enforcement if the land is approved for trust status; and

(iv) Any additional resources required to provide adequate law enforcement and how they will be funded.

(3) Safety factors, including:

(i) Who supplies fire protection service for the land;

(ii) Who supplies emergency medical service for the land; and

(iii) If the land is in a flood area or flood control area.

(4) Traffic, roads, and streets, including:

2/26/99 O:\151FINAL.VHS

(i) Access to the land;

(ii) A description and quantification of anticipated increased traffic in the area from proposed use; and

(iii) A description of whether existing roads and streets are adequate to handle any anticipated increase in traffic caused by the proposed use.

(5) Sanitation, including whether:

(i) The land is on a city sewage system;

(ii) The land is served by an adequate sewage system that meets applicable standards;

(iii)Trash pickup service or another method of trash disposal is available for the land;

(iv) The city or another facility supplies services to the land;

(v) There is an adequate water supply for the proposed use and any future anticipated uses; and

(vi) Whether the tribe has water rights to the available water supply.

(6) Utilities, including:

(i) Whether a city or a rural electric company supplies electricity to the land; and

(ii) The source of heating for the land, such as: natural gas, propane, oil, coal, wood, electric, or solar.

(7) Whether there are any cooperative agreements or voluntary actions intended to address jurisdictional and land use conflicts.

(8) Whether the tribe has made any provisions to compensate the State or local governments for revenue lost because of the removal of the land from the tax rolls. (Include any increases in Title IX funding from the Indian Education Act or Impact Aid funding.)

(g) Whether there is title evidence that meets the Standards for the Preparation of Title Evidence in Land Acquisitions by the United States, issued by the U. S. Department of Justice.

AR00869

2/26/99 O:\151FINAL.VHS

The evidence will be examined to determine if the applicant has marketable title.

(h) The documentation that we need to comply with 516 DM 6, Appendix 4, National Environmental Policy Act (NEPA) Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations. (For copies of these directives, see the Bureau of Indian Affairs web site at: <http://www.doi.gov/bureau-indian-affairs.html>.) Include a record of consultation with appropriate authorities regarding environmental, endangered species, water quality, fish and wildlife, wetlands, transportation, air quality, cultural, historical value, hazardous waste, and toxic materials.

(i) If the request is for an individual Indian, documentation demonstrating that the applicant's request meets one of the criteria described in § 151.13.

§ 151.13 Can an individual Indian acquire land outside his or her own reservation?

Except as provided in paragraphs (a) and (b) of this section, we will not accept title to land in trust outside an individual Indian's reservation. We may approve acquisitions of land outside an individual Indian's reservation if:

(a) The individual Indian already owns an undivided fractional trust or restricted interest in the property being acquired; or

(b) The individual Indian has sold trust or restricted interest in land and the money received from the sale is reinvested in other land selected and purchased with these funds, or

AR00870

the individual Indian is purchasing land with funds obtained as a result of a sale of trust or restricted land under 25 U.S.C. 409a.

## § 151.14 What criteria will we use to evaluate a request involving land outside a reservation or outside an approved Tribal Land Acquisition Area?

We will review all information submitted under section § 151.12. We may decide to place the land in trust if we determine that the application meets all of the following criteria:

(a) We determine that the conveyance is necessary to facilitate tribal self-determination, economic development, Indian housing, or land consolidation;

(b) There is legal authority that authorizes us to accept land in trust;

(c) The request is complete (including all supporting documents);

(d) The acquisition will benefit the tribe's economic and/or social conditions;

(e) There is title evidence that meets the Standards for the Preparation of Title Evidence in Land Acquisitions by the United States, issued by the U. S. Department of Justice;

(f) There is information sufficient for compliance with 516 DM 6, Appendix 4, National Environmental Policy Act (NEPA) Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations: a record of coordination with agencies

AR00871

2/26/99 O:\151FINAL.VHS

having jurisdiction over cultural, historic, and natural resources;

(g) We determine after mitigation of impacts on the environment, cultural resources, historic resources, and endangered or threatened species, that the conveyance is consistent with applicable environmental, cultural and historic resources law, and the Endangered Species Act;

(h) We determine that any adverse impacts on local governments and communities are reasonable compared to the benefits flowing to the applicant from taking the land in trust;

(i) The Bureau of Indian Affairs is equipped to handle the additional responsibilities of this acquisition and has sufficient staff to perform inspections for rights-of-way, leasing, soil conservation, and oil and gas exploration, or any other responsibilities resulting from the acquisition of the land in trust status; and

(j) The location of the land relative to State boundaries, and its distance from the boundaries of the tribe's reservation, is reasonable based in part on the following:

(1) If the land is in a different state than the tribe's reservation, the tribe's justification of anticipated benefits from the acquisition will be subject to greater scrutiny.

(2) As the distance between the tribe's reservation or approved Tribal Land Acquisition area and the land to be acquired increases, the tribe's justification of anticipated benefits from the acquisition will be subject to greater scrutiny.

(3) As the distance between the tribe's reservation or approved Tribal Land Acquisition Area and the land to be acquired increases, the concerns raised by the state and local governments will be given greater weight.

AR00872

2/26/99 O:\151FINAL.VHS

## SUBPART D - MANDATORY ACCEPTANCE OF TITLE

§ 151.15 <u>What information must be provided in a request to process a mandatory transfer of title into trust status, and how will we process the request?</u>

(a) To help us determine whether we are mandated by legislation to accept trust title to a specific tract of land, we require submission of the following documentation:

(1) A complete description, or a copy of, the statutory authority that directs the United States to place the land in trust, and any limitations contained in that authority;

(2) Title insurance or an abstract of title that meets the <u>Standards for the Preparation of Title Evidence in Land Acquisitions by the United States</u>, issued by the U. S. Department of Justice; and

(3) Any additional information that we may request.

(b) If we determine that the transfer of title into trust status is mandatory, we will publish that determination and a notice of intent to take the land in trust in the Federal Register.

§ 151.16 <u>Can our determination that a transfer of title into trust status is mandatory be appealed?</u>

The Department's determination that a transfer of title into trust status is "mandatory"

2/26/99 O:\151FINAL.VHS

may be appealed according to requirements set forth in Part 2 of this title.

## SUBPART E - TRIBAL LAND ACQUISITION AREAS

§ 151.17    <u>What is a Tribal Land Acquisition Area?</u>

A Tribal Land Acquisition Area is a geographic boundary designated by a reservation-less tribe within which the tribe plans to acquire land within a 10-year period.    If the Secretary approves the Tribal Land Acquisition Area under this part,  the reservation-less tribe can acquire parcels of land within the Tribal Land Acquisition Area during that 10- year period under  the on-reservation provisions of this part.

§ 151. 18    <u>What must be included in a request for Secretarial approval of a Tribal Land</u>
<u>Acquisition Area?</u>

A request for Secretarial approval of a Tribal Land Acquisition Area must be made in writing, although we do not require that it take any special form.  However, we strongly urge the applicant to address each applicable section of this part in the order it appears here.  Constructing the application in this way will help us review the request more efficiently.  To be complete, a request for Secretarial approval of a Tribal Land Acquisition Area must identify the applicant tribe, and must include:

(a) A complete description, or a copy, of the federal statute(s) that authorize the United States to accept land in trust on behalf of the tribe, and any limitations contained in that authority.

(b) Copies of tribal documents relating to the establishment of the Tribal Land Acquisition Area and the acquisition of land within it, including:

AR00874

2/26/99 O:\151FINAL.VHS

(1) A copy of the tribe's constitution and by-laws, corporate charter, resolution, or excerpts from those documents that identify and grant tribal officials the authority to acquire tribal lands on behalf of the tribe;

(2) A copy of a tribal resolution designating the Tribal Land Acquisition Area, including a legal description of the lands located within it; and

(3) A copy of a tribal resolution requesting that the Secretary approve the proposed Tribal Land Acquisition Area.

(c) A narrative summary that describes the purposes and goals for acquiring lands in trust within the Tribal Land Acquisition Area, including general information about whether the lands are to be used for residential, governmental, educational, economic development, or other purposes.

(d) A narrative of the tribe's history that explains:

(1) When the tribe was federally recognized, and whether it was through legislation, treaty, or the Bureau of Indian Affairs' Federal Acknowledgment Process; and

(2) If applicable, how the tribe became dispossessed of its former reservation lands.

(e) A description of the Tribal Land Acquisition Area, including:

(1) A legal description of the lands within the Tribal Land Acquisition Area;

(2) Information about whether the lands are within the tribe's former reservation or aboriginal homelands;

(3) Information about whether the lands are Federal lands, State lands, or private lands;

(4) Information about whether the lands overlap with another tribe's jurisdictional area;

(5) Information about the significance of the land to the tribe, including whether the land

AR00875

2/26/99 O:\151FINAL.VHS

has any particular historical, cultural, religious, or other value to the tribe; and

(6) Information about the distance of the Tribal Land Acquisition Area from the Bureau's nearest agency or area office.

(f) A description of the location of roads and rights-of-way, or of additional rights-of-way that may be needed to provide access to lands located within the Tribal Land Acquisition Area.

(g) A description of the reasonably anticipated overall effect on the State and its political subdivisions of removing lands located within the Tribal Land Acquisition Area from tax rolls, and a description of any measures the applicant will take to reduce these effects. The description of effects must include an explanation of:

(1) The amount of annual taxes currently assessed by the local governments for lands located within the Tribal Land Acquisition Area;

(2) The amount of annual revenue which would be lost from special assessments to the local governments, if any;

(3) The amount of annual revenue lost from mineral receipts to the local governments, if any; and

(4) The local governments' ability to provide public safety services for lands located within the Tribal Land Acquisition Area.

(h) A description of any overall jurisdictional and land use infrastructure issues that might arise if the lands within the Tribal Land Acquisition Area is taken into trust. The description must address each of the following issues.

(1) Zoning, including:

(i) The current zoning of the land;

AR00876

2/26/99 O:\151FINAL.VHS

(ii) Any proposed use conflicts with current zoning; and

(iii) Applicable tribal zoning ordinances.

(2) Law enforcement and cross-deputization, including:

(i) Who currently provides law enforcement services for the land;

(ii) Whether the tribe already has its own law enforcement;

(iii) Who will supply law enforcement if the land is approved for trust status; and

(iv) Whether additional resources would be needed to provide adequate law enforcement.

(3) Safety factors, including:

(i) Who supplies fire protection service for lands located within the Tribal Land Acquisition Area.;

(ii) Who supplies emergency medical service for lands located within the Tribe Land Acquisition Area; and

(iii) Information about whether lands located within the Tribal Land Acquisition Area are in a flood area or flood control area.

(4) Traffic, roads, and streets, including:

(i) A description of current access to the land;

(ii) A description and quantification of anticipated increased traffic in the area from proposed use; and

(iii) A description of whether existing roads and streets are adequate to handle any anticipated increase in traffic caused by the proposed use.

(5) Sanitation, including whether:

(i) The lands located within the Tribal Land Acquisition Area are on a city sewage system;

(ii) The lands located within the Tribal Land Acquisition Area are served by an adequate sewage system that meets applicable standards;

(iii) Trash pickup service or another method of trash disposal is available for lands located

AR00877

2/26/99 O:\151FINAL.VHS

within the Tribal Land Acquisition Area;

(iv) The city or another facility supplies sanitation services to the lands located within the Tribe Land Acquisition Area;

(v) There is an adequate water supply for the proposed use and any future anticipated uses; and

(vi) Whether the tribe has water rights to the available water supply.

(6) Utilities, including:

(i) Whether a city or a rural electric company supplies electricity to lands located within the Tribal Land Acquisition Area; and

(ii) The source of heating for lands located within the Tribal Land Acquisition Area, such as: natural gas, propane, oil, coal, wood, electric, or solar.

(7) Whether there exist any cooperative agreements or voluntary actions intended to address jurisdictional and land use conflicts.

(8) Whether the tribe has made any provisions to compensate the State and local governments for revenue lost because of the removal of the lands from the tax rolls. (Include any increases in Title IX funding from the Indian Education Act or Impact Aid funding.)

**§ 151.19  How is a tribal request for Secretarial approval processed?**

When we receive a request for Secretarial approval of a Tribal Land Acquisition Area, we will review the supporting documentation to determine if the request meets the requirements of this part. If the request is complete, we will:

(a) Provide notice of the request for Secretarial approval to the Governor's Office, to appropriate local government officials, and to appropriate officials of tribes located within a 50-mile radius of the boundaries of the proposed Tribal Land Acquisition Area. Recipients of the notice will be provided 60 days from the date of receipt in which to comment on the proposed

AR00878

2/26/99 O:\151FINAL.VHS

Tribal Land Acquisition Area and the request supporting it. Other interested parties may also submit comments during the 60-day consultation period.

(b) After the close of the consultation period, based on the criteria described in § 151.21, we will decide whether to approve the Tribal Land Acquisition Area. Our decision on whether to approve the Tribal Land Acquisition Area will be communicated in the form of a certified letter to the applicant. We also will provide notice of our decision to interested parties by sending a copy of the decision letter to everyone (including State and local governments) who sent us written comments on the request for approval.

(c) If we decide not to approve the Tribal Land Acquisition Area, we will take no further action.

(d) If we decide to approve the Tribal Land Acquisition Area, we will:

(1) Publish in the Federal Register, or in a newspaper of general circulation serving the affected area, a notice of the decision to approve the Tribal Land Acquisition Area; and

(2) Thereafter review requests to accept trust title land located within the Tribal Land Acquisition Area as "on-reservation" acquisitions under the applicable on-reservation provisions in this part.

## § 151. 20 <u>What criteria will we use to decide whether to approve a proposed Tribal Land Acquisition Area?</u>

In general, because tribes without reservations are significantly disadvantaged, both in terms of cultural preservation and in terms of being ineligible for federal land-based programmatic funding and technical assistance, there is a presumption in favor of the tribe's need for at least

2/26/99 O:\151FINAL.VHS

some trust land. However, in determining whether to approve establishment of a Tribal Land Acquisition Area, we will consider the individual circumstances of each applicant tribe, surrounding community, and affected land base. There are some standard criteria which will help direct our decision-making process. These standard criteria include:

(a) The request must be complete and contain all supporting documents;

(b) The statutory basis upon which the tribe proposes creation of the Tribal Land Acquisition Area: if the tribe is the subject of a statute directing the Secretary to take some unspecified land into trust for the tribe's benefit the tribe will enjoy a greater presumption in favor of approval of its proposed Tribal Land Acquisition Area. (For example, there is statutory language such as "the Secretary shall take land into trust within the tribe's service area," or "the Secretary shall take land into trust within X and Y counties.")

(c) The size of the proposed Tribal Land Acquisition Area in relation to the size of the tribe's membership: we will look for a reasonable connection between the amount of land the tribe wishes to take into trust, and the basic trust needs (housing, health, employment opportunities) of the tribe's membership.

(d) The relationship of the tribe to the lands located within the Tribal Land Acquisition Area: we will give greater weight to an request for approval of a Tribal Land Acquisition Area that encompasses lands to which the tribe has established a strong cultural, historical, and/or legal connection.

(e) The ability of the tribe and the local non-Indian community to adjust to the

2/26/99 O:\151FINAL.VHS

jurisdictional changes that will occur if the lands within the Tribal Land Consolidation Area are taken into trust, including:

(1) That there are adequate arrangements for provision of police and fire protecion and other emergency response for persons living within the Tribal Land Consolidation Area (whether living on trust or non-trust property);

(2) That there are adequate arrangements for provision of other municipal-type services, such as garbage removal, water, sewage;

(3) That adverse impacts on local governments and communities are reasonable compared to the benefits flowing to the applicant.

## § 151.21  Can a tribe include in its Tribal Land Acquisition Area land inside another tribe's reservation or Tribal Land Acquisition Area?

A tribe may include land inside the reservation boundaries or within an approved Tribal Land Acquisition Area of another tribe, if:

(a) the host tribe's governing body consents in writing;

(b) the tribe already owns undivided fractional trust or restricted interests in the tracts of land identified in its Tribal Land Acquisition Area; or

(c) the tracts of land to be included in the plan are inside a reservation or an approved Tribal Land Acquisition area that is shared by two or more tribes, and the plan is for one of these tribes.

## § 151. 22  If a Tribal Land Acquisition Area is not approved, is the tribe prohibited from acquiring land within it?

No.  However, the tribe will have to apply to have individual parcels taken into trust under

2/26/99 O:\151FINAL.VHS

the off-reservation provisions of this part.

### §151.23 If a Tribal Land Acquisition Area is approved, does the land taken into trust within it attain reservation status?

No. Lands taken into trust within a Tribal Land Acqustion Area will enjoy "Indian country" status as that term has been defined in relevant federal statutes and caselaw. However, those lands do not attain "reservation" status by virtue of the Tribal Land Acquisition Area having been approved by the Secretary. Reservation status can only be attained if:

(a) The tribe has applied to the Secretary under 12 U.S.C. 467; or

(b) There is a specific federal statute designating the land as a reservation.

### § 151.24 Can a Tribal Land Acquisition Area be modified after approval?

Yes. However, the changes must be submitted with a request for approval in compliance with the criteria in this part and must be approved by the Secretary.

## SUBPART F - FALSE STATEMENTS, RECORDKEEPING, INFORMATION COLLECTION

### § 151.25 What is the penalty for making false statements in connection with a request that we place land into trust?

Anyone who knowingly and willfully makes a false statement in connection with a trust title acquisition request may be subject to criminal prosecution under the False Statements Accountability Act of 1996, 18 U.S.C. 1001.

2/26/99 O:\151FINAL.VHS

### § 151.26  What recordkeeping and reporting requirements apply to acquisitions of trust title under this part?

(a) Each document that we hold or that is created in the development of a request asking for land to be placed in trust is a permanent federal case file record.  The Bureau of Indian Affairs file will maintain each of the documents in accordance with National Archives and Records Administration requirements.

(b) The Secretary will negotiate with Indian tribes and tribal organizations compacting and contracting under Title I or Title IV of the Indian Self-Determination and Education Assistance Act, 25 U.S.C. 250 et seq., to ensure that such tribes and tribal organizations also maintain each document in a case file in accordance with National Archives and Records Administration rules and requirements, and to ensure that they follow all Bureau reporting requirements concerning this part.

### § 151.27  Do information collections under this part have Office of Management and Budget approval?

(a)  The information collection requirements contained in §§ 151.4; 151.5; 151.7; 151.8(c), 151.10, and 151.11 have been approved by the Office of Management and Budget under 44 U.S.C. 33501 et seq. and assigned clearance number 1076-0100.  Indian tribes and individuals must submit the information required under these sections to acquire land into trust.  We will use the information in making a determination on an application to take land into trust.  The applicant must respond to this request to obtain a benefit.  We will submit the information collection requirements in §§ 151.16 and 151.17 to the Office of Management and Budget for approval.  This information will not be required until the Office of Management and Budget approves the information collection.

(b) Public reporting for on-reservation information collection is estimated to average 4

AR00883

2/26/99 O:\151FINAL.VHS

hours per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the information collected. Public reporting for off-reservation information collection is estimated to average 8 hours per response, including the time for reviewing instructions, gathering and maintaining data, and completing and reviewing the information collected. Direct comments regarding the burden estimate or any other aspect of this information collection should be sent to the Bureau of Indian Affairs, Information Collection Clearance Officer, 1849 C Street, N.W., Washington, D.C. 20240; and the Office of Information

and Regulatory Affairs [Project 1076-0100], Office of Management and Budget, Washington, D.C. 20502.


_____          _____
Kevin Gover                                Date
Assistant Secretary - Indian Affairs

cc:    Secretary's Surname RF(2)
       BIA:222:PMKENNEDY:X-5954:01/13/97:JOB:overall.151
       Larry's changes added 1/16/97
       Strikeouts deleted 1/23/97
       Revised to add Solicitor's changes:7/1/97:
              JOB:TS222:REGS:REVISED3.151
       Revised: 7/10/97:JOB:TS222:REGS:REVISED4.151
       Revised: Per Comments of Sol & Realty Officers:09/08/97:
              JOB:I:\users\realty\Pearl\regs\REVISED5.151
       Revised: Per Review with Dept. Personnel: 04/22/98:JOB:151regs.dpt
       Revised 05/05/98:JOB:151regs2.dpt
       Revised 05/12/98:for review on 05/13/98:JOB:151regs3.dpt
       Revised: 05/13/98:for review on 05/15/98:JOB:151regs4.dpt
       Revised: 05/15/98 for review on 05/18/98:JOB:151regs5.dpt
       Revised:05/28/98 for review on 05/29/98:JOB:151regs6.dpt
       Revised:05/29/98 for review on 06/01/98:JOB:151regs6.dpt
       Revised:06/16/98 for review on 06/23/98:JOB:151 regs6.dpt
       Revised:06/23/98 for review on 07/21/98:JOB:151regs7.dpt
       Revised:07/21/98 for review on 07/24/98:JOB:151regs8.dpt

AR00884

2/26/99 O:\151FINAL.VHS

Revised:PerDOIRegsOffice:07/24/98 for review on 08/27/98:JOB:151regs9.dpt
Revised Per DOI:08/27/98 for review on 09/04/98.
Revised Per DOI:09-20-98 for review on 09-21-98:JOB:151reg10.dpt
Revised Per DOI:09-22-98 for review on 09-22-98:JOB:151reg11.dpt
Revised Per DOI:09-23-98 for review on 09-28-98:JOB:151reg12.dpt
Revised Per DOI:09-23-98 for review on 09-24-98:JOB:151reg13dpt

O:\151FINAL.VHS✧VHSIBBISON✧18Feb99✧5:32 PM

AR00885





# United States Department of the Interior
### OFFICE OF THE SOLICITOR
### ALASKA REGION

4230 University Drive
Suite 300
Anchorage, Alaska 99508-4626

Date: _8/16/00_

To: _Andrew Huff_

_Indian Law Resource Center_

Fax: _406 - 449 - 2031_

From: Roger L. Hudson

Confirmation: (907) 271-4131

Subject: _Acceptance of land in trust in Alaska_

Number of Pages Including Cover Sheet: _5_

Comments:

_Here is 1978 "Fredericks" opinion I spoke of. As I said, I don't believe it necessarily represents a current legal analysis, but the Department's position, as expressed in the Secretary's reg., has not been changed. 25 CFR 151.1_

The information contained in this message is intended only for the addressee or addressee's authorized agent. The message may contain information that is privileged, confidential, or otherwise exempt from disclosure. If the reader of this message is not the intended recipient or recipient's authorized agent, then you are notified that any dissemination, distribution or copying of this message is prohibited. If you have received this message in error please notify the sender by telephone and return the original and any copies of the message by mail to the sender at the address stated above.

# FAX TRANSMITTAL
# COVER SHEET

AR00886



ROGER HUDSON
08/17/2000 11:36 AM

To:       JOHN LESHY@DOI, DERRIL JORDAN@DOI, SCOTT KEEP@DOI, LAURI ADAMS/AK/SOL/DOI@DOI
cc:

Subject:  A "Head's Up" regarding taking land in trust in Alaska

Both I and the BIA received calls yesterday from attorney Andrew Huff of the Indian law Resource Center (in Montana[?], judging by his telephone area code), asking about the clearest expression of the Department's position on taking land in trust in Alaska.    He said he was representing the Douglas Indian Association, which is a small IRA-organized Federal Register list recognized Alaska tribe based in the community of Douglas, right across Gastineau Channel from downtown Juneau.

Initially, I was only able to refer him to the 1978 Fredericks memo, and 25 CFR 151.1, although I told him he should not assume that the Fredericks memo was necessarily still regarded as an entirely persuasive legal analysis.   Then I realized that the Secretary had addressed the topic in the introduction to the publication of the draft revisions of Part 151, at 64 Federal Register 17577-78 (April 12, 1999), so I sent him a copy of that discussion.

According to my files, it's been almost three years to the day since we stopped laboring over the draft memo to the Secretary reconsidering the question of the Secretary's authority to take land in trust in Alaska.   As you'll recall, we concluded that statutory authority did still exist to take land in trust in Alaska, but that our draft recommended that the subject be addressed in regulations before the Secretary attempted to exercise such authority.  In the meantime, of course, we have published proposed revised regs, including the cited discussion indicating a conscious decision not to change the policy of not taking land in trust for Alaska Native tribes or individuals.

I don't know what comments may have been received on this subject prior to the 7/12/99 deadline, although I would certainly be curious about any such comments.   I also don't know the current status of the draft regs, or who is working on them.   Could someone enlighten me on those subjects, and possibly share any comments received on the Alaska issue?

I wouldn't be surprised if Mr. Huff attempted to present a new petition on behalf of Douglas, or possibly some sort of legal challenge to the Department's present position.   I am curious as to whether our present thinking is that the 1999 Fed.Reg. commentary superseded the effort to finalize the 1997 draft opinion, or whether that opinion might still be dusted off, updated, and delivered.

                                            —  Roger Hudson

AR00887

**Date:**    8/28/00 9:31 AM
**Sender:** SCOTT KEEP
**To:**      MARY ANNE KENWORTHY
**cc:**      SUZANNE SCHAEFFER
**Priority:** Normal
**Subject:** Fwd:A "Head's Up" regarding taking land in trust in Alaska

    FYI

_____Forward Header_____
Subject:    A "Head's Up" regarding taking land in trust
in Alaska
Author:     ROGER HUDSON
Date:       8/17/00 3:36 PM


Both I and the BIA received calls yesterday from attorney
Andrew Huff of the
Indian law Resource Center (in Montana[?], judging by his
telephone area code),
asking about the clearest expression of the Department's
position on taking land
in trust in Alaska.      He said he was representing the Douglas
Indian
Association, which is a small IRA-organized Federal Register
list recognized
Alaska tribe based in the community of Douglas, right across
Gastineau Channel
from downtown Juneau.


Initially, I was only able to refer him to the 1978 Fredericks
memo, and 25 CFR
151.1, although I told him he should not assume that the
Fredericks memo was
necessarily still regarded as an entirely persuasive legal
analysis.    Then I
realized that the Secretary had addressed the topic in the
introduction to the
publication of the draft revisions of Part 151, at 64 Federal
Register 17577-78
(April 12, 1999), so I sent him a copy of that discussion.


According to my files, it's been almost three years to the day
since we stopped
laboring over the draft memo to the Secretary reconsidering the
question of the
Secretary's authority to take land in trust in Alaska.    As
you'll recall, we
concluded that statutory authority did still exist to take land
in trust in
Alaska, but that our draft recommended that the subject be
addressed in
regulations before the Secretary attempted to exercise such
authority.  In the
meantime, of course, we have published proposed revised regs,
including the
cited discussion indicating a conscious decision not to change
the policy of not
taking land in trust for Alaska Native tribes or individuals.



ROGER HUDSON
01/02/2001 02:43 PM

To:     SUZANNE SCHAEFFER@DOI
cc:     MARY ANNE KENWORTHY@DOI, SCOTT KEEP@DOI, MARIA WISEMAN@DOI, LAURI
        ADAMS/AK/SOL/DOI@DOI, Niles Cesar/JUNEAU/BIA/DOI@BIA, Glenda Miller/JUNEAU/BIA/DOI@BIA

Subject: Part 151 Regs re taking land in trust in Alaska

Happy New Year!  In light of the most recently determined strategy for handling of the Alaska lands
in trust issue in the final Part 151 rule , my recent 12/27/00 request for copies of pertinent public
comments received on the draft regs, forwarded to you by Scott Keep, becomes less urgent.  But if
you do have an opportunity to forward whatever was submitted that's relevant, if anything, the
Alaska Region will appreciate having such comments on file for handy reference when the matter
does come up again, as it must under the wording to be included in the relatively imminent Fed.Reg.
publication.  Thanks.   -- Roger Hudson

AR00889

From:     MARY ANNE KENWORTHY on 01/05/2001 03:09 PM EST

To:       ROGER HUDSON/AK/SOL/DOI
cc:

Subject:  Re[2]:Part 151 Regs re taking land in trust in Alaska

From your previous note, I thought that you had seen the language that was finally agreed upon, or I would have sent it sooner - here is the pertinent part: The first 3 paragraphs that John originally drafted remain the same and then at the end stating, "Therefore, the Dept. has determined that the prohibition in the existing regulations on taking Alaska lands into trust (other than Metlakatla) ought to remain in place for a period of three years during which time the Dept. will consider the legal and policy issues involved in determining whether the Dept. ought to remove the prohibition on taking Alaska lands into trust. If the Dept. determines that the prohibition on taking lands into trust in Alaska should be lifted, notice and comment will be provided. I'll send a copy of the regs along with the comments. /mak

_____ Reply Separator _____
Subject:   Re:Part 151 Regs re taking land in trust in Alaska
Author:    ROGER HUDSON
Date:      1/5/01 2:59 PM


Thanks a lot.  It sounds like the approach in the preamble to the final rule
will be to take the issue under advisement one more time, rather than to
announce a new or continued policy cut with extensive justification, but I'm not
sure who is developing the language to be used.
Happy New Year.  We got an inch or two dusting on Tuesday or Wednesday, with a
little more possible this weekend.   At least the downhillers can do their thing
at Alyeska and Hillside.      --   Roger

AR00890

ROGER HUDSON

To: MARY ANNE KENWORTHY/HQ/SOL/DOI@DOI

04/25/01 01:02 PM

cc: LAURI ADAMS/AK/SOL/DOI@DOI, SCOTT KEEP/HQ/SOL/DOI@DOI

Subject: Re: Taking land in trust in Alaska



---

Mary Anne -- Thanks for the prompt and informative reply.   Maybe NARF was just padding its report, or maybe they've got plans which haven't yet been set in motion.    --   Roger

MARY ANNE KENWORTHY

---



**MARY ANNE KENWORTHY**

To: ROGER HUDSON/AK/SOL/DOI@DOI

04/25/01 12:06 PM

cc: LAURI ADAMS/AK/SOL/DOI@DOI, SCOTT KEEP/HQ/SOL/DOI@DOI

Subject: Re: Taking land in trust in Alaska



Roger-

I am not aware of any trust application for Tuluksuk and if a trust application was filed, I imagine it would have gone to your office for review.  The only thing out there about taking Alaska lands into trust is the language in the preamble to the final regs where Leshy rescinded the 1978 Associate Sol. opinion that found that ANCSA precluded the Sec. from taking lands into trust in Alaska.  The final regs kept in place the ban on taking lands into trust in Alaska for a period of three years during which time the Dept. will consider whether the ban on Alaska trust lands should stay in effect.

The effective date of these final regs has been extended for 120 days and during the first 60 days of the extension, the Department is requesting comments on whether the regulations should be amended or withdrawn in whole or in part.  Notice of this decision to extend the effective date and solicit comments was published on April 16, 2001, at 66 FR 19403.  Since the effective date was extended the current regs are in place and those regs preclude acquisition of trust lands in AK (except for Metlakatla) 151.1, I'm not sure how a trust application could be pending.

Scott, is there something else out there?

Mary Anne Kenworthy
Department of the Interior
Office of the Solicitor
Division of Indian Affairs
1849 C Street, NW
Washington, DC 20240
tel  (202) 208-3330
fax (202) 208-3490

**ROGER HUDSON**
04/25/01 11:48 AM

To:  MARY ANNE KENWORTHY/HQ/SOL/DOI@DOI

cc:  SCOTT KEEP/HQ/SOL/DOI@DOI, LAURI ADAMS/AK/SOL/DOI@DOI

Subject:  Taking land in trust in Alaska

Mary Anne -- As an occasional modest contributor, and therefore a name on a mailing list, I just got NARF's 2000 Summary Annual Report.  It mentions activity relating to the Native Village of Tuluksak "seeking to put land owned by the Village corporation into trust."   Have they submitted a petition or request?   Filed a lawsuit challenging the new 25 CFR Part 151 approach deferring any possible changes in the Alaska exclusion policy?  Anything going on you're aware of?   Thanks.       -- Roger

AR00892



**SCOTT KEEP**
04/26/01 05:43 AM

To: MARY ANNE KENWORTHY/HQ/SOL/DOI@DOI

cc: LAURI ADAMS/AK/SOL/DOI@DOI, ROGER
HUDSON/AK/SOL/DOI@DOI

Subject: Re: Taking land in trust in Alaska

I'm not aware of anything else out there.   I say "else" but I was not aware of this alleged application for trust land either.   I am assuming, however, that there are or will be numerous applications.   Curiously, the status of the Department's position on acquiring land in trust in Alaska is sort of in limbo with the rescinding of the Associate Solicitor's opinion.   I can not find my copy of the Leshy memo but my recollection is that it did not address specifically all the points in the Associate Solicitor's earlier memo which formed the basis for the conclusion that to acquire land in trust in Alaska ( at least former reservation lands) post-ANCSA would be an abuse of discretion.   Some have given the Associate Solicitor's memo a broader interpretation and that broader interpretation was relied on in precluding taking land in trust under the existing 151 Regulations.   However, the rescinding of Associate Solicitor's memo does not resolve much.   It simply clears the way for returning to the uncertain territory (pun intended) that existed before it.

Scott Keep
IC  301  //   Room 6449
202-208-5311
Fax  202-208-3490
MARY ANNE KENWORTHY



**MARY ANNE
KENWORTHY**
04/25/01 04:06 PM

To: ROGER HUDSON/AK/SOL/DOI@DOI

cc: LAURI ADAMS/AK/SOL/DOI@DOI, SCOTT KEEP/HQ/SOL/DOI@DOI

Subject:  Re: Taking land in trust in Alaska

25

Roger-

I am not aware of any trust application for Tuluksuk and if a trust application was filed, I imagine it would have gone to your office for review.  The only thing out there about taking Alaska lands into trust is the language in the preamble to the final regs where Leshy rescinded the 1978 Associate Sol. opinion that found that ANCSA precluded the Sec. from taking lands into trust in Alaska.  The final regs kept in place the ban on taking lands into trust in Alaska for a period of three years during which time the Dept. will consider whether the ban on Alaska trust lands should stay in effect.

The effective date of these final regs has been extended for 120 days and during the first 60 days of the extension, the Department is requesting comments on whether the regulations should be amended or withdrawn in whole or in part.  Notice of this decision to extend the effective date and solicit comments was published on April 16, 2001, at 66 FR 19403.  Since the effective date was extended the current regs are in place and those regs preclude acquisition of trust lands in AK (except for Metlakatla) 151.1, I'm not sure how a trust application could be pending.

Scott, is there something else out there?

Mary Anne Kenworthy
Department of the Interior
Office of the Solicitor
Division of Indian Affairs
1849 C Street, NW
Washington, DC 20240
tel  (202) 208-3330
fax (202) 208-3490

AR00894



**MARY ANNE KENWORTHY**

02/05/02 01:42 PM

To: Phil Hogen/HQ/SOL/DOI@DOI, EDITH
    BLACKWELL/HQ/SOL/DOI@DOI
cc: SUZANNE SCHAEFFER/HQ/SOL/DOI@DOI
Subject: lands into trust in AK

Attached is a one page I did at Matt's request concerning the history and status of lands into trust in Alaska. As with most things we deal with, the issue is much more complicated - but the basic facts are set out here. Let me know if there are any questions.



mattmem.wp

Mary Anne Kenworthy
Department of the Interior
Office of the Solicitor
Division of Indian Affairs
1849 C Street, NW
Washington, DC 20240
tel  (202) 208-3330
fax (202) 208-3490

AR00895

To:        Matt McKeown

From:      Mary Anne Kenworthy

Re:        Brief History of Alaska Lands Into Trust Issues

The Department's position concerning trust lands in Alaska was articulated in a 1978 memorandum from the Associate Solicitor for Indian Affairs stating that it was Congress' intention in enacting the Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. §§ 1601-1628, to remove all lands in Alaska from trust status. In 1980, the Department promulgated regulations at Part 151 to set forth the policy and procedures governing the acquisition of lands into trust for individual Indians and Indian tribes. The Part 151 rule stated that "these regulations do not cover the acquisition of land in trust status in the State of Alaska, except acquisitions for the Metlakatla Indian Community of the Annette Island Reserve or its members." 25 C.F.R. § 151.1.

In 1994, three Villages petitioned the Secretary to change the prohibition on trust acquisitions for lands in Alaska. The Department solicited comments on this petition but never formally approved or denied the petition. In 1999, the Department published proposed amendments to the 1980 lands into trust regulations. 64 Fed. Reg. 17574. In the preamble to these proposed regulations, the Department stated that both the 1980 regulation and the proposed one bar the acquisition of trust lands in Alaska (except for the Metlakatla Indian Community). The preamble stated that there is a credible legal argument that ANCSA did not supercede the Secretary's authority to take land into trust under Section 5 of the IRA, and requested comments on the continued validity of the 1978 Associate Solicitor's memorandum and the Villages' petition.

On January 16, 2001, the proposed amendments to the Part 151 rule were finalized. 66 Fed. Reg. 3452. The preamble discussed the comments received on continuing the bar on acquiring lands into trust in Alaska. The Solicitor concluded that there is substantial doubt about the validity of 1978 opinion and rescinded the 1978 opinion. In the final rule, the ban on taking lands into trust in Alaska is continued for a period of 3 years during which time the Department will consider the legal and policy issues involved in the prohibition and whether ban should be removed. In November 2001, the Department withdrew the final rule on taking lands into trust. 66 Fed. Reg. 56608.

Currently, the regulations that govern the acquisition to lands into trust are the 1980 regulations which contain a prohibition on accepting lands into trust in Alaska. However, as with all regulations concerning Indian affairs, the Secretary reserves the authority to waive any regulation when it "is in the best interest of the Indians." 25 C.F.R. § 1.2.